UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHASE WILLIAMS and WILLIAM ZHANG, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>BLOCK.ONE, BRENDAN BLUMER, and DAN LARIMERBLOCK.ONE,<br><br>        Defendants. | Case No. 1:20-cv-02809-LAK<br><br>Honorable Lewis A. Kaplan |

**MEMORANDUM OF LAW IN SUPPORT OF JD ANDERSON, DAVID MUHAMMAD, RAJITH THIAGARAJAN, CHASE WILLIAMS, AND TOKEN FUND I LLC'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF ROCHE CYRULNICK FREEDMAN LLP
AND SELENDY & GAY PLLC AS CO-LEAD COUNSEL**

# TABLE OF CONTENTS

Pages

INTRODUCTION ................................................................................................................. 1

SUMMARY OF ACTION.................................................................................................... 2

PROCEDURAL BACKGROUND........................................................................................ 3

ARGUMENT........................................................................................................................ 4

    A.    The Court Should Consolidate This Action and the
           Crypto Assets Opportunity Action ............................................................................ 4

    B.    Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I Should Be
           Appointed Lead Plaintiffs ......................................................................................... 6

        1.  Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I Have Timely
           Filed a Motion to Be Appointed Lead Plaintiffs....................................................... 6

        2.  Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I Possess the
           Largest Financial Interest.......................................................................................... 7

        3.  Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I Satisfy the
           Requirements of Rule 23 ........................................................................................... 9

    C.    RCF and S&G Should Be Approved as Co-Lead Counsel ....................................... 12

CONCLUSION................................................................................................................... 15

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Balestra v. ATBCOIN LLC*,
   380 F. Supp. 3d 340 (S.D.N.Y. 2019) ............................................................. 6, 9, 10

*Batter v. Hecla Mining Co.*,
   19-CV-05719 (ALC), 2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) ........................ 4, 5, 10, 12

*Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ............................................................................. 5

*Crypto Assets Opportunity Fund LLC et al. v. Block.one et. al.*,
   Case No. 1:20-cv-03829 (S.D.N.Y. May 18, 2020) ................................................. 4

*Freeman on behalf of Tesla, Inc. v. Musk*,
   324 F.R.D. 73 (D. Del. 2018) ................................................................................ 7

*In re Facebook, Inc., IPO Sec & Derivative Litig.*,
   288 F.R.D. 26 (S.D.N.Y. 2012) ............................................................................. 13

*Jakobsen v. Aphria, Inc.*,
   18 CIV. 11376 (GBD), 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ...................... 12

*Janbay v. Canadian Solar, Inc.*,
   272 F.R.D. 112 (S.D.N.Y. 2010) ........................................................................... 13

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990) ................................................................................. 5

*Kuebler v. Vectren Corp.*,
   2018 WL 8370052 (S.D. Ind. Aug. 10, 2018) ....................................................... 7

*Kux-Kardos v. VimpelCom, Ltd.*,
   151 F. Supp. 3d 471 (S.D.N.Y. 2016) ........................................................... 5, 10, 12

*Messieh, et al. v. HDR Global Trading Limited, et al.*,
   No. 20-cv-3232-ALC, ECF No. 32 (S.D.N.Y. Jun. 4, 2020) ................................. 14

*Reitan v. China Mobile Games & Entm't Group, Ltd.*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014) ..................................................................... 5

*Rhode Island Laborers' Pension Fund v. FedEx Corp.*,
   19-CV-5990 (RA), 2019 WL 5287997 (S.D.N.Y. Oct. 18, 2019) ......................... 7, 8

*Salinger v. Sarepta Therapeutics, Inc.*,
   19-CV-8122 (VSB), 2019 WL 6873807 (S.D.N.Y. Dec. 17, 2019) ............... 6, 9, 10, 11

*Stitt v. On Deck Capital, Inc.*,
  15 CIV. 6126 (AT), 2016 WL 889535 (S.D.N.Y. Feb. 17, 2016) ............................................ 11

**Statutes and Regulations**

Securities Act of 1933,
  15 U.S.C. § 77e .................................................................................................................... 3

Private Securities Litigation Reform Act of 1995,
  15 U.S.C. § 5 ............................................................................................................... 3, 5, 10

Private Securities Litigation Reform Act of 1995,
  15 U.S.C. § 11 ...................................................................................................................... 5

Private Securities Litigation Reform Act of 1995,
  15 U.S.C. § 12(a)(1) ........................................................................................................... 10

Private Securities Litigation Reform Act of 1995,
  15 U.S.C. § 12(a)(2) ............................................................................................................. 5

Private Securities Litigation Reform Act of 1995,
  15 U.S.C. § 15 ................................................................................................................ 5, 10

Private Securities Litigation Reform Act of 1995,
  15 U.S.C. § 77z-1(a)(3)(B)(i) ........................................................................................ 1, 4, 6

Private Securities Litigation Reform Act of 1995,
  15 U.S.C. § 77z–1(a)(3)(A)(i)(II) ......................................................................................... 7

Private Securities Litigation Reform Act of 1995,
  15 U.S.C. § 77z-1(a)(3)(B)(iii) .......................................................................................... 1, 6

Tex. Rev. Civ. Stat. art. 581-7(A)(1). ......................................................................................... 3

**Other Authorities**

Bitcoin: Order without Law in the Digital Age, 94 INDIANA L.J. 1497 (2019) ....................... 13

*Why Bitcoin is Booming*, WALL ST. J. (July 10, 2017) ............................................................ 13

**Rules**

Fed. R. Civ. P. 42 ........................................................................................................................ 5

Fed. R. Civ. P. 23 .............................................................................................................. 1, 6, 7, 9

Fed. R. Civ. P. 42(a)(2) ............................................................................................................... 4

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1(a)(3)(B)(i), JD Anderson ("Anderson"), David Muhammad ("Muhammad"), Rajith Thiagarajan ("Thiagarajan"), Chase Williams ("Williams"), and Token Fund I LLC ("Token Fund") respectfully submit this memorandum of law in support of their motion for appointment as lead plaintiffs and approval of the selection of Roche Cyrulnik Freedman LLP ("RCF") and Selendy & Gay PLLC ("S&G," and together, "Counsel") as co-lead counsel ("Motion").

## INTRODUCTION

This case is a securities class action seeking to recover damages caused by Defendants' sales of EOS tokens, which are unregistered securities. The named plaintiffs brought this action, which is the first filed complaint concerning this subject matter, on behalf of a proposed class ("Class") consisting of all persons who purchased EOS tokens from June 26, 2017 to April 3, 2020 (the "Class Period").

The PSLRA directs the Court to appoint as lead plaintiff the class member the Court "determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 77z-1(a)(3)(B)(i). Under the applicable standards Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I are the "most adequate plaintiff[s]" to represent the Class. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii).

Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I timely filed the Motion, have a substantial financial interest in this action, and satisfy the typicality and adequacy factors under Rule 23 of the Federal Rules of Civil Procedure. Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I will fairly and adequately protect the Class's interests by prosecuting this litigation and seeking the fullest recovery for the Class, and they are not subject to unique defenses that would render them incapable of serving as lead plaintiffs. Anderson, Muhammad,

Thiagarajan, Williams, and Token Fund I have also selected qualified, experienced counsel—RCF and S&G—who will provide Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I and the Class the highest caliber representation against these sophisticated defendants. For these reasons, Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I respectfully request that the Court: (a) appoint Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I as lead plaintiffs; and (b) approve Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I selection of RCF and S&G as co-lead counsel.

## SUMMARY OF ACTION

Defendant Block.one is a blockchain-focused software development company. Compl. ¶ 17. Defendant Brendan Blumer ("Blumer") is Block.one's Chief Executive Officer, and Defendant Daniel Larimer ("Larimer," and together with Block.one and Blumer, "Defendants") is Block.one's Chief Technology Officer. *Id.* ¶¶ 18-19. Since at least June 26, 2017, Defendants have been promoting, offering, and selling an unregistered security called the EOS token. *Id.* ¶¶ 1, 52-62. Defendants issued a "whitepaper" to investors that described in highly technical terms the supposed utility to which the EOS tokens would be placed. *Id.* ¶ 52. Block.one expressly represented in documents distributed in connection with the offering that the EOS tokens—which are a form of digital assets marketed to investors—were not being offered as securities, and thus omitted the disclosures that securities laws and the SEC have long deemed essential to investor protections in initial public offerings. *Id.* ¶¶ 62–64.

Defendants created one billion EOS tokens, sold 90 percent of those tokens via an initial coin offering ("ICO") running from June 26, 2017 to June 1, 2018 ("Offering Period"), and retained approximately 10 percent of the tokens in order to further profit from their anticipated appreciation. *Id.* ¶¶ 54–57. Through the ICO alone, Defendants raised over $4 billion in proceeds.

*Id.* ¶ 57. During the offering period, EOS tokens were then listed, promoted, and sold on various crypto-asset exchanges. *Id.* ¶¶ 51, 55. EOS tokens today are worth far less than the price Plaintiffs paid for them. *Id.* ¶ 99.

Although Defendants described EOS tokens as something other than securities, they were in fact securities. This was not clear to a reasonable investor at purchase, however, and would not have been reasonably apparent until, at the earliest, April 3, 2019, when the SEC released a detailed "Framework" to analyze digital assets, indicating that EOS and other similar digital tokens are "investment contracts" and therefore securities under Section 2 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77b.

Defendants have never registered EOS tokens as required under Section 5 of the Securities Act and Tex. Rev. Civ. Stat. art. 581-7(A)(1). *Id.* ¶¶ 64-99. Accordingly, Defendants are liable to Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I and the Class, all of whom purchased the unregistered EOS tokens. *Id.* ¶¶ 99-100.

## PROCEDURAL BACKGROUND

On April 3, 2020, Chase Williams and William Zhang, through their Counsel, filed the Complaint against Defendants, which was the first complaint alleging the claims described therein. On April 8, 2020, Counsel published the requisite PSLRA notice through Business News Wire. Declaration of Kyle Roche ("Roche Declaration"), Exhibit C (PSLRA Notice). On June 5, 2020, counsel for Defendants agreed to accept service on behalf of Block.one and Larimer, but not Blumer. (ECF No. 16–17). In May 2020, Plaintiffs' counsel executed an investigation contract to search for an address for Defendant Blumer, but no address was found. Plaintiffs' investigation is ongoing, and Plaintiffs may seek alternative service if counsel for Defendants Larimer and Block.one does not ultimately agree to accept service on Blumer's behalf. Plaintiffs and

3

Defendants Block.one and Larimer further stipulated that Plaintiffs would file the instant Motion seeking appointment as lead plaintiffs and approval of co-lead counsel by June 8, 2020. (ECF. No. 18).

On May 18, 2020, a complaint was filed by Grant & Eisenhoffer P.A. on behalf of putative class that appears to have been largely copied from and patterned off the complaint in the instant action. *Crypto Assets Opportunity Fund LLC et al. v. Block.one et al.,* Case No. 1:20-cv-03829 (S.D.N.Y. May 18, 2020) (the "Crypto Assets Opportunity Action").

On June 8, 2020, Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I timely filed this Motion seeking appointment as lead plaintiffs and approval of RCF and S&G as co-lead counsel.

**ARGUMENT**

A. The Court Should Consolidate This Action and the Crypto Assets Opportunity Action

According to the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this subchapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the [appointment of lead plaintiff] determination … until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 77z-1(a)(3)(B)(ii). "Where 'actions before the court involve a common question of law or fact[,]' consolidation is appropriate." *Batter v. Hecla Mining Co.*, 19-CV-05719 (ALC), 2020 WL 1444934, at *1 (S.D.N.Y. Mar. 25, 2020) (quoting Fed. R. Civ. P. 42(a)(2) and consolidating securities cases subject to the PSLRA). More specifically, "consolidation is appropriate … [where] the two related actions involve the same or similar parties, arise out of the same or similar courses of misconduct during substantially similar class periods, and concern substantially similar alleged issues of fact and law." *Id.*

4

"Under Rule 42 and the [PSLRA], actions need not be identical to allow for consolidation." *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 394 (S.D.N.Y. 2014). Indeed, courts have found that securities class actions are particularly suited for consolidation, even where one action raises additional securities claims. *See Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) ("These two putative class actions seek relief on behalf of similar classes based on the same series of events. Both claim violations of Sections 11, 12(a)(2) and 15 of the Securities Act (the later complaint adds claims under the Exchange Act). As such, the cases are well-suited for consolidation."). Ultimately, "[t]he Court enjoys 'board discretion to determine whether consolidation is appropriate.'" *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 475 (S.D.N.Y. 2016) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)).

Consolidation of the later-filed Crypto Assets Opportunity Action with this action is warranted here. The cases involve overlapping factual allegations regarding EOS securities; identical class definitions; an identical class period from June 26, 2017 to the present; and overlapping causes of action for violations of Sections 5, 12(a)(2), and 15 of the Securities Act against Defendants Block.one, Blumer, and Larimer. Although the actions are not identical—involving some differences in named defendants and causes of actions—those differences do not negate the benefits of consolidation. The actions involved substantially similar alleged issues of fact and law on behalf of the same putative class. Thus, consolidation would promote judicial economy and efficiency, without causing any prejudice. *See Hecla Mining.,* 2020 WL 1444934, at *2 ("Consolidating these suits promotes judicial economy and efficiency and these concerns are not outweighed by any prejudice or confusion.").

B. <u>Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I Should Be Appointed Lead Plaintiffs</u>

The PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii). Accordingly, "[i]f a movant satisfies the three statutory factors—making a timely motion, demonstrating the largest financial interest, and otherwise satisfying Rule 23—then the court shall adopt a presumption that the movant is the most adequate plaintiff." *Salinger v. Sarepta Therapeutics, Inc.*, 19-CV-8122 (VSB), 2019 WL 6873807, at *3 (S.D.N.Y. Dec. 17, 2019) (Broderick, J.) (internal quotations omitted). "[O]ther members of the purported class may try to rebut the statutory presumption by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of 'unique defenses.'" *Id.* (internal quotations omitted).

Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I, as shown below, meet each requirement. They timely filed a complaint, moved for leave to be appointed lead plaintiff, have the largest financial interest, and satisfy the applicable Rule 23 factors.

1. <u>Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I Have Timely Filed a Motion to Be Appointed Lead Plaintiffs</u>

To satisfy the first requirement, a movant for lead plaintiff must file the motion within 60 days of the publication of the PSLRA notice. *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 361 (S.D.N.Y. 2019) (Broderick, J.) ("Plaintiff filed his motion for appointment as lead plaintiff on Monday, March 12, 2018, (Doc. 22), satisfying the requirement that such motion be filed

6

within sixty days of publication of the notice of pendency of the action. Therefore, Plaintiff timely filed his motion under the PSLRA." (citing 15 U.S.C. § 77z–1(a)(3)(A)(i)(II)).

The PSLRA notice was published on April 8, 2020, specifying that the deadline to move for lead plaintiff would be June 8, 2020. *See* Roche Decl., Ex. A. Having filed this Motion on June 8, 2020, Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I have timely met the deadline.

Although not dispositive, Williams's first-to-file status should be accorded weight where no other complaint has been filed and the claims were the product of a painstaking investigation. *See Kuebler v. Vectren Corp.*, 3:18-cv-00113-RLY-MPB, 2018 WL 8370052, at *2 (S.D. Ind. Aug. 10, 2018) (proposed lead plaintiff group "vigorously prosecuted the interests of the class: it was the first to file a complaint, publish the necessary notice, and move for a preliminary injunction. This is enough to show that the [plaintiff group] has satisfied the threshold requirements of Rule 23."); *Freeman on behalf of Tesla, Inc. v. Musk*, 324 F.R.D. 73, 84-85 (D. Del. 2018) (where proposed lead plaintiffs "were the first to 'identify, draft, and file [the] federal claims,'" court observed that such "efforts to identify and bring these federal claims says something about the work that they are willing to put in to seek legal redress on behalf of the corporation and its shareholders").

2. <u>Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I Possess the Largest Financial Interest</u>

The PSLRA does not specify a method for calculating who has the "largest financial interest," but courts in this district commonly look to four factors in making this determination: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) total net funds expended by the plaintiff during the class period; and (4) the approximate losses suffered by the plaintiff." *Rhode Island Laborers' Pension Fund v. FedEx Corp.*, 19-CV-5990 (RA), 2019 WL

7

5287997, at *1 (S.D.N.Y. Oct. 18, 2019) (Abrams, J.). "The fourth factor, the largest loss, is considered by most courts to be the "critical ingredient in determining the largest financial interest and outweighs net shares purchased and ne[t] expenditures." *Id.* (internal quotation omitted).

Each factor reveals that Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I have an extensive financial interest in this litigation.

*First*, Anderson purchased 3,828.43 EOS tokens during the Class Period. Roche Decl., Exhibit A-1 (Anderson Certification), Exhibit D-1 (Anderson Transactions). Muhammad purchased 5,361.52 EOS tokens during the Class Period. Roche Decl., Exhibit A-2 (Muhammad Certification), Exhibit D-2 (Muhammad Transactions). Thiagarajan purchased 49,356.92 EOS tokens during the Class Period. Roche Decl., Exhibit A-3 (Thiagarajan Certification), Exhibit D-3 (Thiagarajan Transactions). Williams purchased 8,222.87 EOS tokens during the Class Period. Roche Decl., Exhibit A-4 (Williams Certification), Exhibit D-4 (Williams Transactions). Token Fund I purchased 83,190.42 EOS tokens during the Class Period. Roche Decl., Exhibit A-5 (Token Fund I Certification), Exhibit D-5 (Token Fund I Transactions).

*Second*, because Anderson sold 3,821.31 EOS tokens during the Class Period, his net purchase of EOS tokens was 7.12. Roche Decl., Ex. D-1. Because Muhammad sold 5,317.54 EOS tokens during the Class Period, his net purchase of EOS tokens was 43.98. Roche Decl., Ex. D-2. Because Thiagarajan sold 52,215.15 EOS tokens during the Class Period, his net purchase of EOS tokens was 0. Roche Decl., Ex. D-3. Because Williams sold 8,222.87 EOS tokens during the Class Period, his net purchase of EOS tokens was 0. Roche Decl., Ex. D-4. Because Token Fund I sold 72,438.89 EOS tokens during the Class Period, his net purchase of EOS tokens was 10,751.53. Roche Decl., Ex. D-5.

*Third*, Anderson expended $11,392.03 for his purchase of 3,828.43 EOS tokens. Roche Decl., Ex. D-1. Muhammad expended $76,221.20 for his purchase of 5,361.52 EOS tokens. Roche Decl., Ex. D-2. Thiagarajan expended $334,257.62 for his purchase of 49,356.92 EOS tokens. Roche Decl., Ex. D-3. Williams expended $102,865.49 for his purchase of 8,222.87 EOS tokens. Roche Decl., Ex. D-4. Token Fund I expended $669,261.67 for his purchase of 83,190.42 EOS tokens. Roche Decl., Ex. D-5.

*Finally*, Anderson suffered damages of approximately $3,630.69, Roche Decl., Ex. D-1, Muhammad suffered damages of approximately $1,615.33, Roche Decl., Ex. D-2, Thiagarajan suffered damages of approximately $64,793.46, Roche Decl., Ex. D-3, Williams suffered damages of approximately $8,100.93, Roche Decl., Ex. D-4, and Token Fund I suffered damages of approximately $537,306.98, Roche Decl., Ex. D-5.

Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I are unaware of any lead plaintiff movant with a greater loss. *See ATBCOIN LLC*, 380 F. Supp. 3d at 361 (appointing lead plaintiff who "had incurred losses of approximately $1,422.99 in connection with his purchase of ATB Coins during the Class Period . . . has the largest financial interest of any class member seeking appointment as lead plaintiff, and . . . is aware of no other class member with a larger financial interest").

3. <u>Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I Satisfy the Requirements of Rule 23</u>

"In making the determination of whether a movant otherwise satisfies the requirements of Rule 23, the movant must make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Sarepta Therapeutics*, 2019 WL 6873807, at *3 (internal quotations omitted). "This determination need not be as complete as would a similar determination for the purpose of class certification, and the movant is only required to make a prima facie

9

showing that it meets the typicality and adequacy requirements." *Id.* (internal quotations and citations omitted).

### a. Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I Claims Are Typical

For the typicality analysis, "courts consider whether the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise." *Id.* A lead plaintiff's claims are typical where they "arise[ ] from the same course of events as those of other class members and [the lead plaintiff] will make[ ] similar legal arguments to prove the defendant[s'] liability." *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016) (Carter, J.). "While the claims need not be identical, the claims of the proposed lead plaintiff must be substantially similar to the other members' claims." *ATBCOIN*, 380 F. Supp. 3d at 362; *Hecla Mining,* 2020 WL 1444934, at *4 ("The Glucks claims are typical of the other putative class members. The Family purchased shares of Hecla securities at prices inflated by Defendants' false and misleading statements and suffered damages as a result.").

Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I satisfy this requirement. Like every member of the Class, Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I possess claims against Defendants under Sections 5, 12(a)(1), and 15 of the Securities Act (Counts I and II). Specifically, they purchased EOS tokens during the Class Period, and those EOS tokens were offered by Defendants without registering as required under federal and state securities laws. Compl. ¶¶ 52-98. Because of that conduct, Anderson, Muhammad, Thiagarajan, Token Fund I, and Williams, like every member of the Class, are entitled to recover the consideration paid for EOS tokens or damages for EOS tokens previously sold. *Id.* ¶¶ 99-100. Thus, Anderson, Muhammad, Thiagarajan, Token Fund I, and Williams's claims are typical of those of the Class.

### b. *Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I Are Adequate Lead Plaintiffs*

"In considering the adequacy of a proposed lead plaintiff, a court must consider whether the proposed lead plaintiff: (1) maintains claims that conflict with those of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *Sarepta Therapeutics*, 2019 WL 6873807, at *3; *Stitt v. On Deck Capital, Inc.*, 15 CIV. 6126 (AT), 2016 WL 889535, at *2 (S.D.N.Y. Feb. 17, 2016) (Torres, J.) ("[A] lead plaintiff need only show that he meets . . . the adequacy requirement, meaning he can fairly and adequately represent the interests of the class, his interests are not antagonistic to those of the class, and he has retained capable counsel who is qualified to pursue the litigation." (internal quotations omitted)).

Each factor confirms Anderson, Muhammad, Thiagarajan, Token Fund I, and Williams's adequacy. *First*, Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I have no conflict with the Class. They purchased the EOS tokens that Defendants offered without registering under the applicable securities laws. Members of the Class have identical claims based on purchases of the same EOS tokens. Therefore, Anderson, Muhammad, Thiagarajan, Token Fund I, and Williams's interests are directly aligned with, and not antagonistic to, those of the Class.

*Second*, Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I have a sufficient interest in the case's outcome. Anderson suffered $3,630.69 in damages, Roche Decl., Ex. D-1, Muhammad suffered $1,615.33 in damages, Roche Decl., Ex. D-2, Thiagarajan suffered $64,793.46 in damages, Roche Decl., Ex. D-3, Williams suffered $8,100.93 in damages, Roche Decl., Ex. D-4, and Token Fund I suffered $537,306.98 in damages caused by Defendants' offers

and/or sales of EOS tokens. Because of their substantial losses, Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I are motivated to maximize the Class's recovery.

Finally, Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I have chosen co-lead counsel who are qualified, experienced, and able to conduct this litigation efficiently and effectively. As addressed more fully below, Counsel are ready, willing, and able to provide the Class with stellar legal representation.

In sum, Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I have the incentive, willingness, and ability to prosecute the claims in the interests of the Class. Thus, they have demonstrated their adequacy under Rule 23. *See Jakobsen v. Aphria, Inc.*, 18 CIV. 11376 (GBD), 2019 WL 1522598, at *5 (S.D.N.Y. Mar. 27, 2019) (Daniels, J.) ("It also appears that [the movant] will fairly and adequately represent the proposed class because he has selected qualified and experienced counsel, there is no known conflict between him and the other putative members of the class, and his significant financial losses ensure that he will vigorously prosecute this case.").

    C. <u>RCF and S&G Should Be Approved as Co-Lead Counsel</u>

"The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court." *Hecla Mining*, 2020 WL 1444934, at *9 (internal citation and quotations omitted). Courts approve the selection of counsel who are "qualified, experienced, and generally able to conduct the litigation." *VimpelCom,* 151 F. Supp. 3d at 479 (approving firm that "appears to be competent and experienced counsel, based on its past experience in securities fraud class actions").

RCF and S&G are qualified, experienced, and capable of effectively prosecuting this class action on behalf of Anderson, Muhammad, Thiagarajan, Token Fund I, and Williams, and the

12

Class.[1] Before filing this action, RCF and S&G "devoted substantial time and resources working . . . in identifying and investigating the claims set forth in the complaint." *In re Facebook, Inc., IPO Sec & Derivative Litig.*, 288 F.R.D. 26, 40 (S.D.N.Y. 2012) (recognizing import of counsel's pre-suit work in appointing lead counsel); *see also Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 121 (S.D.N.Y. 2010) (same). Counsel engaged in an extensive pre-suit investigation into the claims which included speaking with dozens of crypto-asset experts and industry insiders to understand the unique mechanics of the Defendants' unregistered offering and retaining experts to assist with data analysis. This six-month investigation culminated on April 3, 2020, when Counsel filed eleven class actions, including the case at bar, which all asserted federal and state securities claims arising from the sale of unregistered securities that were first offered through ERC-20-based ICOs. Counsel has also demonstrated leadership by serving, or securing waivers of service, from Defendants Block.one and Larimer in this action.

Collectively, Counsel has unparalleled experience litigating matters relating to crypto-assets. RCF represents the plaintiff in one of the largest litigations relating to crypto-assets in the United States. *Kleiman v. Wright*, No. 9:18-CV-80176-BB (S.D. Fla.) (litigation concerning the rightful ownership of billions of dollars' worth of bitcoin and bitcoin-related intellectual property rights). Mr. Roche, a lead attorney from RCF, is a recognized thought leader in the industry. He has published multiple articles on the intersection of crypto-assets and law (*see e.g.*, Bitcoin: Order without Law in the Digital Age, 94 INDIANA L.J. 1497 (2019); *Why Bitcoin is Booming*, WALL ST. J. (July 10, 2017)) and is a frequent speaker and lecturer on the topic, having guest-lectured a

---

[1] A description of RCF's qualifications is set forth at Exhibit B to the accompanying Roche Declaration. A description of S&G's qualifications is set forth at Exhibit A to the accompanying Declaration of Jordan A. Goldstein.

course at the Northwestern Pritzker School of Law. Although RCF is a relatively new firm, its attorneys possess decades of experience litigating complex matters, including class actions.

S&G has even more collective experience in cases involving complex financial transactions and class actions. S&G's attorneys have litigated the entire spectrum of complex financial matters—from residential mortgage-backed securities to reinsurance contracts to credit default swaps—securing trial and appellate victories and numerous favorable settlements for their clients. For example, S&G's attorneys have served as class counsel in several high-profile actions, including representing a class of public servants in an action against loan servicer Navient, *Hyland v. Navient Corporation*, No. 1:18-cv-9031-DLC (S.D.N.Y.); and representing the American Federation of Teachers and other investors in a class action against Goldman Sachs, Merrill Lynch, Barclays, Citigroup, and others alleging collusive violations of the Sherman Act arising out of the $13 trillion U.S. Treasuries market, *In re: Treasury Securities Auction Antitrust Litigation*, No. 1:15-md-02673-PGG (S.D.N.Y.). In the last decade, S&G lawyers have recovered tens of billions of dollars for clients.

On June 4, 2020, RCF and S&G were appointed as interim class counsel in a parallel action filed against the BitMEX crypto-asset exchange in this District. *See Messieh, et al. v. HDR Global Trading Limited, et al.*, No. 20-cv-3232-ALC, ECF No. 32 (S.D.N.Y. Jun. 4, 2020). That action brings claims arising from the sale of future contracts on digital assets and alleges violations of the Commodity Exchange Act.

In addition, earlier this year, RCF and S&G were appointed as interim class counsel (along with a third law firm) in another large crypto-asset class action in this District. *See Leibowitz v. Ifinex Inc.*, No. 1:19-cv-09236-KPF (S.D.N.Y.). In that litigation, RCF and S&G represent the

plaintiffs in alleging that Bitfinex, a prominent crypto-asset exchange, and Tether, a prominent crypto-asset issuer, engaged in market manipulation in violation of various federal and state laws.

Accordingly, Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I respectfully submit that Counsel are uniquely qualified to act as co-lead counsel in this litigation and will provide the Class with the highest caliber of representation. The Court's selection of RCF and S&G as co-lead counsel in this litigation will provide the added benefit of efficiency in the event that Counsel is selected as lead in the other actions filed on April 3.

## CONCLUSION

For the foregoing reasons, Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I respectfully request that the Court: (a) grant their Motion; (b) appoint Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I as lead plaintiffs; (c) approve Anderson, Muhammad, Thiagarajan, Williams, and Token Fund I's selection of RCF and S&G as co-lead counsel; and (d) issue any other relief that the Court deems just and proper.

Dated:   June 8, 2020
          New York, New York

                                              Respectfully submitted,

*/s/ Philippe Z. Selendy*              */s/ Kyle W. Roche*
Philippe Z. Selendy                    Kyle W. Roche
Jordan A. Goldstein                    Edward Normand
Joshua S. Margolin                     Velvel (Devin) Freedman (pro hac pending)
Oscar Shine                            Joseph M. Delich
SELENDY & GAY, PLLC                    ROCHE CYRULNIK
1290 Sixth Avenue, 17th Floor          FREEDMAN LLP
New York, NY 10104                     99 Park Avenue, 19th Floor
pselendy@selendygay.com                New York, NY 10016
jgoldstein@selendygay.com              kyle@rcfllp.com
jmargolin@selendygay.com               tnormand@rcfllp.com
oshine@selendygay.com                  vel@rcfllp.com
                                       jdelich@rcfllp.com