# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHASE WILLIAMS AND WILLIAM ZHANG, individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br><br>         v.<br><br>BLOCK.ONE, BRENDAN BLUMER, and DANIEL LARIMER,<br><br>                  Defendants. | Civ. No. 1:20-cv-2809-LAK<br><br><u>CLASS ACTION</u> |
| CRYPTO ASSETS OPPORTUNITY FUND LLC and JOHNNY HONG, Individually and on Behalf of All Others Similarly Situated,<br><br>                         Plaintiffs,<br>         v.<br><br>BLOCK.ONE, BRENDAN BLUMER, DANIEL LARIMER, IAN GRIGG, and BROCK PIERCE,<br><br>                  Defendants. | Civ. No.: 1:20-cv-3829<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE CRYPTO ASSETS OPPORTUNITY FUND, LLC FOR CONSOLIDATION OF ACTIONS, APPOINTMENT OF LEAD PLAINTIFF AND <u>APPROVAL OF LEAD COUNSEL SELECTION</u>**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

I.     PRELIMINARY STATEMENT ................................................................... 1

II.    PROCEDURAL BACKGROUND ................................................................ 3

III.   FACTUAL BACKGROUND ........................................................................ 3

    A.   THE CRYPTO ASSETS OPPORTUNITY FUND ................................... 3

    B.   THE CLAIMS ...................................................................................... 4

IV.    ARGUMENT ................................................................................................ 7

    A.   THE WILLIAMS AND CAOF ACTIONS SHOULD BE CONSOLIDATED ............................ 7

    B.   CAOF IS THE MOST ADEQUATE PLAINTIFF ................................... 8

        1.   CAOF Has the Largest Financial Interest .................................. 9

        2.   CAOF Satisfies the Typicality and Adequacy Requirements of Rule 23 ....... 10

            a.   CAOF's Claims Are Typical ................................................. 10

            b.   CAOF Will Fairly and Adequately Protect the Interests of the Class ...... 11

    C.   THE COURT SHOULD APPROVE CAOF'S SELECTION OF COUNSEL ........................... 12

V.     CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baydale v. American Express Co.*,
  09 Civ. 3016 (WHP), 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009) ..........................9, 10, 11

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ..............................................................................................7

*Canson v. WebMD Health Corp.*,
  No. 11 Civ. 5382(JFK), 2011 WL 5331712 (S.D.N.Y. Nov. 7, 2011)....................................12

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992).............................................................................................10, 11

*Ferrari v. Impath, Inc.*,
  No. 03-cv-5677, 2004 WL 1637053 (S.D.N.Y. July 20, 2004)................................................8

*In re Fuwei Films Sec. Litig.*,
  247 F.R.D. 432 (S.D.N.Y. 2008) ............................................................................................9

*Glauser v. EVCI Career Colls. Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) ..........................................................................................12

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................................11

*Ho v. NQ Mobile*,
  No. 13-Civ-7608, 2014 WL 1389636 (S.D.N.Y. April 9, 2014)......................................9, 11

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ..........................................................................................8, 9

*Lax v. First Merchs. Acceptance Corp.*,
  No. 97 Civ. 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)............................................. 9

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ......................................................................................9

*In re Orion Sec. Litig.*,
  No. 08-cv-1328, 2008 WL 2811358 (S.D.N.Y. July 8, 2008)................................................8

*Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*,
  275 F.R.D. 187 (S.D.N.Y. 2011) ..........................................................................8, 9, 10, 11

*SEC v. W.J. Howey Co.*,
   328 U.S. 293 (1946)........................................................................................5

*Skwortz v. Crayfish Co., Ltd.*
   00-cv-6766, 2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001) .....................................8

*Tan v. NIO, Inc.*,
   19-cv-1424, 2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020) .......................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)....................................................................12

*Xu v. Gridsum Holding, Inc.*,
   No. 18 Civ. 3655, 2018 WL 4462363 (S.D.N.Y. Sept. 17, 2018)...........................7

**RULE AND STATUTES**

17 CFR § 240.10b-5 .........................................................................................................2

15 U.S.C. § 77l................................................................................................1, 2, 7, 8

15 U.S.C. § 77o...............................................................................................................2

15 U.S.C. § 78t................................................................................................................1

15 U.S.C. § 78u-4, et seq. ....................................................................... *passim*

Fed. R. Civ. P. 23 ................................................................................2, 9, 10, 12

Fed. R. Civ. P. 42 .........................................................................................................7

**OTHER AUTHORITIES**

H.R. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 .........................................12

Crypto Assets Opportunity Fund, LLC ("CAOF") respectfully submits this memorandum of law in support of its motion for an order (i) consolidating the above captioned actions; (ii) appointing CAOF as Lead Plaintiff in this class action pursuant to Sections 5, 12(a)(1), 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b)(5) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (iii) approving CAOF's selection of Grant & Eisenhofer P.A. ("Grant & Eisenhofer") and the Bluhm Legal Clinic of the Northwestern Pritzker School of Law Complex Civil Litigation and Investor Protection Center (the "Center") as Lead Counsel for the proposed class.

## I.      PRELIMINARY STATEMENT

On April 3, 2020, Chase Williams and William Zhang initiated this action with the filing of a class action complaint (the "Williams Complaint") against Block.one LLC ("Block.one" or the "Company") and two of Block.one's officers, Brendan Blumer and Dan Larimer. The Complaint asserts federal securities claims on behalf of a proposed class (the "Class") consisting of all persons and entities that purchased or otherwise acquired securities issued by Block.one called "EOS Tokens" (the "EOS Securities") issued in connection with the Initial Coin Offering ("ICO") between June 26, 2017 and the "present," which was the date of filing, i.e., April 3, 2020 (the "Class Period"), and were damaged thereby. Williams Complaint, ¶ 1. The Williams Complaint alleges violations of Sections 5, 12(a)(1) and 15 of the Securities Act of 1933 for failure to register the EOS Securities pursuant to the federal securities laws.

On May 18, 2020, Johnny Hong and CAOF filed an additional complaint against Block.one, Larimer, and Blumer (the "CAOF Complaint"). The CAOF Complaint added Ian Grigg and Brock Pierce as defendants. It also alleged violations of Sections 5, 12(a)(1) and 15 of the Securities Act of 1933 for failure to register the EOS Securities pursuant to the federal

securities laws.  In addition, the CAOF Complaint added claims pursuant to Section 12(a)(2) of the Securities Act for selling the EOS Securities pursuant to a materially false and misleading prospectus; Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC") for disseminating materially false and misleading statements concerning the EOS Securities during the Class Period; and Section 15 of the Securities Act and Section 20(a) of the Exchange Act for control person liability. The CAOF Complaint alleged that Defendants willfully disregarded and violated the securities laws and are liable for selling unregistered securities in the form of cryptocurrency tokens to investors and for making materially false and misleading statements about EOS, claiming them to be a superior, decentralized version of existing blockchain cryptocurrencies, thereby artificially inflating the prices of the EOS Securities.

The PSLRA provides that this Court must appoint "the most adequate plaintiff as lead plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(ii).  To identify the most adequate plaintiff, the Court must determine which lead plaintiff movant has the "largest financial interest" in the relief sought by the Class in this litigation and has made a *prima facie* showing that it is a typical and adequate class representative under Fed. R. Civ. P. 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

CAOF is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff.  CAOF suffered losses totaling $92,147.32 as a result of its purchases of EOS securities during the Class Period.  *See* Berger Decl. Ex. C (Certification of Crypto Assets Opportunity Fund).  As of the time of preparing this memorandum of law for filing, CAOF is not aware of any other lead plaintiff movants with equal or greater losses.  CAOF is a sophisticated institutional investor of the type favored as lead plaintiff under the PSLRA.  Accordingly, CAOF should be appointed Lead Plaintiff.

## II.      PROCEDURAL BACKGROUND

On April 3, 2020, Chase Williams and William Zhang filed the Williams Complaint in the Southern District of New York.  On April 9, 2020, their counsel published notice of pendency of a class action over Business Wire, a national business-oriented wire service, advising members of the Class of their right to move the Court to serve as lead plaintiff no later than sixty days from the date of publication, *i.e.*, June 8, 2020.  *See* Berger Decl. Ex. A.

On May 18, 2020, Plaintiffs Crypto Assets Opportunity Fund LLS and Johnny Hong filed the CAOF Complaint in the Southern District of New York.  That same day, their counsel published notice of the pendency of this action over PR Newswire, a national business-oriented wire service, advising members of the Class of their right to move the Court to serve as lead plaintiff by June 8, 2020, which also announces the lead plaintiff filing deadline in the Williams Action since there is significant overlap between the two actions.  *See* Berger Decl., Ex. B.  CAOF is filing this motion within the sixty-day period following publication of the May 18, 2020 notice issued in connection with the Williams Action.

## III.     FACTUAL BACKGROUND

### A.      THE CRYPTO ASSETS OPPORTUNITY FUND

The Crypto Assets Opportunity Fund is a pooled investment fund based in Northbrook, Illinois.  Incorporated in 2017, CAOF is managed by Victoria Capital Management LLC.  CAOF specializes in investing in cryptocurrencies, and those responsible for its investment decisions have significant experience with and knowledge of various aspects of cryptocurrency investing.

CAOF is aware of and is prepared to accept the fiduciary obligations attaching to lead plaintiffs in federal securities class actions.  *Id.*, Ex. C.  CAOF has retained Grant & Eisenhofer, which has extensive experience in complex securities litigation and class actions, as proposed Lead Counsel, along with experienced investor advocate, J. Samuel Tenenbaum of the Bluhm Legal

Clinic of the Northwestern Pritzker School of Law Complex Civil Litigation and Investor Protection Center.

**B.    THE CLAIMS**

Defendant Block.one is an entity formed under the laws of the Cayman Islands with offices, operations, and employees in New York City, California, Virginia, and Hong Kong.  CAOF Complaint, ¶ 21.  From its inception, Block.one has been operated and owned by a small group of individuals who were instrumental in Block.one's widespread misconduct: Defendant Brandon Blumer, co-founder and CEO of Block.one; Defendant Daniel Larimer, co-founder and Chief Technology Officer ("CTO") of Block.one; Defendant Ian Grigg, a former partner of Block.one; and Defendant Brock Pierce, a co-founder and former partner of Block.one.  *Id.*, ¶¶ 24-28.

The Williams Action arises out of Block.one's unlawful sale of the EOS Securities in violation of the federal securities laws.  Specifically, although the EOS Securities are "securities" under the federal securities laws, Block.one did not register the securities and did not file any registration statement with the SEC.  Williams Complaint ¶¶ 9, 69.  Thus, investors were deprived of important information concerning the Company's financial condition, its use of the proceeds of the ICO.  Williams Complaint ¶¶ 7, 44-45.  This CAOF Action also arises out of Block.one's unlawful sale of the unregistered EOS Securities, and further adds claims for Block.one's false and misleading statements, which generated and fueled investor demand for the EOS Securities.  CAOF Complaint ¶¶ 150-160, 167-178.

Both actions acknowledge that the ICO was only possible because of the frenzied investor demand for cryptocurrencies, which was growing at an unprecedented rate.  Williams Complaint ¶¶ 43-44; CAOF Complaint ¶ 43.  Entrepreneurs in the cryptocurrency space issue Initial Coin Offerings ("ICOs"), generally publicizing these via online channels and social media.  Williams Complaint ¶ 46; CAOF Complaint ¶¶ 43-44.  In advance of an ICO, an issuer typically releases a

technical white paper and other marketing materials describing the blockchain architecture and the terms of the issuance.  Williams Complaint ¶ 48; CAOF Complaint ¶ 45.  None of these materials typically cover the information required to be included in a registration statement filed with the SEC, such as a plain language description of the offering, key risk factors, and description of important information and management incentives.  Williams Complaint ¶ 49; CAOF Complaint ¶¶ 76 118-119.  However, the SEC explicitly recognized in a Cease and Desist letter issued on September 19, 2019 that EOS tokens are securities as defined by *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) and are, as such, subject to U.S. federal securities laws.  CAOF Complaint ¶ 108.

On June 26, 2017, Defendants began selling the EOS securities in a year-long ICO. Williams Complaint ¶ 54; CAOF Complaint ¶ 8.  Defendants offered and sold the EOS securities using the "EOS Purchase Agreement," which did not comply with the requirements for a registered offering of securities, nor did the securities qualify for any to exemption to these requirements. Williams Complaint ¶¶ 8, 55; CAOF Complaint ¶ 8.  Following the initial sale, Defendants continued to sell the EOS securities in the secondary cryptocurrency market, including on the US Coinbase and Kraken trading platforms.  Williams Complaint ¶ 57; CAOF Complaint ¶ 9.  By failing to provide a registration statement, Defendants deprived purchasers of critical information, including information relating to Block.one's business including its future plans and operating budget, proposed uses of investor proceeds, and material trends and factors that made investing in Block.one speculative and risky.  Williams Complaint ¶ 44; CAOF Complaint ¶ 8.

On June 5, 2017, Block.one released the EOS.IO Technical White Paper (the "EOS.IO White Paper"), authored by Dan Larimer.  Williams Complaint ¶ 52; CAOF Complaint ¶ 48.  In it, the Company claimed that the EOS.IO software introduced a "new blockchain architecture designed to enable "vertical and horizontal scaling of decentralized applications." Williams

Complaint ¶ 52; CAOF Complaint ¶ 48.   Decentralization is one of the key features of all blockchains and the purportedly extra-decentralized nature of the EOS platform, which would be controlled by twenty-one "block producers" as opposed to other blockchains controlled by fewer than ten miners, was touted as one of the most significant features distinguishing it from existing blockchains like Bitcoin.  *Id.*, ¶¶ 5-6.

During the Class Period, Defendants repeatedly made statements affirming and promoting the decentralized nature of the EOS.IO platform and touting EOS as superior to other blockchains. *Id.*, ¶¶ 44, 53-54.  From the start, however, the EOS blockchain was not decentralized, and its governance ecosystem could be overridden by a single "arbitrator" with the power to reverse transactions and freeze accounts.  *Id.*, ¶ 77.  As a result of the foregoing, Defendants' positive statements about the Company's superiority versus other blockchains and enhanced decentralization were materially false and misleading.  As a result of Defendants' materially false and/or misleading statements, Block.one securities traded at artificially inflated prices throughout the Class Period.  *Id.*, ¶ 106.

The truth about EOS securities was revealed through a series of partial corrective disclosures between June 2018 and June 2019.  *Id.*, ¶ 85.  For example, on June 8, 2018, the online technology news outlet TNW published an article exposing breaches to Block.one's security system.  *Id.*, ¶ 86.  Security vulnerabilities led to a delay in EOS's launch, with a vote to launch the security failing on June 8, 2018 over concerns about a bug.  *Id.* ¶ 86.  As the market digested this news, the price of EOS securities fell 19% from $14.10 on June 9, 2018 to $11.39 on June 10, 2018.  *Id.*, ¶ 8.  Later, on November 8, 2018, an EOS arbitrator issued an order reversing several EOS transactions.  *Id*., ¶ 93.  News of the reversal was posted to Reddit on November 10, 2018,

leading to a more than 14% decline in the price of EOS securities over the following two trading days from $5.40 on November 12, 2018 to $4.64 on November 14, 2018.  *Id.*, ¶ 94.

On June 1, 2019, Block.one announced a plan to launch a social media platform, "Voice." *Id.*, ¶ 95.  Investors reacted poorly to this news of Block.one shifting its from focus from the creation of a decentralized blockchain platform causing the price of EOS to drop nearly 9% in one day from a closing price of $8.51 on May 31, 2019 to a closing price of $7.78 on June 1, 2019. *Id.*, ¶ 96.  Days later, at the Tulip Convention in San Francisco, Defendant Pierce announced that the EOS "ecosystem was a little bit of a Chinese oligarchy right now," meaning that control of the system was centralized in the hands of a small number of block producers in China.  *Id.*, ¶ 97.  On that news, the price of EOS suffered a two-day slide of nearly 19%, from $7.77 at the end of the day on June 2, 2019 to $6.31 at the end of the day on June 4, 2019.  *Id.*, ¶ 98.

## IV.    ARGUMENT

### A.    THE WILLIAMS AND CAOF ACTIONS SHOULD BE CONSOLIDATED

The Williams and CAOF Actions should be consolidated pursuant to Fed. R. Civ. P. 42 and the PSLRA.  The two actions arise out of the same general facts underlying the ICO and both actions assert claims arising under Sections 5, 12(a)(1), and 15 of the Securities Act.

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter [is] filed," the Court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(i)-(ii); *see also Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same).  Further, consolidation pursuant to Rule 42 is appropriate when actions "involve common questions of law or fact."  *Xu v. Gridsum Holding, Inc.*, No. 18 Civ. 3655, 2018 WL 4462363, at *3 (S.D.N.Y. Sept. 17, 2018).  In securities class actions, such as this one, consolidation is particularly appropriate where "there are common questions of law

and fact and . . . the defendant will not be prejudiced." *Ferrari v. Impath, Inc.*, No. 03-cv-5677, 2004 WL 1637053, at *2 (S.D.N.Y. July 20, 2004).  Finally, "slight differences in the facts alleged and legal issues raised do not preclude consolidation." *In re Orion Sec. Litig.*, No. 08-cv-1328, 2008 WL 2811358, at *3 (S.D.N.Y. July 8, 2008).

The Williams and CAOF Actions are suited for consolidation.  They each allege the same set of facts underlying violations of Sections 5, 12(a)(1) and 15 of the Securities Act.  Further, the claims in the two actions are brought against substantially the same parties and involve the same securities, the EOS Securities.  Although the CAOF Action asserts claims based on Defendants' false statements pursuant to Section 12(a)(2) of the Securities Act and Section 10(b)(5) of the Exchange Act, these additional claims should not defeat consolidation.  Slight differences in causes of action or named defendants do not render consolidation inappropriate, particularly where, as here, the cases present sufficiently common questions of fact and law.  *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *Skwortz v. Crayfish Co., Ltd.* 00-cv-6766, 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001).  This is especially so where, as here again, consolidation will promote judicial efficiency and conserve the resources of the parties and the class, and is thus appropriate.  *See id.; Tan v. NIO, Inc.*, 19-cv-1424, 2020 WL 1031489, at *2 (E.D.N.Y. Mar. 3, 2020).

### B.    CAOF IS THE MOST ADEQUATE PLAINTIFF

The PSLRA requires the Court to appoint the "most adequate plaintiff as lead plaintiff" of a consolidated securities action.  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Determining the "most adequate plaintiff" is a two-step process under the PSLRA.  First, the statute creates a rebuttable presumption that the "person or group of persons," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), with "the largest financial interest in the litigation is entitled to a presumption in favor of appointment as lead plaintiff." *Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*, 275 F.R.D.

8

187, 190 (S.D.N.Y. 2011).  This plaintiff must also make a "preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23."  *Id.* (citing *Baydale v. American Express Co.*, 09 Civ. 3016 (WHP), 2009 WL 2603140, at *2 (S.D.N.Y. Aug. 14, 2009)).[1]

### 1.    CAOF Has the Largest Financial Interest

To evaluate the financial interest of a lead plaintiff movant, courts in this District often apply the "*Olsten-Lax*" factors to assist in the determination.  *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008) (citing *Lax v. First Merchs. Acceptance Corp.*, No. 97 Civ. 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) and *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 292-93 (E.D.N.Y. 1998)); *see also Ho v. NQ Mobile*, No. 13-Civ-7608, 2014 WL 1389636, at *1-2 (S.D.N.Y. April 9, 2014) (using *Olsten-Lax* factors to measure financial interest); *Baydale*, 2009 WL 2603140, at *2 (same).  These factors are: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered."  *Pipefitters Local No. 636*, 275 F.R.D. at 190 (citing *Baydale*, 2009 WL 2603140, at *2).  Of these factors, "the magnitude of the loss is the most significant."  *Id.* (citing *Kaplan*, 240 F.R.D. at 93).

---

[1]    The PSLRA also requires that a lead plaintiff motion be made by a plaintiff who "has either filed the complaint or made a motion in response to a notice."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).  CAOF both filed its own complaint, and it also makes this motion in response to the notice published on May 18, 2020 by counsel representing proposed Lead Plaintiffs.

CAOF's financial interest in the relief sought by the Class is as follows:[2]

| Total Coins Purchased | 49,241.0171 |
|---|---|
| Net Coins Purchased | 47,889.6948 |
| Net Funds Expended ($) | 37,121 |
| Total Funds Expended ($) | 255,456 |
| Estimated Losses ($) | 92,147 |

The "Estimated Losses" set forth above are the same whether calculated using the "last in, first out" ("LIFO") methodology or the "first in, first out" ("FIFO") methodology. CAOF purchased a substantial amount of EOS Securities throughout the Class Period, including in the ICO. *See id.* (listing purchase of EOS securities). Moreover, CAOF continued to hold EOS Securities through the end of the Class Period. CAOF is unaware of any lead plaintiff movant in this litigation that suffered larger losses or otherwise has a larger financial interest in the relief sought by the Class. As a result, and because CAOF also satisfies the typicality and adequacy requirements of Rule 23, CAOF is entitled to the presumption that they are the most adequate plaintiff.

## 2. CAOF Satisfies the Typicality and Adequacy Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, CAOF has "ma[d]e a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Pipefitters Local No. 636*, 275 F.R.D. at 190 (citing *Baydale*, 2009 WL 2603140, at *2); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

### a. CAOF's Claims Are Typical

Rule 23(a)(3) requires that the claims or defenses of the representative party be typical of those of the class. This is satisfied where a movant "has suffered the same injuries as other class

---

[2]   For the list of transactions used to calculate the information set forth in the table on this page, *see* Berger Decl., Ex. C, Schedule A.

members as a result of the same conduct by defendants and has claims based on the same legal issues." *H*o, 2014 WL 1389636, at \*2 (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

CAOF's claims are typical because, like all members of the Class, CAOF seeks to recover under the federal securities laws for losses on investments in EOS securities resulting from Defendants' sale of unregistered securities and from their materially false and misleading statements and omissions concerning the decentralized nature of the EOS blockchain and its superiority as compared to other, existing blockchains. *See Baydale*, 2009 WL 2603140, at \*4 (finding typicality satisfied where, "like other class members, [the lead plaintiff movant's] injuries stem[med] from the alleged overvaluation of . . . stock resulting from Defendants' materially false and misleading statements and omissions").

> **b.** **CAOF Will Fairly and Adequately Protect the Interests of the Class**

"In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation." *Pipefitters Local No. 636*, 275 F.R.D. at 190 (citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004)). Here, CAOF's claims do not conflict with those of the Class: its claims are typical of the claims of the class and it is not subject to any unique defense that renders it incapable of adequately representing the class. CAOF has retained Grant & Eisenhofer, counsel with significant experience in efficiently and vigorously prosecuting securities class actions and achieving historic recoveries for class members, along with J. Samuel Tenenbaum of the Bluhm Legal Clinic of the Northwestern Pritzker School of Law Complex Civil Litigation and Investor Protection Center. *See* § IV.C., *infra* (discussing securities class action experience of Grant &

11

Eisenhofer and discussing investor advocacy experience of Mr. J. Samuel Tenenbaum); *see also* Berger Decl., Ex. D (Grant & Eisenhofer firm biography); Ex. E (Tenenbaum biography). Moreover, there are no conflicts between CAOF and the Class, as both seek to recover losses caused by Defendants' false and misleading statements and omissions.  CAOF is thus an adequate lead plaintiff. *See Canson v. WebMD Health Corp.*, No. 11 Civ. 5382(JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011) (presumptive lead plaintiff satisfies adequacy requirement where it retained "competent" counsel, presented no evidence of conflict with other class members, and had a "significant financial stake" in the case).

In addition to satisfying the preliminary requirements of Rule 23, appointing CAOF as Lead Plaintiff also fulfills the legislative goal of having securities class actions prosecuted by sophisticated investors with substantial financial interests in the relief sought by the class.  *See Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in [class] actions such as this one.") (citation omitted); *see also* H.R. Rep. No. 104-369 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

## C.    THE COURT SHOULD APPROVE CAOF'S SELECTION OF COUNSEL

The PSLRA authorizes the lead plaintiff to select and retain lead counsel to represent the class, subject to the Court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v); *see also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (internal quotations and citations omitted).

CAOF has selected highly-qualified counsel with significant experience in prosecuting securities class actions.  Grant & Eisenhofer is among the preeminent securities class action law firms in the country and has served as lead or co-lead counsel in several of the largest securities class actions in history, including: *In re Tyco International Ltd. Securities Litigation*, MDL No. 02 cv 1335 B (D.N.H.) ($3.2 billion recovery); *In re Pfizer Inc. Securities Litigation*, No. 04 cv 9866 (S.D.N.Y.) ($486 million recovery) (*In re Global Crossing, Ltd. Securities Litigation*, No. 02 cv 910 (S.D.N.Y.) ($448 million recovery); *In re Refco, Inc., Securities Litigation*, No. 05 cv 8626 (S.D.N.Y.) ($422 million recovery); *In re Marsh & McLennan Cos. Securities Litigation*, MDL No. 1744 (S.D.N.Y.) ($400 million recovery); *In re General Motors Corp. Securities Litigation*, M.D.L. No. 1749 (E.D. Mich.) ($303 million recovery); *In re Oxford Health Plans, Inc., Securities Litigation*, M.D.L. No. 1222 (S.D.N.Y.) ($300 million recovery); and *In re Safety-Kleen Corp. Bondholders Litigation*, No. 00 cv 1145 17 (D.S.C.) ($276 million recovery). *See* Berger Decl., Ex. D (Grant & Eisenhofer firm biography).

Mr. Tenenbaum has more than thirty years of litigation and securities experience.  He has achieved numerous multi-million dollar recoveries on behalf of his many and varied clients, including a $1 billion settlement in connection with the Chicago Board of Trade's restructuring from a not-for-profit to a for-profit corporation.  In 2005, Mr. Tenenbaum founded the Northwestern Pritzker School of Law Complex Civil Litigation and Investor Protection Center to provide representation to investors with limited income who may not otherwise be able to access legal counsel.  Mr. Tenenbaum is therefore also an excellent candidate to be appointed lead plaintiff of the Class.  Therefore, the Court should appoint Grant & Eisenhofer and the Bluhm Legal Clinic of the Northwestern Pritzker School of Law Complex Civil Litigation and Investment Protection Center as co-lead counsel for the Class.

## V.    CONCLUSION

For the foregoing reasons, CAOF respectfully requests that this Court (i) consolidate the above-captioned actions; (ii) appoint CAOF as Lead Plaintiff; and (iii) approve CAOF's choice of counsel as Lead Counsel for the Class.

Dated: New York, New York
June 8, 2020

Respectfully submitted,

*/s/ Daniel L. Berger*
Jay W. Eisenhofer
Daniel L. Berger
Caitlin M. Moyna
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: jeisenhofer@gelaw.com
Email: dberger@gelaw.com
Email: cmoyna@gelaw.com


J. Samuel Tenenbaum
**Bluhm Legal Clinic of the Northwestern
Pritzker School of Law
Complex Civil Litigation and Investor
Protection Center**
375 East Chicago Ave.
Chicago, IL 60611
Tel: (312) 503-4808
Email: s-tenenbaum@law.northwestern.edu

*Counsel for Crypto Asset Opportunity Fund*

14