**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHASE WILLIAMS AND WILLIAM ZHANG, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>BLOCK.ONE, BRENDAN BLUMER, and DANIEL LARIMER,<br><br>            Defendants. | Civ. No. 1:20-cv-2809-LAK<br><br><u>CLASS ACTION</u> |
| CRYPTO ASSETS OPPORTUNITY FUND LLC and JOHNNY HONG, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiffs,<br>    v.<br><br>BLOCK.ONE, BRENDAN BLUMER, DANIEL LARIMER, IAN GRIGG, and BROCK PIERCE,<br><br>            Defendants. | Civ. No.: 1:20-cv-3829<br><br><u>CLASS ACTION</u> |

**CRYPTO ASSET OPPORTUNITY FUND LLC's MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF JD ANDERSON, RAJITH THIAGARAJAN, CHASE WILLIAMS, AND TOKEN FUND I LLC'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFFS <u>AND APPROVAL OF CO-LEAD COUNSEL</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...........................................................................................................ii

I.    PRELIMINARY STATEMENT .....................................................................................1

II.   STANDARD FOR APPOINTING LEAD PLAINTIFF .........................................3

III.  THE INVESTOR GROUP IS NOT THE PRESUMPTIVE LEAD PLAINTIFF .................4

      A.    THE INVESTOR GROUP HAS NOT DEMONSTRATED THAT IT HAS
           THE LARGEST FINANCIAL INTEREST IN THE OUTCOME OF THE LITIGATION ..............4

      B.    THE INVESTOR GROUP DOES NOT OTHERWISE SATISFY RULE 23 ...........................8

           1.   The Investor Group Is the Product of Lawyer-Driven Litigation.....................8

           2.   The Members of the Investor Group Provided Unsworn Certifications .........12

           3.   The Token Fund Is Shrouded in Secrecy ........................................................13

IV.   CAOF IS THE PRESUMPTIVE LEAD PLAINTIFF ........................................ 16

V.    CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berdeaux v. Onecoin Ltd.*,
  2019 WL 3815147 (S.D.N.Y. July 11, 2019) ..........................................................10

*Bhojwani v. Pistiolis*,
  2007 WL 2197836 (S.D.N.Y. July 31, 2007) ............................................................9

*In re CMED Sec. Litig.*,
  2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012) .............................................................9

*In re Donnkenny Inc., Sec. Litig.*,
  171 F.R.D. 156 (S.D.N.Y. 1999) ...............................................................................9

*Elstein v. Net1 UEPS Technologies, Inc.*,
  2014 WL 3687277 (S.D.N.Y. July 23, 2014) .........................................................11

*In re Enzymotec Ltd. Sec. Litig.*,
  2015 WL 918535 (D.N.J. Mar. 3, 2015) .................................................................16

*Fitzgerald v. Citigroup, Inc.*,
  2004 WL 613107 (S.D.N.Y. Mar. 26, 2004) ..........................................................13

*Fries v. Northern Oil and Gas Inc.*,
  2017 WL 1880819 (S.D.N.Y. May 8, 2017) ...........................................................10

*Gesenhues v. Checchi*,
  2006 WL 1169673 (S.D.N.Y. May 3, 2006) ...........................................................13

*In re Initial Public Offering Sec. Litig.*,
  214 F.R.D. 117 (S.D.N.Y. 2002)..............................................................................13

*Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.*,
  2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015) ........................................................11

*Jonathan Tan v. NIO Inc.*,
  2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020)...........................................................10

*Khunt v. Alibaba Group Hldg Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015) .......................................................................9

*Kniffin v. Micron Tech., Inc.*,
  379 F. Supp. 3d 259 (S.D.N.Y. 2019) ...............................................................10, 11

*Lax v. First Merchs. Acceptance Corp.*,
    1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ...................................................................*passim*

*Micholl v. Ophthotech Corp.*,
    2018 WL 130728 (S.D.N.Y. Mar. 13, 2018).......................................................................5, 6

*Nakamura v. BRF S.A.*,
    2018 WL 3217412 (S.D.N.Y. July 2, 2018)..........................................................................9

*Nasin v. Hongli Clean Energy Techs. Corp.*,
    2017 WL 5598214 (D.N.J. Nov. 21, 2017) ........................................................................12

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ....................................................................................5

*Phuong Ho v. NQ Mobile*,
    2014 WL 1389636 (S.D.N.Y. Apr. 9, 2014) .....................................................................10

*Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*,
    275 F.R.D. 187 (S.D.N.Y. 2011)........................................................................................6

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013) ...............................................................................................17

*Salinger v. Sarepta Therapeutics Inc.*,
    2019 WL 6873807 (S.D.N.Y. Dec. 17, 2019).....................................................................4

*Smajlaj v. Brocade Communications Sys. Inc.*,
    2006 WL 7348107 (N.D. Cal. Jan. 12, 2006)....................................................................15

*In re Smith Barney Transfer Agent Litig.*,
    2006 WL 991003 (S.D.N.Y. Apr. 17, 2006) .....................................................................16

*In re Tarragon Corp. Sec. Litig.*,
    2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007).......................................................................8

*Teran v. Subaye, Inc.*,
    2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011) .............................................................10, 11

*Varghese v. China Shenghuo Pharm. Hldgs, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) ............................................................................9, 10

*In re Waste Management, Inc. Sec. Litig.*,
    128 F. Supp. 2d 4001 (S.D. Tex. 2000)..........................................................................11, 12

*Weinberg v. Atlas Air Worldwide Hldgs Co.*,
    216 F.R.D. 248 (S.D.N.Y. 2003)....................................................................................9, 16

**Statutes**

15 U.S.C. § 78u-4(a)(2)(A) ........................................................................... 5, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ................................................................. 4

28 U.S.C. § 1746 ............................................................................................ 12

Fed. R. Civ. P. 23 ................................................................................... *passim*

Crypto Assets Opportunity Fund, LLC ("CAOF") respectfully submits this memorandum of law in opposition to the Motion of JD Anderson, David Muhammad, Rajith Thiagarajan, Chase Williams, and Token Fund I LLC for Appointment of Lead Plaintiffs and Approval of Selection of Roche Cyrulnik Freedman LLP and Selendy & Gay PLLC as Co-Lead Counsel, and in further support of its own motion for lead plaintiff appointment and approval of its choice of counsel (ECF No. 22).

## I.   PRELIMINARY STATEMENT

As the only party with significant losses resulting from Defendants' misconduct and that otherwise meets the requirement of Rule 23, CAOF should be appointed lead plaintiff.  As described in the CAOF Motion, CAOF is a pooled investment vehicle that suffered significant losses – $92,147.32 – as a result of its purchases of the EOS tokens sold by Block.One in its initial coin offering beginning on June 26, 2017 ("EOS Securities").  ECF 27 at 2.  CAOF specializes in cryptocurrency investments; it manages approximately $1.5 million of blockchain and cryptocurrency-focused assets on behalf of 75 United States-based investors, including a prominent professional services firm as well as individual and retirement plan investors.  Elsasser Decl. ¶ 7. Because its clients include a cross-section of cryptocurrency investors, CAOF is particularly well-suited to be lead plaintiff.  *Id.*  Brandon Elsasser, its Chief Investment Officer, sought out its selected counsel, and is poised to participate fully in the litigation, overseeing counsel and engaging in strategic and other aspects of the case.  *Id.* ¶¶ 8, 14.

CAOF's only competition for lead plaintiff appointment is a cobbled together group of five unrelated investors – JD Anderson, David Muhammad, Rajith Thiagarajan, Chase Williams, and Token Fund I LLC ("Token Fund") (collectively, the "Investor Group").  ECF No. 20.  Although at first glance this group may, in the aggregate, appear to have higher losses than CAOF under the *Lax* factors, closer scrutiny reveals that is not the case.  Three of the members of the Investor

1

Group – Token Fund, Thiagarajan, and Williams – submitted incomplete records of their transactions in EOS Securities.  *See infra* Section III.A.  The Token Fund has admitted that it was unable to procure records of its transactions that occurred over the Bitfinex exchange.  ECF No. 25-1 at 22.  Thiagarajan and Williams, for their parts, reported that they sold more EOS Securities than they purchased during the Class Period, something that is impossible where, as here, no EOS Securities were issued prior to the first day of the Class Period.  *Infra*, Section III.A.  Thus, the Court should discount their reported transactions and calculations.  In addition, publicly available information reveals that the Token Fund disbanded in September 2018, casting significant doubt on its transactions reported after that date.  *Infra,* Section III.B.  Without a complete and accurate accounting of their transactions in EOS Securities during the Class Period, it is impossible to calculate the *Lax* factors for the Token Fund, Thiagarajan, and Williams.

The remaining two members of the Investor Group – Anderson and Muhammad – reported negligible "trading losses."  Anderson had losses of only $3,631, and Muhammad had losses of only $1,615, for combined losses of $5,246.  ECF No. 25-4 at 5, 19 and 26.  This is far below the $92,147 in losses suffered by CAOF.

Even putting aside that the Investor Group has lower verifiable losses than CAOF, it suffers from severe problems that make it unsuitable to be lead plaintiff.  *First*, the Investor Group is comprised of five unrelated members (four individuals and one purported investment fund) with no apparent relationship to each other. The Investor Group has not provided the Court with any information on how its members came together and has provided no evidence that these five apparently unrelated movants can act cohesively as a group to direct their counsel in conducting this litigation.  Nor has the Investor Group provided any indication that they selected their counsel, and not vice versa.  This is precisely the type of lawyer-driven litigation that the PSLRA was

designed to prevent, and that courts are wary of when evaluating motions for lead plaintiff by groups of investors.

*Second*, none of the five members of the Investor Group provided sworn PSLRA certifications, which is fatal to a lead plaintiff motion. *See infra* Section III.B.2.

*Third*, the Token Fund presents unique challenges that render it unsuitable to serve as a lead plaintiff, whether a as member of the Investor Group or as a standalone movant. The Token Fund has not told the Court ***anything*** about itself. In support of its motion, the Token Fund submitted only an ***unsworn*** certification that was not even signed by anyone affiliated with the Token Fund. ECF 25-1 at 22. Rather, it was signed by Mr. Pavel Pagodin, who purports to be an "authorized agent" of the Token Fund; the Token Fund has not told the Court anything about Mr. Pagodin or his relationship to the Token Fund. *Id.* *See infra* Section III.B.3. CAOF's own investigation of the Token Fund has raised only questions. *See id.* Indeed, it is unclear whether the Token Fund even currently exists, let alone where, or in what location(s), and serving what group of investors. Taken together, the facts that (i) the Token Fund did not provide a complete list of its Class Period transactions; (ii) the Token Fund provided an unsworn certification signed by an unknown individual who did not explain his relationship to the Token Fund; and (iii) the scant publicly available information about the Token Fund suggests that it is currently defunct, provide glaring red flags undermining the Token Fund's suitability to serve as Lead Plaintiff here, whether as a standalone plaintiff or as a member of the Investor Group.

For these reasons, the Investor Group's motion should be denied, and the CAOF's motion should be granted in full.

## II.    STANDARD FOR APPOINTING LEAD PLAINTIFF

In class actions arising under the '33 and '34 Acts, the "presumptive lead plaintiff" is the movant who meets three conditions: (i) makes a timely motion; (ii) demonstrates that it has the

largest financial interest in the case; and (iii) otherwise satisfies the requirements of Rule 23. *Salinger v. Sarepta Therapeutics Inc.*, 2019 WL 6873807, at \*3 (S.D.N.Y. Dec. 17, 2019) (Broderick, J.).  Rule 23 requires that a plaintiff be "typical" and "adequate."

## III.   THE INVESTOR GROUP IS NOT THE PRESUMPTIVE LEAD PLAINTIFF

The Investor Group is not the presumptive lead plaintiff here.  It has not demonstrated that it has the largest financial interest in the outcome of this litigation.  Further, it does not otherwise satisfy Rule 23's adequacy and typicality requirements for at least three reasons: (1) the Investor Group consists of five unrelated investors and is the product of lawyer-driven litigation; (2) the members of the Investor Group did not provide sworn certifications as required by the PSLRA; (3) the only purported institutional investor, the Token Fund, provided no information about itself, and the scarce publicly available information causes concern about its lead plaintiff suitability, exacerbated by the fact that its unsworn certification was signed by a purported "authorized agent" who did not describe his relationship to the Token Fund or provide any additional information about the Token Fund.  Any of these deficiencies, standing alone, would be sufficient to warrant rejection of the Investor Group's lead plaintiff application; taken together, they provide overwhelming bases for the Court to deny the Investor Group's application for appointment.

### A.   THE INVESTOR GROUP HAS NOT DEMONSTRATED THAT IT HAS THE LARGEST FINANCIAL INTEREST IN THE OUTCOME OF THE LITIGATION

The Investor Group claims that it has aggregated losses of $615,447[1]; however, the evidence it offered to support that contention is severely lacking and flawed.  It is therefore not the presumptive lead plaintiff.

---

[1] This figure excludes the Investor Group's claimed rescission damages.  It is not appropriate to consider these damages as they are not a part of the *Lax-Olsten* analysis.

Under the factors set forth in *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) and *In re Olsten Corp. Securities Litigation,* 3 F. Supp. 2d 286, 292-93 (E.D.N.Y. 1998), courts in this District typically measure financial interest in reference to: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) (Pauley III, J.).  Based on the opening motions, CAOF and the Investor Group have asserted the following financial interests:

| Movant | EOS Securities Purchased | Net EOS Securities Purchased | Net Expenditure | Asserted Loss |
|---|---|---|---|---|
| **CAOF** | **49,241.02** | **1,351.32** | **$37,121** | **$92,147.34** |
|  |  |  |  |  |
| Investor Group: |  |  |  |  |
| Anderson | 3,828.43 | 7.12 | $3,367 | $3,630.69 |
| Muhammad | 5,361.52 | 43.98 | $1,585 | $1,615.33 |
| Williams | 8,222.87 | -0.39 | $8,101 | $8,100.93 |
| Thiagarajan | 49,356.92 | -2,858.23 | $64,793 | $64,793.46 |
| Token Fund I LLC | 83,190.42 | 10,751.53 | $237,827 | $537,306.98 |
| **Total Investor Group:** | **149,960.16** | **7,944.01** | **$315,673** | **$615,447.39** |

Examining the movants' claimed losses demonstrates that CAOF has the largest financial interest under the *Lax* factors.  Anderson, Muhammad and Williams each have a lower asserted financial interest compared to CAOF on every single *Lax* factor: they have lower purchases, net purchases, net expenditures, and asserted losses than CAOF, both individually and in the aggregate.  They cannot plausibly claim to have a larger financial interest in this matter than CAOF.

The two remaining members of the Investor Group, Thiagarajan and the Token Fund (as well as Williams), have submitted incomplete (or at the very least, inaccurate) data to support their alleged financial interests.  The PSLRA requires a lead plaintiff movant to provide a certification detailing all of its transactions during the Class Period.  Specifically, it requires that:

> [e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a ***sworn certification***, which shall be ***personally signed by such plaintiff*** and filed with the complaint, that . . . (iv) ***sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint***; (v) identifies any other action under this chapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class . . .

15 U.S.C. § 78u-4(a)(2)(A) (emphases added).  The failure to provide a complete or accurate list of transactions during the Class Period is a fatal blow to these three investors.  *See Micholl v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (Broderick, J.) (rejecting lead plaintiff application because of "errors and discrepancies" in schedule of transactions).

*First*, the Token Fund has admitted that it did not provide a complete list of its EOS Securities transactions during the Class Period.  The Token Fund's certification states that:

> The cryptocurrency exchange Bitfinex has refused to provide access to the relevant trading activity for Token Fund I LLC's EOS purchases. However, the documentation available to Token Fund I LLC shows that between January 1, 2018 and June 29, 2018, a total of 85,685 EOS were purchased on Bitfinex. These tokens were later sold in their entirety for a substantial loss.  A conservative estimate of the amount lost on these trades is $300,000.

ECF 25-1 at 22.  This falls short of the PSLRA's requirement to provide *all transactions* for the Class Period of June 26, 2017 through April 2, 2020.  Without a complete list of Token Fund's Class Period transactions in EOS Securities, it is impossible to calculate any of the *Lax* factors.  The Court should therefore disregard Token Fund's claimed losses of $537,307.

*Second*, two of the individuals in the Investor Group submitted incomplete (at a minimum, inaccurate) lists of their transactions in EOS Securities during the Class Period.  Thiagarajan reported that he purchased 49,356.92 tokens and sold 52,215.15 tokens during the Class Period, for a net sale of -2,858.23 tokens.  ECF 25-4 at 20-22.  Williams reported that he purchased 8,222.87 tokens and sold 8,223.26 tokens during the Class Period, for a net sale of -0.39 tokens. ECF 25-4 at 23-26.  The only way an investor can post net sales during a given class period is if he held the security at issue prior to the Class Period.  However, here the Class Period dates to the beginning of the Initial Coin Offering; no EOS Securities were issued prior to the first day of the Class Period.  Thus, neither Thiagarajan nor Williams could have held any EOS Securities prior to the Class Period, and it is impossible for them to have sold more EOS Securities during the Class Period than they acquired.  It is therefore impossible for Thiagarajan and Williams to have submitted complete and accurate lists of their Class Period EOS Securities transactions. As with the Token Fund, their purported losses should be disregarded.

Stripping away the Investor Group's patently inaccurate or incomplete data, the relative financial interests in this litigation are as follows:

| Movant | EOS Tokens Purchased | Net EOS Tokens Purchased | Net Expenditure | Asserted Loss |
|---|---|---|---|---|
| **CAOF** | **49,241.02** | **1,351.32** | **$37,121** | **$92,147.34** |
| | | | | |
| Investor Group: | | | | |
| Anderson | 3,828.43 | 7.12 | $3,367 | $3,630.69 |
| Muhammad | 5,361.52 | 43.98 | $1,585 | $1,615.33 |
| **Total Investor Group:** | **9,189.95** | **51.1** | **$4,952** | **$5,246.01** |

CAOF posts higher figures in each of the *Lax* factor categories.  The Investor Group's $5,246 in losses do not even approach CAOF's $92,147 in losses.  Because the Investor Group's asserted financial interest can only exceed CAOF's financial interest by including incomplete or inaccurate trading data, CAOF has the largest financial interest in this litigation.

## B.   THE INVESTOR GROUP DOES NOT OTHERWISE SATISFY RULE 23

Even if the Investor Group did have the largest financial interest in the outcome of the litigation (which it does not), it presents at least three significant problems that run afoul of Rule 23's adequacy and typicality requirements.  First, it is a group of unrelated investors with disparate interests cobbled together by attorneys.  Second, not one member of the Investor Group submitted a sworn affidavit, as is required by the PSLRA.  Third, the very little information that could be found about the Token Fund suggests that it has been defunct since September 2018 – casting doubt not only on the veracity of its claimed EOS Securities transactions made after this date, but also on its ability to vigorously litigate this action on behalf of the class.  These concerns are intensified by its submission of an unsworn certificate signed by someone with no identifiable connection to the Token Fund.  For these reasons, even if the Investor Group did have the largest financial interest, its motion for lead plaintiff should be denied.

### 1.   The Investor Group Is the Product of Lawyer-Driven Litigation

The Investor Group consists of four individuals – JD Anderson, David Muhammad, Rajith Thiagarajan, and Chase Williams – plus the Token Fund jointly seeking lead plaintiff appointment. This group, "cobbled together" by the attorneys, is precisely the type of lawyer-driven creature that courts refuse to appoint as lead plaintiff.  Indeed, "[o]ne of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation." *In re Tarragon Corp. Sec. Litig.*, 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (Castel, J.).

Although courts in this district allow small groups of investors to be appointed as lead plaintiff, "[t]he prevailing position is that unrelated investors may join together, . . . [only] 'if such a grouping would best serve the class.'" *In re CMED Sec. Litig.*, 2012 WL 1118302, at *2 (S.D.N.Y. Apr. 2, 2012) (Forrest, J.) (quoting *Varghese v. China Shenghuo Pharm. Hldgs, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (Marrero, J.)). Thus, "[m]any courts . . . have turned away pastiche plaintiffs whose grouping appears to be solely a product of the litigation." *Khunt v. Alibaba Group Hldg Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015) (McMahon, J.). If a showing can be made that the grouped individuals or entities would "best serve the class," courts apply the "*Varghese*" factors to ensure that investors seeking lead plaintiff as a group are not the product of lawyer-driven litigation: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of [the group] members; and (5) whether the members chose outside counsel, and not vice versa." *Varghese* at 392; *Nakamura v. BRF S.A.*, 2018 WL 3217412, at *3-4 (S.D.N.Y. July 2, 2018) (Castel, J.). *Varghese* further holds that "a proposed group must proffer an evidentiary showing" that it satisfies these factors. *Varghese* at 392. The Investor Group fails this test.

To begin, the Investor Group has not advanced any reason why its appointment would "best serve the class." Nor could it. No class benefit can be identified from appointing as lead plaintiff a group of five unrelated investors – one fund and four individuals – with claimed losses ranging from a low of $1,356.85 to a high of $509,137.97. ECF 25-4. *Weinberg v. Atlas Air Worldwide Holdings Co.*, 216 F.R.D. 248, 254 (S.D.N.Y. 2003) (Conner, J.) (declining to appoint a group consisting of one institutional investor and one individual); *In re Donnkenny Inc., Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997) (Cedarbaum, J.) (rejecting aggregation of group losses where

group was composed of two institutional investors and four individual investors) ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff."); *Bhojwani v. Pistiolis,* 2007 WL 2197836, at *6 (S.D.N.Y. July 31, 2007) (Fox, J.) (declining to appoint a group where the motion papers did not demonstrate "that the unrelated members of [the groups] ha[d] anything in common except this lawsuit"); *Phuong Ho v. NQ Mobile,* 2014 WL 1389636, at *4-5 (S.D.N.Y. Apr. 9, 2014) (Pauley III, J.) (rejecting proposed lead plaintiff groups that were insufficiently cohesive).

Further, the Investor Group has not provided a shred of evidence demonstrating that it satisfies even a single one of the *Varghese* factors, let alone all of them, as is required.  This is fatal to its motion.  *See Fries v. Northern Oil and Gas Inc.*, 2017 WL 1880819, at *2-3 (S.D.N.Y. May 8, 2017) (Ramos, J.) (refusing to appoint a group of lead plaintiffs where the motion did not "offer any evidentiary support" regarding any of the *Varghese* factors).  *First*, there is no evidence of any "pre-litigation relationship" among the members of the Investor Group.  "Courts have typically required that plaintiffs lacking such a relationship present a more compelling showing" that they are entitled to lead plaintiff appointment.  *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (Pauley III, J.) (citation omitted).  Indeed, the boilerplate certifications do not describe anything about the members of the Group themselves, let alone whether they had pre-existing relationships.  *Tan v. NIO Inc.*, 2020 WL 1031489, at *4 (E.D.N.Y. Mar. 3, 2020) (Garaufis, J.) (declining to aggregate a proposed group's losses for purposes of appointing a lead plaintiff where the joint declaration did not discuss the group members' pre-litigation relationship); *Berdeaux v. Onecoin Ltd.*, 2019 WL 3815147, at *1 (S.D.N.Y. July 11, 2019) (Caproni, J.) (declining to appoint a group of lead plaintiffs that had no apparent pre-litigation relationship); *Teran v. Subaye, Inc.*, 2011 WL 4357362, at *4 (S.D.N.Y. Sept. 16, 2011) (Buchwald, J.)

(declining to appoint a group primarily because the members had no apparent pre-litigation relationship).

*Second*, the Investor Group does not appear to have any "plans for cooperation" among its members.  Courts sometimes accept declarations signed by all members of a group laying out their plans for cooperation, although they must be more than "[v]ague discussions of general communication protocols and status reports hashed out over preliminary conference calls."  *Id.* But the sufficiency of such a declaration is not at issue here, because the Investor Group has provided none.  Failure to provide such evidence has been fatal in other cases.  *See, e.g., Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc*., 2015 WL 7018024, at *3-4 (S.D.N.Y. Nov. 12, 2015) (Wood, J.) (refusing to appoint group because there was insufficient evidence of preexisting relationships, a plan for cooperation, or evidence that the group was not the product of lawyer-driven litigation).

*Third*, the negligible information provided about the members of the Investor Group says nothing about their sophistication as either investors or litigants, or about whether they selected their outside counsel.  *Elstein v. NET1 UEPS Techs., Inc.*, 2014 WL 3687277, at *3-4 (S.D.N.Y. July 23, 2014) (Ramos, J.) (declining to appoint a group where movants failed to offer any background on the relationships between the group members including any phone conversation or how the group would work together to manage the litigation); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 431 (S.D. Tex. 2000) (refusing to appoint a group of investors as lead plaintiff where they "appear[ed] to have been picked by counsel"); *Kniffin*, 379 F. Supp. 3d at 263 (refusing to appoint group of investors as lead plaintiff because they were "lawyer-created . . . in the hope of creating the largest losses").

The court in *In re Waste Management, Inc. Securities Litigation*, 128 F. Supp. 2d 401, 430 (S.D. Tex. 2000) summarized the reasons why courts should be cautious in appointing groups of investors to be lead plaintiff:

> It is obvious that any law firm could attempt to control this litigation by accumulating as many plaintiffs as possible with no relationship to each other from investors during the class period and merely aggregate their claims to achieve the largest financial interest in any recovery. Thus, the concerns underlying the PSLRA for wresting control of the litigation away from the lawyers and making a plaintiff or group of related plaintiffs the monitors and controllers of the litigation must restrict such an approach.

The court thus found that two proposed groups were "too large and too unconnected to anything other than their loss and their counsel to serve the purses of the PSLRA Lead Plaintiff." *Id.* at 431. Here, too, the members of the Investor Group appear to have been assembled simply to achieve the largest financial recovery; appointing this Group would circumvent and undermine the purpose of the PSLRA's lead plaintiff appointment process.

### 2.     The Members of the Investor Group Provided Unsworn Certifications

As noted *supra* Section III.A., the PSLRA requires that lead plaintiff movants submit *sworn* certifications. The members of the Investor Group ignored this directive, and instead provided unsworn certifications. Not one of the five members swore to their certifications under penalty of perjury. ECF 25-1 at 3, 7, 16, 19, 22. Courts have declined to appoint lead plaintiffs where their certifications were not sworn, finding that this was more than a "technicality" that could be "cured with [an] amended filing," which would, in any event, be late. *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017) (rejecting lead plaintiff movant where "deficient certifications [would] subject it to a unique defense that renders [it] 'incapable of adequately representing the class'"). In contrast, the certification of Brandon Elsasser – the Chief Investment Officer of CAOF – was sworn to under penalty of perjury pursuant to 28 U.S.C. § 1746. *See* ECF No. 23-3.

### 3.      The Token Fund Is Shrouded in Secrecy

In addition to the inadequacies listed above, there are several characteristics of the Token Fund that prevent its appointment as Lead Plaintiff – whether as part of the Investor Group or on a standalone basis.  The "adequacy" component of Rule 23 examines whether a proposed lead plaintiff "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  In assessing adequacy, courts examine "the size, available resources and experience of the proposed lead plaintiff." *Gesenhues v. Checchi*, 2006 WL 1169673, at *3 (S.D.N.Y. May 3, 2006) (Howell, J.).  In short, the lead plaintiff should be poised to "ensure vigorous advocacy. *Fitzgerald v. Citigroup, Inc.*, 2004 WL 613107, at *4 (S.D.N.Y. Mar. 26, 2004) (Batts, J.); *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (Scheindlin, J.) (noting that a lead plaintiff must "ensure vigorous advocacy," and that the "most adequate plaintiff is not necessarily the class member with the largest financial interest in the action, but rather the class member with the largest financial interest in the action who is willing to prosecute the claims").

There are serious concerns regarding the Token Fund's ability and willingness to "ensure vigorous advocacy."  To begin, its entire being is shrouded in secrecy, and in fact, based on the scant publicly available information about it, the Token Fund appears to have disbanded in 2018. Declaration of Daniel L. Berger dated June 22, 2020 ("Berger Decl.") Ex. 1.  The Token Fund provided no information about itself, either in its certification or in the memorandum in support of the Investor Group's motion.  Further, no information is publicly available as to who its members are, how it is managed, where it is located, who is beneficiaries are, or whether it is able to access key documents necessary to prosecute this litigation as a lead plaintiff.  Thus, there are serious concerns about its ability to function appropriately as a lead plaintiff.  Such opacity makes it difficult to conclude that the Token Fund would "vigorously advocate" on behalf of class members here.

Based on its own investigation, CAOF has uncovered a number of disturbing facts about the Token Fund.  The Token Fund was a Moscow-based cryptocurrency fund founded in 2017. For a time, the Token Fund was preparing to launch an initial coin offering to support "Tokenbox," which was billed as "a unique platform to facilitate the creation of new crypto-assets based investment funds."  *See* Berger Decl. Ex. 2.

On June 14, 2018, however, the Token Fund issued a public notice on medium.com that it would be shuttering on September 30, 2018 due to "significant changes" in the "international standards for the regulation of the crypto-currency market."  Berger Decl. Ex. 1.  That notice informed investors that it would no longer be accepting new deposits or registrations from clients, provided guidance on how to withdraw from the fund, and stated that the "Token Fund team will continue to manage the fund's portfolio and serve the existing clients up until September 30th 2018."  *Id.*  The Token Fund's website, thetoken.io, has since been taken offline, and there is no available evidence indicating the Token Fund even continues to exist.  Assuming this is true, it is impossible to understand how the Token Fund made the purchases and sales in EOS Securities after September 30, 2018, as it claimed in its certification.

Indeed, the Token Fund's LinkedIn page claims it is based in Singapore.  CAOF searched every United States jurisdiction, and several foreign ones, in an attempt to determine where the Token Fund is organized.  CAOF was able to identify only an entity called Token Fund Ltd., in Singapore, which may or may not be affiliated with the Token Fund I LLC.  Berger Decl. Ex. 3. It was registered in July 2018 and is currently listed as an inactive entity.  *Id.*  The officers are listed as Wang Qizhi, Cho Yew Huat, and Wang Fang.  *Id.*  None of this information was provided in the Token Fund's certification, and nothing is known about these officers.

Courts have been reluctant to appoint lead plaintiffs that are not forthcoming about their structure and authority to litigate the matter to the court.  For example, in *Smajlaj v. Brocade Commc'ns Sys. Inc.*, 2006 WL 7348107, at *3 (N.D. Cal. Jan. 12, 2006), the court declined to appoint the presumptive lead plaintiff because there were "too many questions surrounding [its] standing, authority, transparency, and structure that may give rise to unique defenses that are atypical of the class as a whole."  The court cited concerns about whether the presumptive lead plaintiff "ha[d] authority to act on behalf of" the beneficiary funds, and whether any other entities would "need to authorize" the litigation, as well as produce documents.  *Id.* at *2.

Similar concerns are likely to be problematic for the Token Fund.  Not only were the Token Fund's filings opaque, but there is also virtually nothing about it that is publicly available, other than an indication that it has been defunct since 2018.  There is no information about who manages the Token Fund, who makes investment decisions for the Token Fund, who the beneficiaries of the Token Fund are, or even where it is incorporated (or otherwise organized) or physically located.  The Token Fund's "authorized agent" was unable even to provide a complete list of its transactions, but rather sought (unsuccessfully) to obtain them from the exchange on which it traded, a fact which does not inspire confidence that it will zealously pursue the claims of the class.

Further adding to the mystery underlying the Token Fund, it produced a PSLRA certification that was signed (but not sworn to) by a so-called "Authorized Agent for Token Fund I LLC," Pavel Pogodin.  ECF No. 25-1 at 23.  Typically, a member or employee of the fund moving for lead plaintiff signs the certification – that person is uniquely situated to know that the transactions presented are accurate.  At a minimum, courts require a person with "complete investment authority," and who is the "agent and attorney-in-fact with full power and authority to bring suit," to sign the certification.  *Weinberg*, 216 F.R.D. at 255.  In other words, the

certification's signatory must demonstrate his or her own standing to pursue the claims on behalf of the primary person or entity who was aggrieved. *See In re Smith Barney Transfer Agent Litig.*, 2006 WL 991003, at *5 (S.D.N.Y. Apr. 17, 2006) (Pauley, J.). Thus, courts do not appoint lead plaintiffs where the relationship between the certification's signatory and the movant is not established. *In re Enzymotec Ltd. Sec. Litig.*, 2015 WL 918535, at *3 (D.N.J. Mar. 3, 2015) (refusing to appoint lead plaintiff where the signatory did not "identify himself or provide any indication of his role within" the movant, and that it was "plain to this Court . . . that any proper certification would include such basic information"). CAOF's investigation has revealed that Mr. Pagodin is an attorney located in Puerto Rico.

## IV.     CAOF IS THE PRESUMPTIVE LEAD PLAINTIFF

As explained *supra* Section III.A., CAOF has demonstrated it has the greatest financial interest in the outcome of this litigation. And as further explained in its Motion for Lead Plaintiff appointment, CAOF satisfies the provisions of Rule 23, and is therefore the presumptive lead plaintiff. The following additional facts serve to further highlight CAOF's suitability for lead plaintiff appointment.

CAOF is an investment fund that was formed in 2017, with its principal place of business in Northbrook, Illinois. Elsasser Decl. ¶ 4. CAOF manages approximately $1.5 million worth of blockchain and cryptocurrency-focused assets on behalf of 75 United States-based investors, including a professional services accounting firm, a retirement plan, and individual investors. CAOF's clients provide a cross-section of EOS Securities investors as a whole, Elsasser Decl. ¶ 7, rendering CAOF particularly well-suited to serve as a Lead Plaintiff.

Brandon Elsasser,[2] who signed CAOF's certification, is a United States citizen and resident.  Elsasser Decl. ¶ 1.  He is a 2.5% owner in CAOF.  *Id.* ¶ 3. Further, he is a 40.5% owner and the manager and Chief Investment Officer of the Victoria Capital Management, LLC ("Victoria").  *Id.* ¶ 6.  To date, Mr. Elsasser has been able to access and provide CAOF's complete trading records of the EOS Tokens during the entire Class Period.  Going forward, his firsthand knowledge of CAOF and Victoria will enable him to provide information that is often the subject of discovery during the class certification in securities actions, including, among other things, CAOF's standing to assert claims here and any information Defendants might seek to rebut the fraud on the market presumption of reliance, including information about CAOF's and Victoria's trading strategies.

Finally, CAOF is administered by Nav Consulting, a fund administrator based in Oakbrook Terrace, IL, and ranked the top Fund Administrator by HFM Global.  Nav ensures transparent and reliable reporting and record-keeping of CAOF's investments and trades.  *Id.* ¶ 9.

CAOF's transparency, representative beneficiaries, and hands-on involvement of its Chief Investment Officer make it an ideal lead plaintiff.  *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013) (holding that the main purpose of the lead plaintiff under the PSLRA is to "empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole").

---

[2] To ward off a red herring that the Investor Group may assert against CAOF's motion, CAOF discloses that Mr. Elsasser, was previously a trader employed by Rosenthal Collins Capital Markets LLC, and he traded within a division known as DV Trading, LLC ("DV"), a proprietary trading firm.  Elsasser Decl. ¶ 10.  In 2017, the U.S. Commodity Futures Trading Commission ("CFTC") conducted an investigation into alleged "wash trading" at DV.  *Id.*  Mr. Elsasser and other traders and the firm were charged with engaging in illegal wash trades.   Although Mr. Elsasser believed his conduct was lawful, he determined to settle the charges submitted an Offer of Settlement, without admitting or denying that he engaged in wrongful conduct, which the CFTC accepted.  *Id.* ¶ 12.  As part of the settlement, Mr. Elsasser paid a $200,000 fine.  *Id.*

CAOF's selection of counsel further emphasizes its suitability to be appointed lead plaintiff.  Not only did it select Grant & Eisenhofer, P.A., with decades of experience prosecuting securities fraud actions, but it also selected The Bluhm Legal Clinic of the Northwestern Pritzker School of Law Complex Civil Litigation and Investor Protection Center (the "Center"), which provides representation to investors with limited income and access to counsel who have disputes with stockbrokers, investment advisers, securities firms and issuers. Investors across the nation thus have access to services that previously were not readily available, if available at all. In addition, the Center works with and acts as a screening mechanism for regulators, including FINRA, Department of Justice, the SEC and state regulators.  The Center also is involved is a variety of civil litigation including securities, fraud, insurance and civil rights.   Over the years, the Center has helped hundreds of investors, and in a variety of litigation proceedings, recovered over $100 million for its clients. The Center has worked with its former student and co-counsel in this case, James L. Koutoulas, who has experience particularly relevant to this case.  Mr. Koutoulas is both a cryptocurrency hedge fund manager, as the CEO of Typhon Capital Management and its Leonidas Cryptocurrency Fund (which has never traded EOS), and an accomplished investor protection advocate.  Mr. Koutoulas co-founded the grassroots Commodity Customer Coalition and, along with the Center, represented 38,000 victims of the MF Global Bankruptcy completely pro bono, leading them to a recovery of 101% of $6.7 billion in principal in just over 2 years.  They also represented 10,000 victims of the PFG fraud pro bono and led the recovery of over $300M.  CAOF's selected lead counsel represent a combination of expertise in securities fraud litigation, in cryptocurrency investment and law, and in providing investment legal services for the underserved.

## V.     CONCLUSION

For the foregoing reasons, and for the reasons set forth in its opening memorandum, CAOF respectfully requests that this Court (i) deny the Investor Group's motion to be appointed lead plaintiff and approve its choice of counsel; (ii) consolidate the above-captioned actions; (iii) appoint CAOF as Lead Plaintiff; and (iv) approve CAOF's choice of counsel as Lead Counsel for the Class.

Dated: New York, New York
June 22, 2020

Respectfully submitted,

 /s/ Daniel L. Berger
Jay W. Eisenhofer
Daniel L. Berger
Caitlin M. Moyna
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: jeisenhofer@gelaw.com
Email: dberger@gelaw.com
Email: cmoyna@gelaw.com


J. Samuel Tenenbaum
**Bluhm Legal Clinic of the Northwestern
Pritzker School of Law
Complex Civil Litigation and Investor
Protection Center**
375 East Chicago Ave.
Chicago, IL 60611
Tel: (312) 503-4808
Email: s-tenenbaum@law.northwestern.edu

*Counsel for Crypto Asset Opportunity Fund
LLC*