UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAMS, *et al.*,<br><br>                              Plaintiffs,<br><br>                    v.<br><br>BLOCK.ONE, *et al.*,<br><br>                              Defendants. | No. 1:20-cv-02809-LAK |
| CRYPTO ASSETS OPPORTUNITY FUND LLC, *et al.*,<br><br>                              Plaintiffs,<br><br>                    v.<br><br>BLOCK.ONE, *et al.*,<br><br>                              Defendants. | No. 1:20-cv-03829 |

**THE *WILLIAMS* PLAINTIFFS' OPPOSITION TO THE
*CRYPTO ASSETS OPPORTUNITY FUND LLC* PLAINTIFFS' COMPETING MOTION
FOR APPOINTMENT OF LEAD PLAINTIFFS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................1

I.      THE *WILLIAMS* PLAINTIFFS INCLUDE TWO PLAINTIFFS WHO EACH HAVE A
        LARGER FINANCIAL INTEREST THAN CAOF. ....................................................1

        A.      Token Fund has the Largest Financial Interest. ...................................................3

        B.      Ranjith Thiagarajan has the Second Largest Financial Interest. .........................4

        C.      Crypto Assets Opportunity Fund LLC's Loss Calculation is Erroneous and
                Should be Disregarded. .......................................................................................5

II.     THE *WILLIAMS* PLAINTIFFS HAVE SELECTED COUNSEL WHO ARE BEST
        POSITIONED AND QUALIFIED TO REPRESENT THE INTERESTS OF THE
        CLASS. ................................................................................................................8

III.    CAOF'S MOTION IS UNTIMELY. .........................................................................10

CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Atanasio v. Tenaris S.A.*,
  331 F.R.D. 21 (E.D.N.Y. 2019) ........................................................................................7

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
  873 F.3d 85 (2d Cir. 2017) ...............................................................................................8

*Francisco v. Abengoa, S.A.*,
  2016 WL 3004664 (S.D.N.Y. May 24, 2016) ..................................................................7

*Gronich v. Omega Healthcare Inv'rs, Inc.*,
  2018 WL 1626078 (S.D.N.Y. Mar. 27, 2018) ..................................................................7

*Gutman v. Sillerman*,
  2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015) ...........................................................10, 11

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................................................7

*In re Gentiva Sec. Litig.*,
  281 F.R.D. 108 (E.D.N.Y. 2012) ......................................................................................6

*In re NYSE Specialists Sec. Litig.*,
  240 F.R.D. 128 (S.D.N.Y. 2007) ....................................................................................10

*In re Sequans Comm'cns S.A. Sec. Litig.*,
  289 F. Supp. 3d 416 (E.D.N.Y. 2018) ...........................................................................6, 7

*Juliar v. Sunopta Inc.*,
  2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ...................................................................7

*McKenna v. Dick's Sporting Goods, Inc.*,
  2018 WL 1083971 (S.D.N.Y. Feb. 27. 2018)...................................................................2

*Messieh, et al. v. HDR Global Trading Limited, et al.*,
  No. 20-cv-3232-ALC, ECF No. 32 (S.D.N.Y. Jun. 4, 2020) ...........................................8

*Omdahl v. Farfetch Ltd.*,
  2020 WL 3072291 (S.D.N.Y. June 10, 2020) ..................................................................2

*Plaut v. Goldman Sachs Grp., Inc.*,
  2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)..............................................................2, 11

*Randall v. Fifth St. Fin. Corp.*,
  2016 WL 462479 (S.D.N.Y. Feb. 1, 2016)........................................................................7

*Skwortz v. Crayfish Co., Ltd.*,
   2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001)........................................................................10

*Vladimir v. Bioenvision, Inc.*,
   2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) .........................................................................3

**Statutes**

15 U.S.C. § 77a.............................................................................................................................1

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) ................................................................................................2

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................................1, 2, 7

S.D.N.Y. Local Civ. R. 7.1(a)(2) ...............................................................................................10

S.D.N.Y. Local Civ. R. 7.1(d) ...................................................................................................10

JD Anderson ("Anderson"), David Muhammad ("Muhammad"), Ranjith Thiagarajan ("Thiagarajan"), Chase Williams ("Williams"), and Token Fund I LLC ("Token Fund") (together, the "*Williams* Plaintiffs"), respectfully submit this memorandum in opposition to the Crypto Assets Opportunity Fund's ("CAOF") untimely motion for appointment of lead plaintiffs (the "CAOF Motion," ECF No. 27), and in further support of their motion for appointment of lead plaintiffs and approval of selection of Roche Cyrulnik Freedman LLP ("RCF") and Selendy & Gay ("S&G") as co-lead counsel (the "*Williams* Motion," ECF No. 21).

## INTRODUCTION

Two motions were filed pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") by class members seeking appointment as lead plaintiffs of the class (the "Class") of investors who purchased EOS tokens between June 26, 2017 and April 3, 2020 (the "Class  Period"). Of the two movant groups, the *Williams* Plaintiffs—and in particular, the two *Williams* Plaintiffs with the largest losses—are the "most adequate" plaintiffs under the PSLRA because (1) two of the *Williams* Plaintiffs each have larger losses than CAOF; (2) they selected counsel best positioned and qualified to represent the interest of the Class; and (3) they are the only set of plaintiffs who filed a timely motion.

## ARGUMENT

I.      **THE *WILLIAMS* PLAINTIFFS INCLUDE TWO PLAINTIFFS WHO EACH HAVE A LARGER FINANCIAL INTEREST THAN CAOF.**

To identify the "most adequate plaintiff," the PSLRA provides for "a presumption that the most adequate plaintiff in any private action arising under [15 U.S.C. § 77a *et seq*.] is the person or group of persons that … has the largest financial interest in the relief sought by the class; and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil

Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). Courts in this District have held on numerous occasions that magnitude of loss is the most significant factor in determining financial interest under the PSLRA. *See, e.g.*, *Omdahl v. Farfetch Ltd.*, 2020 WL 3072291, at *2 (S.D.N.Y. June 10, 2020) (Nathan, J.) ("The last factor, financial loss, is the most important of the four."); *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *2 (S.D.N.Y. Sept. 19, 2019) (Broderick, J.) ("The magnitude of the loss is the most significant factor."); *McKenna v. Dick's Sporting Goods, Inc.*, 2018 WL 1083971, at *4 (S.D.N.Y. Feb. 27. 2018) (Broderick, J.) ("Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures.").

Two of the *Williams* Plaintiffs—Token Fund and Thiagarajan—have suffered at least $537,306.98 and $61,703.56 in damages during the Class Period, respectively. In stark contrast, CAOF has lost no more than $37,200. The *Williams* Plaintiffs do *not* seek to aggregate their losses for purposes of determining which group has the largest financial interest. Rather, given the number of the Blue Sky claims at issue and their importance to this litigation (*see infra* Part II), the *Williams* Plaintiffs appropriately seek appointment as a group in order to ensure adequate representation for all claims asserted.

Accordingly, the *Williams* Plaintiffs, all of whom satisfy the Rule 23 requirements, should be selected as lead plaintiffs, as Token Fund's losses are well over 14-*times* those of CAOF's (representing over *half-a-million dollars* in additional losses) and Thiagarajan's losses nearly double the losses of CAOF.[1]

---

[1] Although each of the *Williams* Plaintiffs executed his or its respective certification under the belief that it was sworn under penalty of perjury, that phrase was inadvertently not included in the proffered certifications.  To avoid any argument that these certifications were defective, corrected certifications are attached as Exhibits 1–5 to the accompanying

### A.       Token Fund has the Largest Financial Interest.

Token Fund has the largest estimated financial interest of all lead plaintiff candidates, suffering at least $537,306.98 in damages. (ECF No. 25-4 at 52.) Token Fund is an LLC formed under the laws of Puerto Rico on June 6, 2020. *See* Roche Decl. Ex. 6. The sole member of Token Fund extensively traded EOS from California and Puerto Rico on the Bitfinex and Binance exchanges between January 2018 and August 2019, including during the Block.one initial coin offering ("ICO"). (ECF No. 25-1 at 22.) Token Fund is fully prepared to steer this litigation as lead plaintiff.

On Binance alone, Token Fund purchased 83,190.42 EOS tokens for $669,261.67 and sold 72,438.89 EOS tokens for $431,434.57. After accounting for fees paid on those transactions and adjusting for EOS tokens still held, Token Fund's realized trading losses on the Binance exchange totaled $209,137.97. Rescission damages on the 10,751.53 EOS tokens Token Fund still holds adds $28,169.01 to the tally, for total damages of $237,306.98. (ECF No. 25-4 at 52.) Each of these transactions has been fully supported through Token Fund's certification, and Token Fund's fully documented losses exceed CAOF's *incorrectly* calculated (and inflated) losses by a factor of over 2:1.  Moreover, when CAOF's *actual* losses of $37,121 are considered (rather than its unsupported claim of $92,147 in losses), Token Fund's fully documented losses exceed CAOF's losses by over *five-fold.* Accordingly, Token Fund's losses, net shares purchased, and net expenditures on Binance alone far exceed CAOF's.

Separate and apart from Token Fund's realized trading losses of $209,137.97 on the

---

Declaration of Kyle Roche.  *See Vladimir v. Bioenvision, Inc.*, 2007 WL 4526532, at *9 (S.D.N.Y. Dec. 21, 2007) ("[T]he Court has discretion in the lead plaintiff appointment process and can decide to use or ignore the alleged technical (as opposed to substantive) inadequacy of a certificate as a determinative factor.").

Binance exchange, Token Fund's losses on the Bitfinex exchange were even greater than its losses on Binance. Bitfinex has refused to provide access to individual trade data, but the available documentation shows that Token Fund purchased and sold a total of 85,685 EOS tokens on Bitfinex, with losses conservatively estimated at $300,000. (ECF No. 25-1 at 22.) Unfortunately, this lack of access is common among individuals who trade on crypto-asset exchanges. Unlike traditional securities, where trading histories can be easily accessed through registered U.S. brokers, many crypto-asset exchanges do not provide the same level of transparency. Token Fund and its sole member are committed to pursuing this information from crypto-asset exchanges that offered EOS tokens in the United States, both for its benefit and the benefit of the class.

In any event, even if Token Fund's certified losses on Bitfinex were excluded, and the only losses to be considered were Token Fund's documented losses on the Binance exchange, Token Fund's losses easily exceed CAOF's, and therefore Token Fund should be selected as lead plaintiff under the PSLRA. Token Fund is fully prepared to steer this litigation as lead plaintiff for the benefit of the Class.

**B.      Ranjith Thiagarajan has the Second Largest Financial Interest.**

Thiagarajan has the second largest estimated financial interest of all lead plaintiff candidates, at $61,703.56 of damages inclusive of purchases through the Class Period and $64,793.46 of damages inclusive of purchases through the present. (ECF No. 25-4 at 22.) Thiagarajan is a resident of California who transacted in EOS on Binance beginning in March 29, 2018 (including during the Block.one ICO) and throughout the Class period. Thiagarajan purchased 48,166.92 EOS tokens for $331,167.72 during the Class Period, and sold 52,215.15 EOS tokens for $269,464.16, for realized trading losses of $61,703.56 after factoring in transaction fees from purchases within the Class Period and $64,793.46 in losses inclusive of

purchases through the present. *Id*. As explained below, his loss is nearly double the amount of CAOF.

Like Token Fund, Thiagarajan does not have access to all his EOS purchases, as some of these purchases were made during the Block.one ICO and subsequentially transferred to Binance. For that reason, the number of tokens sold that are identified by date in his certification exceed the number purchased that are identified by date. To be clear, the inclusion of these missing transactions only increases his financial interest in this litigation, as the missing transactions relate solely to purchases of EOS, not sales, and thus his realized trading losses are *higher* than the figure documented above. He is also similarly prepared to pursue this information in discovery, both for his benefit and the benefit of the class. Thiagarajan is fully prepared to steer this litigation as lead plaintiff for the benefit of the Class.

      C.      **Crypto Assets Opportunity Fund LLC's Loss Calculation is Erroneous and Should be Disregarded.**

The damages chart provided in the untimely CAOF Motion provides no basis for the claimed $92,147 in losses. (ECF No. 27 at 10.) As explained below, the actual damages incurred by CAOF is less than half the amount claimed. Since CAOF fails to provide any basis for its claimed losses, the figure should be disregarded. Moreover, even if CAOF's loss figure were accepted (which it should not be), it would still be far less than Token Fund's documented losses.

As an initial matter, CAOF erroneously calculates its "Net Coins Purchased" as 47,889.6948. *Id.* Net Coins Purchased *should* represent the total amount of EOS tokens purchased by a plaintiff less the total amount of EOS tokens sold. (*See* ECF No. 21 at 8.) The 47,889.6948 figure cited by CAOF is *actually* the total amount of EOS tokens sold. Because

CAOF allegedly purchased 49,241.0176 EOS tokens, its Net Coins Purchased would be 1,351.3228 (49,241.0176 minus 47,889.6948).

Based upon the prices listed in CAOF's declaration, CAOF expended $255,456.10 for its above purchases, and received $218,335.10 upon selling those same tokens, yielding realized losses of $37,121. Inexplicably, however, CAOF's counsel calculates a loss figure (which is nowhere reflected in CAOF's declaration) of $92,147. Because this figure appears to be wholly unsupported by CAOF's actual trades, it should be disregarded.

Using the same methodology as the *Williams* Plaintiffs, CAOF's trades in EOS resulted in total damages of $36,229.13. CAOF purchased a total of 49,241.0176 EOS tokens for $255,456.10 and sold a total of 47,889.6948 EOS tokens for $218,335.10. After adjusting for the EOS tokens still held, its realized trading loss is $33,445.40. In addition, it has rescission damages of $2,783.72 for the 1,351.3228 EOS tokens still held, which when added to its realized trading losses, totals $36,229.13. These losses are dwarfed by Token Fund's losses and are approximately half of Thiagarajan's losses.

Recognizing the insufficiency of its losses, CAOF tries to bury its problem by asserting that the PSLRA was passed with the goal of having securities class actions prosecuted by institutional investors. (ECF No. 27 at 12.) However, as the court in *In re Sequans Communications S.A. Securities Litigation*, 289 F. Supp. 3d 416 (E.D.N.Y. 2018), explained, not only is this preference "not embodied in the statutory text in any respect," but "that preference has been 'determinative' when an 'institutional investor has a slightly lower loss than another potential lead plaintiff.'" *Id.* at 421–22 (quoting *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012)). In *Sequans*, the court selected two individual lead plaintiffs whose losses were nearly double those of the institutional investor and distinguished

prior cases in which the differentials were smaller. *See id.* at 422 (citing *Randall v. Fifth St. Fin. Corp.*, 2016 WL 462479, at *2 (S.D.N.Y. Feb. 1, 2016) (Kaplan, J.); *Juliar v. Sunopta Inc.*, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (Crotty, J.)). Here, Token Fund's damages are over *14 times* those of CAOF, and Thiagarajan's damages are *double* those of CAOF, hardly qualifying CAOF's losses as "slightly lower." *Id.*

Numerous courts have appointed individuals as lead plaintiff over institutional investors that have smaller losses. The PSLRA "favors institutional investors only insofar as they have the largest financial interest in the action and meet the requirements of Rule 23." *Gronich v. Omega Healthcare Inv'rs, Inc.*, 2018 WL 1626078, at *3 (S.D.N.Y. Mar. 27, 2018) (Buchwald, J.). The court in *In re eSpeed, Inc. Securities Litigation*, 232 F.R.D. 95 (S.D.N.Y. 2005) (Scheindlin, J.), for example, rejected the appointment of a pension fund as lead plaintiff when a group of four family members incurred losses ($166,743) greater than those of the pension fund ($121,264). *Id.* at 100-02; *see also Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 30 (E.D.N.Y. 2019) (selecting individual lead plaintiff whose approximate losses were $108,918.92 over institutional investor with losses of $81,922.14 and noting that the 33% difference in losses was "significant"); *Francisco v. Abengoa, S.A.*, 2016 WL 3004664, at *5 (S.D.N.Y. May 24, 2016) (Ramos, J.) (rejecting appointment of institutional investor as lead plaintiff and noting that "even if the difference in losses were considered de minimis, [movant] has not provided authority suggesting that its status as an institutional investor can overcome the presumption of adequacy accorded" to the plaintiffs with the largest financial interest). Accordingly, the *Williams* Plaintiffs should be appointed lead plaintiffs because both Token Fund and Thiagarajan have a much larger financial interest in this litigation.

II.     **THE *WILLIAMS* PLAINTIFFS HAVE SELECTED COUNSEL WHO ARE BEST POSITIONED AND QUALIFIED TO REPRESENT THE INTERESTS OF THE CLASS.**

The *Williams* Plaintiffs have selected counsel in RCF and S&G who are best able to represent the interests of the Class for several reasons.

*First*, RCF and S&G are the only proposed plaintiffs' counsel with the requisite experience litigating matters related to crypto-assets. This experience will be critical to representing the interests of the Class because the complexities and novelties presented by crypto-assets pose unique legal issues that require specific expertise to address. As previously detailed (ECF No. 21 at 12-15), RCF and S&G possess unapparelled experience litigating matters relating to crypto-assets and have been jointly appointed as interim class counsel in other high-profile cryptocurrency matters in this Court, as well as in other class actions. *See, e.g.*, *Messieh, et al. v. HDR Global Trading Limited, et al.*, No. 20-cv-3232-ALC, ECF No. 32 (S.D.N.Y. Jun. 4, 2020) (Carter, J.) (RCF and S&G serving as interim class counsel in parallel crypto-asset action); *Leibowitz v. Ifinex Inc.*, No. 1:19-cv-09236-KPF (S.D.N.Y.) (Failla, J.) (RCF and S&G serving as interim class counsel in another large crypto-asset class action); *see also Hyland v. Navient Corp.*, No. 1:18-cv-9031-DLC (S.D.N.Y.) (Cote, J.) (S&G serving as class counsel). By contrast, CAOF's counsel has failed to identify any experience in litigating matters as class action counsel involving crypto-assets. Experience in crypto issues are crucial to protecting the interests of the Class.

S&G attorneys have recovered over $45 billion for their clients. In fact, in a single set of litigations that S&G attorneys filed for the Federal Housing Finance Agency, as conservator for Fannie Mae and Freddie Mac, against over a dozen of the world's largest investment banks, S&G attorneys recovered over $25 billion. *See generally Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85 (2d Cir. 2017). RCF and S&G are therefore best positioned and

qualified to address the complexities of this action.

*Second*, RCF and S&G have demonstrated a commitment to devoting substantial time and resources protecting the Class's interests in this litigation. RCF and S&G's pre-suit investigation into the claims at issue in this litigation culminated in the filing of eleven class actions in this District, all which assert federal and state securities claims arising from the sale of unregistered securities that were first offered through similar initial coin offerings. Having a single set of counsel guiding these eleven actions will benefit each of the respective classes by ensuring consistency of arguments and legal theories.

*Lastly,* since bringing the claims set forth in the first-filed Complaint, RCF and S&G have shown leadership in protecting the Class's interests. In addition to serving and securing waivers of service from Defendants Block.one and Larimer and entering into a scheduling stipulation with them, RCF and S&G have continued to demonstrate leadership in this Action, most recently by filing a proposed amended complaint that seeks to add 33 Blue Sky claims. (ECF No. 39-1.) These additional claims seek to protect the interest of *all* class members by ensuring that they benefit from less restrictive statute of limitations provisions than the federal claims. Counsel's choice of claims has been carefully calibrated to maximize the recovery to the Class by focusing on the strict liability claims asserted in the initial Complaint and Proposed Amended Complaint.

In contrast, the CAOF complaint is largely duplicative of the first-filed *Williams* Complaint. The only difference is that the CAOF complaint asserts several additional federal claims, all of which are immaterial for purposes of appointing lead counsel, and each of which introduces certain complications of proof not present in the claims asserted by the *Williams* Plaintiffs.

### III.      CAOF'S MOTION IS UNTIMELY.

CAOF filed its memorandum supporting its motion for lead plaintiff nearly nine hours after the June 8, 2020 deadline. (ECF No. 27.) They have proffered no basis for their neglect in complying with the PSLRA's statutory deadline for submitting a lead plaintiff motion. Accordingly, CAOF's motion should denied as untimely.

The PSLRA's 60-day lead plaintiff motion deadline has been strictly adhered to within this District. *See Gutman v. Sillerman*, 2015 WL 13791788, at *3 (S.D.N.Y. Dec. 8, 2015) (McMahon, J.) (to be considered for lead plaintiff, a party must have either filed the complaint "that triggers the beginning of the running of the PSLRA clock" or a timely lead plaintiff motion); *Skwortz v. Crayfish Co., Ltd.*, 2001 WL 1160745, at *5 (S.D.N.Y. Sept. 28, 2001) (Batts, J.) (denying the motion of a movant that neither filed the initial complaint nor filed a timely motion for appointment as lead plaintiff). Generally, exceptions are only made when no lead plaintiff candidates would otherwise qualify. *See In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 142 (S.D.N.Y. 2007) (Sweet, J.) ("In general, courts have only considered lead plaintiff motions filed outside of the sixty-day window when necessary to have a lead plaintiff to represent the class."). "Except for letter-motions as permitted by Local Rule 7.1(d) or as otherwise permitted by the Court, all motions shall include … [a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined …." S.D.N.Y. Local Civil Rule 7.1(a)(2).  A lead plaintiff motion is not exempt from this rule. Because CAOF failed to submit a timely memorandum of law in support of its motion for lead plaintiff status, its motion is untimely and should be denied.

Moreover, among the factors that a court should consider in determining whether counsel is qualified to serve as lead counsel is their ability to meet statutory deadlines. The

tactical decision of CAOF's counsel to file an untimely memorandum of law in support of their motion, presumably to seek an unfair advantage by revising it based upon the *Williams* Plaintiffs' timely memorandum of law, should be considered by the Court in determining lead plaintiff and lead counsel. *Gutman*, 2015 WL 13791788, at \*3 ("A principal purpose of the PSLRA was to prevent … gamesmanship … [by counsel], by putting everyone who wanted lead plaintiff status on an equal footing…."); *accord Plaut*, 2019 WL 4512774, at \*5.

<u>**CONCLUSION**</u>

Token Fund and Thiagarajan each possess larger financial interests in the relief sought by the Class than CAOF, meet the requirements of adequacy and typicality, have retained counsel most suited to litigate the issues at hand, and submitted a timely motion for appointment of lead plaintiff. Accordingly, the *Williams* Motion should be granted and the CAOF Motion denied.

Dated: June 22, 2020

Respectfully submitted,

/s/ Philippe Z. Selendy
Philippe Z. Selendy
Jordan A. Goldstein
Joshua S. Margolin
Oscar Shine
SELENDY & GAY, PLLC
1290 Sixth Avenue, 17th Floor
New York, NY 10104
pselendy@selendygay.com
jgoldstein@selendygay.com
jmargolin@selendygay.com
oshine@selendygay.com

/s/ Kyle W. Roche
Kyle W. Roche
Edward Normand
Velvel (Devin) Freedman (*pro hac* pending)
Joseph M. Delich
ROCHE CYRULNIK
    FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rcfllp.com
tnormand@rcfllp.com
vel@rcfllp.com
jdelich@rcfllp.com

*Counsel for Plaintiffs and the Proposed Class*

11