# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHASE WILLIAMS AND WILLIAM ZHANG, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>BLOCK.ONE, BRENDAN BLUMER, and DANIEL LARIMER,<br><br>    Defendants. | Civ. No. 1:20-cv-2809-LAK<br><br>CLASS ACTION |
| CRYPTO ASSETS OPPORTUNITY FUND LLC and JOHNNY HONG, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br>  v.<br><br>BLOCK.ONE, BRENDAN BLUMER, DANIEL LARIMER, IAN GRIGG, and BROCK PIERCE,<br><br>    Defendants. | Civ. No.: 1:20-cv-3829<br><br>CLASS ACTION |

**CRYPTO ASSETS OPPORTUNITY FUND LLC's REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR CONSOLIDATION OF ACTIONS, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL SELECTION**

Crypto Assets Opportunity Fund, LLC ("CAOF") respectfully submits this reply memorandum of law in further support its motion for lead plaintiff appointment and approval of its choice of counsel (ECF No. 22).

I. **PRELIMINARY STATEMENT**

The "*Williams* Plaintiffs"[1] have advanced no new argument or reason why they should be appointed Lead Plaintiff over CAOF in their opposition brief (ECF No. 43). In fact, their argument further underscores their unsuitability for appointment under the PSLRA either as a group or as standalone plaintiffs.

*First*, the *Williams* Plaintiffs' motion seeks appointment of five separate investors as "Lead Plaintiff." (ECF No. 20). Under the PSLRA, the Court adopts a "presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons" with the largest financial interest in the relief sought by the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). By moving for appointment of five separate investors, the *Williams* Plaintiffs have sought appointment of a "group." As such, under uncontroverted case law, their five investors must demonstrate both a prior relationship (i.e., they weren't put together just to move for lead plaintiff) and a plan to act cohesively and supervise their counsel. (ECF No. 40 at 8-12 (and authority cited therein)). The *Williams* Plaintiffs have done neither, and their motion should be rejected for this reason alone. Realizing that they cannot demonstrate that they are a "group" for PSLRA purposes, they now switch horses and submit that the investors in their group should be considered separately. *See, e.g.*, EFC No. 43 at 2 (arguing that the *Williams* Plaintiffs are the "'most adequate' plaintiffs

---

[1] Lead plaintiff movants JD Anderson, David Muhammad, Ranjith Thiagarajan, Chase Williams, and Token Fund I LLC refer to themselves collectively as the "*Williams* Plaintiffs" in their opposition to CAOF's motion for appointment as lead plaintiff. (ECF No. 43 at 1). To avoid confusing the Court, CAOF adopts this naming convention herein.

1

because [] two of the Williams Plaintiffs each have larger losses than CAOF"). They ask the Court to ignore three of the investors with small losses (Anderson, Williams and Muhammad) and just address the two with larger claimed losses (Token Fund I LLC ("Token Fund") and Thiagarajan). But that is not how the lead plaintiff application process works. If the *Williams* Plaintiffs had wished to be considered independently, or in some other combination, they should have made five separate motions for lead plaintiff. The motion they made seeks appointment of a group consisting of five investors; that is what the Court must evaluate. *See infra* Section II.A.

*Second*, two of the *Williams* Plaintiffs' five investors – the Token Fund and Thiagarajan – admit that they did not submit all of their transactions in Block.one securities during the class period. (ECF No. 43 at 4-5) (acknowledging Token Fund's and Thiagarajan's lack of access to data). But the PSLRA **requires** a lead plaintiff candidate to "set forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2)(A). Failure to do so disqualifies the investor from serving as Lead Plaintiff. *Micholl v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018).

While the *Williams* Plaintiffs offer an excuse that it is difficult or impossible to obtain data from the exchanges on which they traded, this justification (even if true) is irrelevant and is fatal to their motion, either as part of the *Williams* Plaintiffs group or as individual lead plaintiff applicants. (ECF No. 43 at 4-5). By contrast, CAOF provided in its motion **all** of its transactions in Block.one securities. *See infra* Section II.B.

*Third*, in its opposition brief, CAOF pointed out that public information showed that the Token Fund ceased operations in September 2018. (ECF No. 40 at 13-15). The Token Fund does not dispute this point; instead, it makes the incredible admission that it did not exist until June 6, 2020. But if it did not exist until June 2020, how could the Token Fund have made the purchases

in EOS Securities it claims in its certification to have made in 2018 and 2019? (ECF No. 43 at 3). It couldn't have. The Token Fund attempts to avoid this disqualifying fact by now submitting a "supplemental certification" of a so-called "authorized agent," Pavel Pogodin, who claims that the purchases were made, not by the Token Fund itself, but by the Token Fund's unidentified "sole member." (ECF No. 44-5 at ¶¶3, 5). Again, this fact defeats the *Williams* Plaintiffs' motion: the group includes the Token Fund, not its "sole member"; if the purchases were made by the "sole member," then that person or entity would have to be the movant, not the Token Fund. Since the Token Fund was not formed until June 2020, it did not purchase any Block.one securities during the Class Period, and it and the entire group cannot be Lead Plaintiff. *See infra* Section II.C.

In sum, the *Williams* Plaintiffs have advanced no argument to defeat CAOF's motion for lead plaintiff. CAOF's calculations were done under well-established methods for estimating losses at the lead plaintiff phase. Because it has the largest financial interest in the relief sought, and otherwise is an adequate plaintiff, CAOF's motion should be granted. *See infra*, Section III.

## II. THE *WILLIAMS* PLAINTIFFS HAVE ONLY CONFIRMED THAT THEY SHOULD NOT BE APPOINTED LEAD PLAINTIFF

### A. THE MEMBERS OF THE *WILLIAMS* GROUP MUST DEMONSTRATE THAT THEY CAN ACT COHESIVELY

Recognizing now that they are too disparate and have provided no evidence that they will act cohesively, the *Williams* Plaintiffs claim they are *not* seeking appointment as a group, but as individual plaintiffs. But that is just semantics, and in fact, makes matters worse for them because they are admitting that they will not act cohesively in directing this litigation. A lead plaintiff appointment of five unrelated parties – who do not even pretend that they intend to act cohesively as a group – would run far afield of the PSLRA's policy goals. *See in re Donnkenny Inc., Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997) (Cedarbaum, J.) ("To allow an aggregation of

unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff."); *see also* ECF No. 40 at 8-12 (authority cited therein).

The *Williams* Plaintiffs try to justify the appointment of five unrelated investors by claiming that all five are necessary given the number of Blue Sky claims at issue in the litigation. (ECF 43 at 2). However, they do not explain how the inclusion of all four individuals, plus one "fund," enables them to assert claims arising under 33 different states' Blue Sky laws. It is unclear if they are seeking appointment in subclasses, or not. Further, a lead plaintiff may be appointed as class representative for claims that it does not have standing to assert as long as the parameters of Rule 23 are satisfied. *See Langan v. Johnson & Jonson Consumer Cos., Inc.*, 897 F.3d 88, 96 (2d Cir.2 2018) (holding that whether a plaintiff could bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3)).

The failure to meet the well-settled standards for appointment of a group as lead plaintiff is fatal to the *Williams* Plaintiffs' motion. The failure to follow proper procedure, or even clarify intent with regard to which lead plaintiff applicants should be considered and for what purpose(s), is fatal to the separate motions of its individual members.

**B. TOKEN FUND AND THIAGARAJAN ADMIT THAT THEY HAVE NOT PROVIDED COMPLETE TRANSACTION DATA**

In its opposition brief, CAOF pointed out that the Token Fund and Thiagarajan did not provide complete transaction data. *See* ECF No. 40 at 5-7. The PSLRA is clear that a lead plaintiff applicant must provide data for *all* transactions made during the Class Period. 15 U.S.C. § 78u-4(a)(2)(A) (requiring that each movant submit a "sworn certification" setting forth "all of the [movant's] transactions" in the relevant security); *Micholl*, 2018 WL 1307285, at *9 (rejecting

lead plaintiff application because of "errors and discrepancies" in schedule of transactions).[2] This information is necessary so that the Court can evaluate the "financial interest" of the movant, to determine which candidate has "the largest financial interest in the relief sought by the class." Absent complete data, a Court would only be guessing.

In response, the Token Fund and Thiagarajan now *admit* that they have provided incomplete transaction data. The Token Fund asserts that "Bitfinex has refused to provide access to individual trade data . . . . Unfortunately this lack of access is common among individuals who trade on crypto-asset exchanges." (ECF 43 at 4). Thiagarajan offers a similar excuse: "some . . . purchases were made during the Block.one ICO and subsequentially [sic] transferred to Binance. For that reason, the number of tokens sold that are identified by date in his certification exceed the number purchased that are identified by date." *Id.* at 5. These excuses are untenable. Lead plaintiff applicants do not access their trading information from the exchanges on which the securities traded. They are expected to keep and provide accurate and complete records whether through their brokers, as the *Williams* Plaintiffs point out (ECF No. 43 at 4), or through their personal diligence.

Unlike the Token Fund and Thiagarajan, CAOF has exercised such diligence, and provided the Court with a complete list of its transactions. It obtained these records from its independent fund administrators – its previous administrator Liccar, and its current administrator Nav Consulting, Inc. These independent administrators have direct visibility into CAOF's "hot wallets"[3] on its trading platforms and pull the data from those wallets. Thus, there is no concern

---

[2] The application of the *Williams* Plaintiffs – whether separately or as a group – also fails because they did not file sworn certifications with their application on June 8, 2020. *See* ECF No. 40 at 12. The submission of sworn certifications with their opposition brief is too late. *Id.*

[3] In cryptocurrency parlance, "wallets" are akin to "accounts" – they are tools for storing, sending, and receiving cryptocurrency tokens. A "hot wallet" is connected to the internet.

that CAOF will not be able to provide all relevant information concerning its transactions in the EOS Securities.

The Token Fund's and Thiagarajan's admissions that they did not provide complete data is disqualifying. They are effectively asking the Court to accept their say-so that the missing transactions only increased their losses. But without any actual evidence, the Court is free to and should disregard this assertion. Without a complete picture of these movants' trading activity in the EOS Securities, it is impossible for the Court to calculate the *Lax* factors of their transactions. For example, it is possible that the Token Fund realized gains that offset its claimed losses here. We simply do not know, without complete data.

### C. THE TOKEN FUND DID NOT PURCHASE ANY BLOCK.ONE SECURITIES DURING THE CLASS PERIOD

In its opposition brief, CAOF presented evidence that raises serious concerns about the Token Group's suitability to serve as lead plaintiff. (ECF 40 at 13-16). In their own opposition brief, the *Williams* Plaintiffs have demonstrated that CAOF's concerns were warranted. The Token Fund has now admitted that it did not exist until June 6, 2020 (ECF No. 43 at 3) and that the purchases of Block.one securities it claims to have made during the Class Period were in reality made by its unidentified "sole controlling member." (ECF 44-5 ¶¶ 3, 5). The Court may only consider the movant before it, i.e., the Token Fund. It may not consider whether its "sole controlling member" should be appointed lead plaintiff, since that person or entity was not included in the *Williams* Plaintiffs group and did not move for appointment. Further, we know nothing about this "sole controlling member," including whether it is a person or an entity, where it resides or is organized (or how), what its investment experience is, or any other factors that would allow the Court to evaluate whether it is an adequate and typical lead plaintiff under Rule 23.

Further, the supplemental Pogodin Declaration strongly suggests that the Token Fund's participation is lawyer-driven. Mr. Pogodin is an attorney with a track record of litigating against cryptocurrency companies. In March 2018, Mr. Pogodin formed Bitcoin Manipulation Abatement ("BMA"), a Puerto Rican company, for the purpose of filing actions against several of the most prominent companies in the blockchain and cryptocurrency industry. *See, e.g.*, *BMA LLC v. Ripple Labs, Inc. et al.*, 4:20-cv-3022-RS (N.D. Cal. 2020); *BMA LLC v. FT Trading Ltd., et al.*, 4:10-cv-07425 (N.D. Cal. 2019). Thus, Mr. Pogodin is no stranger to the practice of forming entities solely for the purpose of filing lawsuits, and his participation increases the chance that the Token Fund's lead plaintiff application is entirely lawyer-driven.

## III. CAOF SHOULD BE APPOINTED LEAD PLAINTIFF

### A. CAOF HAS THE HIGHEST LOSSES UNDER ANY CALCULATION

No matter what measure is used, CAOF has a larger financial interest than the *Williams* Plaintiffs. The *Williams* Plaintiffs mistakenly portray CAOF's loss calculation as "erroneous," but an apples-to-apples comparison under the *Williams* Plaintiffs' preferred methodology shows that the *Williams* Plaintiffs still cannot demonstrate a larger financial interest than CAOF.

Excluding the *Williams* Plaintiffs' inaccurate or incomplete data, each and every measure of financial interest under the *Lax-Olsten* factors shows that CAOF's financial interest in this litigation is the largest. *See* ECF No. 40 at 12-13. CAOF calculated its loss under the fourth *Lax-Olsten* factor by using a standard LIFO share-matching analysis, excluding gains realized during the Class Period. That methodology yielded a loss of $92,147.34. (ECF No. 27 at 14).

Although the *Williams* Plaintiffs take issue with CAOF's loss calculation (ECF No. 43 at 9-10), CAOF does not need to debate the *Williams* Plaintiffs on the best methodology for calculating losses because CAOF has a larger loss even when applying the *Williams* Plaintiffs' preferred methodology. Specifically, the *Williams* Plaintiffs netted the value of purchases and

7

sales during the Class Period, and then adjusted for both the sale value and rescission losses for EOS tokens still held after the end of the Class Period. *See id.* at 10. It makes no difference: using the *Williams* Plaintiffs' method, CAOF still has a significantly larger loss than Williams, Anderson and Muhammad, who are the only *Williams* Plaintiffs who submitted complete trading data. Moreover, CAOF has a larger demonstrated financial interest than the *Williams* Plaintiffs under all the *Lax-Olsten* factors:

| Movant | EOS Tokens Purchased | Net EOS Tokens Purchased | Net Expenditure | Apples-to-Apples Loss[4] |
|---|---|---|---|---|
| **CAOF** | **49,241.02** | **1,351.32** | **$37,121** | **$36,229.13** |
| | | | | |
| *Williams* Plaintiffs: | | | | |
| Williams | 8,222.87 | -0.39 | $8,101 | $8,100.93 |
| Anderson | 3,828.43 | 7.12 | $3,367 | $3,630.69 |
| Muhammad | 5,361.52 | 43.98 | $1,585 | $1,615.33 |
| **Total *Williams* Plaintiffs:** | **17,412.82** | **50.71** | **$13,053** | **$13,346.95** |

### B. CAOF'S COMPLAINT IS NOT DUPLICATIVE OF THE WILLIAMS COMPLAINT

CAOF does not wish to get into a dispute about the relative merits of their counsel versus the *Williams* Plaintiffs' counsel. Both sets of counsel have esteemed backgrounds and credentials that speak for themselves. However, in an apparent attempt to impugn the capabilities of CAOF's

---

[4] Per the *Williams* Plaintiffs' insistence, this includes rescission damages, which CAOF maintains are not appropriate for consideration under a *Lax-Olsten* analysis. Using a LIFO share-matching analysis while netting gains but not including rescission damages, CAOF calculates its loss to be $33,386.30 on its Class Period purchases.

8

counsel, the *Williams* Plaintiffs argue that the complaint filed by COAF is "largely duplicative of the first-filed *Williams* complaint." *Id*.

CAOF's complaint was not "largely duplicative" of the *Williams* Complaint. Rather, CAOF's counsel conducted an independent and thorough investigation to determine if additional *federal* securities claims could be brought that would benefit the class, and concluded that Defendants made a number of false statements that gave rise to claims under Section 12(a)(2) of the Securities Act and Section 10(b)(5) of the Exchange Act. This is not merely the addition of a few irrelevant federal claims; rather, this vastly expands the theories of the case and potential avenues of recovery for aggrieved EOS Securities investors.[5]

### C. CAOF'S MOTION WAS TIMELY FILED

The PSLRA's lead plaintiff appointment provision provides that "not later than 60 days after the date on which the notice [of the class action] is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4 (a)(3)(B). The lead plaintiff motion must be accompanied by a certification with the requirements spelled out in 15 U.S.C. § 78u-4(a)(3)(A), including a list of the plaintiff's transactions in the security that is the subject of the complaint during the class period. CAOF timely filed the motion (ECF No. 22) and certification (ECF No. 23-3) on June 8, 2020, with all information required by the PSLRA. Thus, CAOF's submission was timely.

This Court requires that motions be accompanied by a memorandum in support thereof. Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York 7.1(a)(2). Because of a mistake by Grant & Eisenhofer, one of CAOF's counsel,

---

[5] The *Williams* Plaintiffs argue that they are better qualified to be lead plaintiff because their counsel procured service waivers and entered into a scheduling stipulation with Defendants Block.one and Larimer. (ECF No. 43 at 9). CAOF's counsel has done the same. (ECF No. 20, *Crypto Assets Opportunity Fund LLC, et al. v. Block.One, et al.*, 1:20-cv-3829).

CAOF's Memorandum of Law In Further Support of Motion of the Crypto Assets Opportunity Fund, LLC for Consolidation of Actions, Appointment of Lead Plaintiff. And Approval of Lead Counsel Selection, and in Opposition to Competing Motion (ECF No. 40) was not filed with the motion on June 8, but nine hours later, at 8:56 am on June 9, 2020. *See* Declaration of Toby S. Saviano at ¶¶ 6, 8. The late filing was inadvertent, and not designed to secure any advantage with respect to the motion. Notably, nothing in CAOF's memorandum of law changed following the *Williams* Plaintiffs' submission, *id.* at ¶ 9, and the *Williams* Plaintiffs have suffered no prejudice. *Grewal v. Cuneo Gilbert & LaDucal LLP*, 2017 WL 1215752, at * 17 (S.D.N.Y. Mar. 31, 2017) (declining to strike reply memorandum that was untimely filed because neglect may be excused after taking into account: "[1] the danger of prejudice to the [opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the reasonable control of the movant, and [4] whether the movant acted in good faith," and holding that "[e]xcusable neglect . . . may encompass delays caused by inadvertence, mistake, or carelessness, at least when the delay was not long, there was no bad faith, there was no prejudice to the opposing party, and the movant's excuse has some merit") (citations omitted). Here, the neglect was excusable because it resulted from inadvertence and there was no prejudice to the *Williams* Plaintiffs.

## IV. CONCLUSION

For the foregoing reasons, and for the reasons set forth in its opening memorandum, and in its memorandum in opposition to the *Williams* Plaintiffs' motion, CAOF respectfully requests that this Court (i) deny the *Williams* Plaintiffs' motion to be appointed lead plaintiff and approve their choice of counsel; (ii) consolidate the above-captioned actions; (iii) appoint CAOF as Lead Plaintiff; and (iv) approve CAOF's choice of counsel as Lead Counsel for the Class.

Dated: New York, New York  
June 29, 2020

Respectfully submitted,

 */s/ Daniel L. Berger*  
Jay W. Eisenhofer  
Daniel L. Berger  
Caitlin M. Moyna  
**GRANT & EISENHOFER P.A.**  
485 Lexington Avenue  
New York, NY 10017  
Tel.: (646) 722-8500  
Fax: (646) 722-8501  
Email: jeisenhofer@gelaw.com  
Email: dberger@gelaw.com  
Email: cmoyna@gelaw.com


J. Samuel Tenenbaum  
**Bluhm Legal Clinic of the Northwestern Pritzker School of Law**  
**Complex Civil Litigation and Investor Protection Center**  
375 East Chicago Ave.  
Chicago, IL 60611  
Tel: (312) 503-4808  
Email: s-tenenbaum@law.northwestern.edu

*Counsel for Crypto Assets Opportunity Fund LLC*