UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAMS, *et al.*,<br><br>                    Plaintiffs,<br><br>           v.<br><br>BLOCK.ONE, *et al.*,<br><br>                    Defendants. | No. 1:20-cv-02809-LAK |
| CRYPTO ASSETS OPPORTUNITY FUND LLC, *et al.*,<br><br>                    Plaintiffs,<br><br>           v.<br><br>BLOCK.ONE, *et al.*,<br><br>                    Defendants. | No. 1:20-cv-03829-LAK |

**THE *WILLIAMS* PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT OF LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF ROCHE CYRULNIK FREEDMAN LLP <u>AND SELENDY & GAY PLLC AS CO-LEAD COUNSEL</u>**

JD Anderson, David Muhammad, Ranjith Thiagarajan ("Thiagarajan"), Chase Williams ("Williams"), and Token Fund I LLC ("Token Fund") (together, the "*Williams* Plaintiffs") respectfully submit this reply memorandum in further support of their motion for appointment of lead plaintiffs and approval of selection of Roche Cyrulnik Freedman LLP and Selendy & Gay PLLC as co-lead counsel.

## INTRODUCTION

The collective briefing demonstrates that Token Fund and Thiagarajan (whether viewed individually or together) have fully documented that they have the greatest financial interest in this litigation and that there is no basis to "rebut the statutory presumption" that either of them would "fairly and adequately protect the interests of the class." The other movant, Crypto Assets Opportunity Fund LLC ("CAOF"), presents an "Asserted Loss" that makes little sense and provides no basis for CAOF's claim to the largest financial interest.

With no justification to claim the largest loss, CAOF instead levels unfounded and inaccurate accusations against Token Fund and its counsel. The sole member of Token Fund, Benjamin Clarke, is a sophisticated crypto-asset investor and an ideal plaintiff to lead this litigation. Contrary to CAOF's reckless assertions, Token Fund is not a "Moscow-based cryptocurrency fund" that is "shrouded in secrecy," nor a fund based in "Singapore." Rather, Token Fund is an LLC based in Puerto Rico, where Mr. Clarke resides, and structured solely to hold Mr. Clarke's crypto-assets. Mr. Clarke is a co-founder and partner at a fund that invests in blockchain-based technologies. On June 6, 2020, he formed Token Fund and assigned all of his present and former holdings (including any associated legal rights and claims) in a number of digital tokens, including EOS, to the entity.

Mr. Clarke is well-positioned and fully prepared to work with his chosen counsel, and the other *Williams* Plaintiffs, to steer this litigation for the benefit of the Class. Mr.

Thiagarajan, whose losses also far exceed those of CAOF, is likewise a typical and adequate plaintiff fully prepared to direct this litigation and to work with the other *Williams* Plaintiffs. Moreover, the inclusion of several lead plaintiffs with Blue Sky claims ensures that plaintiffs in those states will be afforded the protection of Blue Sky laws, which in many cases have longer statutes of limitation than federal law. Accordingly, in addition to including those with the largest losses, the *Williams* Plaintiffs combine the experience of an institutional investor with the motivations and typicality of individual investors—and without affording the defendants any basis to impugn their credibility or ethics.

The latter *cannot* be said of CAOF, however, which makes its attacks on Token Fund particularly ironic—and which underscores why CAOF could not sensibly be made the lead plaintiff in this case. CAOF's founder and Chief Information Officer—Brandon Elsasser, who seeks to direct this litigation—has personally paid $200,000 to settle allegations by the U.S. Commodity Futures Trading Commission ("CFTC") that he engaged in illegal wash trades to earn illicit profits. His employer paid $5 million for this misconduct. According to the CFTC, Mr. Elsasser's company engaged in *8,000* illegal wash trades as part of this scheme. Highlighting the centrality of his role, the CFTC issued a press release in which Mr. Elsasser was the only individual identified as being fined. Further impugning their capacity to lead this case, CAOF and its counsel have failed to disclose to the Court that, in a separate disciplinary action by the Chicago Mercantile Exchange ("CME") resulting from these illegal trades, Mr. Elsasser was required to pay an *additional* $40,000 fine and was suspended from accessing any CME trading floor and CME electronic trading and clearing platforms.

The findings and penalties that the CFTC and CME have imposed against Mr. Elsasser establish his and CAOF's inadequacy to represent the proposed Class. The findings,

settlements, and penalties Mr. Elsasser has paid arm Defendants to argue that two enforcement organizations have independently concluded that he is a lawbreaker and that he is therefore in no position to assert, as he does (*see, e.g.*, CAOF Compl. ¶¶ 172–74), that defendants have engaged in fraud. Appointing CAOF lead plaintiff would expose the Class to unique defenses, including as to the import of Block.one's settlement with the U.S. Securities and Exchange Commission ("SEC"), and the obvious analogy that Block.one will draw between Block.one's prior illegal conduct and Mr. Elsasser's. CAOF will be unable to mount a robust case against Defendants because its founder and Chief Investment Officer has paid significant fines to both the CFTC and the CME based upon his own documented misconduct, and any arguments CAOF makes arising from the Block.one SEC settlement will doubtless be redirected by Defendants to Mr. Elsasser's past conduct.

Accordingly, and as explained further below, Token Fund (along with the other *Williams* Plaintiffs) should be appointed to lead the Class.

## ARGUMENT

### I. TOKEN FUND AND THIAGARAJAN HAVE THE TWO GREATEST FINANCIAL INTERESTS IN THE RELIEF SOUGHT BY THE CLASS.

Token Fund and Thiagarajan have suffered at least $537,306.98 and $61,703.56 in damages, respectively, during the Class Period. CAOF and its counsel make three arguments in an attempt to leapfrog Token Fund and Thiagarajan: (1) they claim CAOF's "Asserted Loss" is $92,147.34; (2) they argue the Court should ignore Token Fund's and Thiagarajan's documented damage figures because they do not have complete records of their EOS transactions; and (3) they accuse the *Williams* Plaintiffs of fomenting the sort of "lawyer-driven litigation that the PSLRA was designed to prevent." Each of these arguments is wrong.

*First*, the record provides no basis for concluding that CAOF has suffered a loss of

$92,147.34 because any calculation that fails to take into account offsetting gains that occurred during the class period is without merit. Instead, the record shows that CAOF in fact lost approximately *one third* of its claimed damages. In its opposition brief, CAOF appears to have corrected the inaccurate "Net EOS Securities Purchase" figure in its opening brief (*compare* ECF No. 27 at 14 *with* ECF No. 40 at 5 (reducing the Net Purchase figure from 47,889.6948 to 1,351.32)), but its "Asserted Loss" figure has inexplicably remained the same. Indeed, the summary *in CAOF's own brief*, which compares CAOF's trading history with the trading history of the *Williams* Plaintiffs, shows that CAOF's losses are materially less than either Token Fund's or Thiagarajan's:

| Movant | EOS Securities Purchased | Net EOS Securities Purchased | Net Expenditure | Asserted Loss |
|---|---|---|---|---|
| CAOF | 49,241.02 | 1,351.32 | $37,121 | $92,147.34 |
| | | | | |
| Investor Group: | | | | |
| Anderson | 3,828.43 | 7.12 | $3,367 | $3,630.69 |
| Muhammad | 5,361.52 | 43.98 | $1,585 | $1,615.33 |
| Williams | 8,222.87 | -0.39 | $8,101 | $8,100.93 |
| Thiagarajan | 49,356.92 | -2,858.23 | $64,793 | $64,793.46 |
| Token Fund I LLC | 83,190.42 | 10,751.53 | $237,827 | $537,306.98 |
| Total Investor Group: | 149,960.16 | 7,944.01 | $315,673 | $615,447.39 |

ECF No. 40 at 5 (red highlighting added). As reflected in CAOF's own chart, its realized losses based upon sold tokens is $37,121 (listed above in the column "Net Expenditure"). This figure is nowhere close to CAOF's claimed losses of $92,147. If the EOS tokens that CAOF allegedly retained are taken into account in calculating damages, CAOF's damages are less than $37,000. ECF No. 43 at 10.

*Second*, CAOF's argument about trading records is moot given Token Fund's and Thiagarajan's fully documented losses. Token Fund's documented losses total $209,138—more

4

than *five times* CAOF's $37,121 losses. Thiagarajan lost $61,703.56—nearly *double* that of CAOF—even before factoring in damages from the EOS tokens purchased during the initial coin offering ("ICO"). As explained previously (ECF No. 43 at 5), the inclusion of Thiagarajan's ICO transactions would only increase his financial interest in this litigation, as the missing transactions (which are not included for purposes of this motion) relate solely to purchases of EOS, not sales. Even limited solely to documented losses, Token Fund's and Thiagarajan's each exceed CAOF's.

In terms of the additional losses identified by Token Fund and Thiagarajan, the absence of full records (and therefore *larger* damages by Token Fund and Thiagarajan) reflects the unique realities of the crypto-asset industry and this litigation. Entities that facilitate crypto-asset trading are notorious for their lack of transparency and for closing out customer accounts without supplying prior trading records. The *Williams* Plaintiffs are committed to pursuing this information from exchanges that offered EOS tokens, which will benefit the Class.

CAOF's assertion that Token Fund and Thiagarajan's lack of access to their full transaction records is outcome determinative is contrary to the law. As one Court in this District explained: "[T]he Court has discretion in the lead plaintiff appointment process and can decide to use or ignore the alleged technical (as opposed to substantive) inadequacy of a certificate as a determinative factor." *Vladimir v. Bionvision, Inc.*, 2007 WL 4526532, at *3 (S.D.N.Y. Dec. 21, 20017) (quotations omitted). Indeed, courts "routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties." *In re SLM Corp. Secs. Litig.*, 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012). Notwithstanding its arguments on this front, moreover, CAOF plainly assumes that the Court

5

has and should exercise discretion in evaluating such facts—because CAOF asks the Court to do so with respect to CAOF's failure timely to file its memorandum of law.

*Third*, the accusation that the *Williams* Plaintiffs arise from "lawyer-driven" litigation is baseless. Since filing this action and publishing the required public notice pursuant to 15 U.S.C. § 77z–1(a)(3)(A)(i), dozens of injured investors have reached out to the undersigned counsel to inquire about joining as lead plaintiffs. That is the basic purpose of the PSLRA's notice provision. *See Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 583 (N.D. Cal. 1999). Apart from Williams, who retained the undersigned counsel to file the initial action, all other *Williams* Plaintiffs reached out to the undersigned counsel in response to the PSLRA notice.

In addition, contrary to the apparent premise of CAOF's accusation, the *Williams* Plaintiffs do *not* seek aggregation of their losses. Both Token Fund and Thiagarajan should be appointed as lead plaintiff because *each* independently has larger losses than CAOF. The remaining members of the *Williams* Plaintiffs seek to be lead plaintiff solely to support the prosecution of the Blue Sky claims. The Blue Sky claims are well-plead here because, unlike an action arising from securities fraud, federal law does not preempt them. The Blue Sky claims have longer limitations periods than the federal claims, and the Class benefits from having multiple plaintiffs from different states asserting such state claims whose standing is free from doubt. The *Williams* Plaintiffs have met repeatedly to manage this litigation jointly and will continue to do so, and therefore can function as a cohesive group.

In any event, the Court has discretion to appoint only Token Fund or Thiagarajan as lead plaintiff, and the *Williams* Plaintiffs respectfully request that the Court do so in the event that all *Williams* Plaintiffs are not appointed lead plaintiff. *See, e.g.*, *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008) ("While the Court rejects the

aggregated Maa Group's motion as lead plaintiffs, the Court may consider Maa, the largest shareholder of the Maa Group, individually, as if he had moved to be appointed as lead plaintiff alone."); *accord Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018). *Micholle* makes clear, contrary to CAOF's claim, that the Court has discretion to appoint as lead plaintiff the individual with the largest losses, even if a group in which that individual is a member does not constitute a "proper plaintiff group" for purposes of aggregation.

## II. TOKEN FUND AND THIAGARAJAN ARE THE MOST ADEQUATE AND TYPICAL LEAD PLAINTIFFS.

Token Fund and Thiagarajan easily satisfy the adequacy and typicality requirements of Rule 23, whereas CAOF unavoidably faces serious credibility concerns that make it unsuitable to serve as lead plaintiff for the Class.

CAOF spends much of its opposition making grave and unfounded accusations against Token Fund and its origins. None is true. Token Fund is not a "Moscow-based cryptocurrency fund" that is "shrouded in secrecy" or "based in Singapore." Nor did Token Fund launch a mysterious business called "Tokenbox." Token Fund I LLC is a recently formed Puerto Rico-based LLC whose sole member is Benjamin Clarke. Ex. 1.[1] Mr. Clarke is the co-founder and partner at BlockMatrix Capital, a fund founded in 2017 that focuses on investing in promising blockchain-based technologies. Mr. Clarke traded in EOS tokens in both California and Puerto Rico. Prior to his involvement in crypto-assets, Mr. Clarke had a 20-year career in commercial and residential real estate investment. Mr. Clarke's digital assets are held by Token Fund. ECF No. 44-05. On June 6, 2020, he formed Token Fund and assigned all of his present and former holdings (including any associated rights and claims) in a number of digital tokens, including

---

[1] "Ex." refers to the exhibits to the accompanying Declaration of Jordan A. Goldstein.

7

EOS, to the entity and designated his attorney to act as its authorized agent. An assignment of rights to Token Fund does not deprive it of standing to litigate claims on behalf of a class. *See, e.g.*, *In re Wellbutrin Sr Direct Purchaser Antitrust Litig.*, 2008 WL 1946848, at *4 n.11 (E.D. Pa. May 2, 2008) ("Whether framed as a question of the typicality of the right being litigated or the adequacy of the assignee to litigate the right on behalf of others, courts consistently have rejected the notion that an assignee is categorically inadequate as a lead plaintiff.").

Token Fund's losses in trading EOS tokens are substantial, and its injury is typical of the Class. Its sole member lost a significant sum trading EOS tokens. Those claims (along with other assets) have been assigned to Token Fund. CAOF has made no legitimate showing that Token Fund is subject to unique defenses that would undermine its ability to serve the Class. Token Fund is fully prepared to steer this litigation for the benefit of the Class.

Thiagarajan's claims are also typical of the Class. As a California-based investor, Thiagarajan lost significant sums trading EOS tokens during Block.one's ICO and in secondary trading. Thiagarajan has also selected counsel with significant experience representing crypto-asset investors who have suffered losses arising from their trading activity. He is fully prepared to steer and participate in this litigation for the benefit of the Class.

In stark contrast to Token Fund and Thiagarajan, CAOF faces serious credibility concerns that make it wholly unsuitable to serve as lead plaintiff for the Class. CAOF seeks to bury in a footnote in its opposition brief its disclosure that Mr. Elsasser, CAOF's founder and Chief Information Officer, settled charges brought by the CFTC that he and his company engaged in illegal wash trades. ECF No. 43 at 17 n.2; Ex. 2. According to a CFTC press release, Mr. Elsasser's company engaged in *8,000* illegal wash trades as part of this scheme. Ex. 3. Mr. Elsasser was the only individual identified in the CFTC release as being fined. *Id*. And

although CAOF's opposition brief neglects to disclose this fact, in addition to paying $200,000 to the CFTC because of his illegal trading scheme, Mr. Elsasser was required to pay an additional *$40,000* to the Chicago Mercantile Exchange and was temporarily barred from its trading floor and from accessing its electronic trading and clearing platforms as a result of similar allegations of illegal wash trading. Ex. 4. Mr. Elsasser's documented history of misconduct subjects him to unique defenses and renders CAOF unfit to lead this Class, and whatever the underlying explanation, the failure to disclose the CME penalties to the Court is damaging: If Mr. Elsasser has not been candid with his counsel regarding the CME penalties, this would further disqualify him to lead the Class; and if his counsel has not been candid with the Court, this would seriously undermine their ability to lead this action.

"A class representative, once designated by the Court, is a fiduciary for the absent class members," *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998), and accordingly "[t]o judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff," *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). Mr. Elsasser's "dishonesty undermine[s] [his] qualifications [as] a potential class representative." *Xianglin Shi v. Sina Corp.*, 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005) (disqualifying potential class representative based on dishonesty to a financial institution).

The decision of a bad actor to settle with a government body for a substantial sum is directly relevant in this litigation. As reflected in both the *Williams* and the *CAOF* complaints, Block.one settled allegations relevant to this action with the SEC for a significant sum. *Williams* Compl. ¶¶ 95–98; CAOF Compl. ¶¶ 127–29. Block.one's admission, and the degree to which it is an admission, are important facts in this case. Whether or not he would acknowledge that he did anything wrong—and the fact that he paid $240,000 to settle these claims allows

9

Defendants effectively to show that he did—Mr. Elsasser would be exposed to unique defenses. *See, e.g.*, *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (affirming denial of class certification based on proposed class representative's inconsistent testimony, which "surely would create serious concerns as to his credibility at any trial"); *Maddox & Starbuck, Ltd. v. British Airways*, 97 F.R.D. 395, 397 (S.D.N.Y. 1983) (finding criminal activity by named plaintiff's principal created "a stigma that prevents it from proceeding as the class representative"). On this additional basis, the Court should deny CAOF's motion. *See Kline v. Wolf,* 702 F. 2d 400, 403 (2d Cir. 1983) (a "preliminary finding" that "credibility was vulnerable to attack" is "sufficient").

To the extent Mr. Elsasser now disclaims any wrongdoing, that serves only to raise *more* grounds for impugning his credibility and adequacy. As part of his settlement with the CFTC, Mr. Elsasser agreed that neither he nor any of his agents would "take any action or make any public statement denying, directly or indirectly, any findings or conclusions in this Order or creating, or tending to create, the impression that this Order is without a factual basis[.]" Ex. 2 at 8. But Mr. Elsasser and CAOF now claim that he "believed his conduct was lawful." The statement that Mr. Elsasser disputes that he knowingly did anything wrong (while ignoring his additional settlement with the CME) appears to violate his settlement with the CFTC. Mr. Elsasser's apparent violation of his settlement with the CFTC, his lack of candor with the Court about his fine and suspension by the CME, and the illegal conduct that resulted in him paying $240,000 in fines to two separate regulatory agencies, render CAOF and Mr. Elsasser unfit and inadequate to serve as lead plaintiff.

## **CONCLUSION**

The *Williams* Plaintiffs respectfully submit, for the reasons set forth above and in their other supporting papers, that the Court should grant their motion for lead plaintiff.

Dated: June 29, 2020

Respectfully submitted,

/s/ Philippe Z. Selendy
Philippe Z. Selendy
Jordan A. Goldstein
Joshua S. Margolin
Oscar Shine
SELENDY & GAY, PLLC
1290 Sixth Avenue, 17th Floor
New York, NY 10104
pselendy@selendygay.com
jgoldstein@selendygay.com
jmargolin@selendygay.com
oshine@selendygay.com

/s/ Kyle W. Roche
Kyle W. Roche
Edward Normand
Velvel (Devin) Freedman (*pro hac* pending)
Joseph M. Delich
ROCHE CYRULNIK
  FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
kyle@rcfllp.com
tnormand@rcfllp.com
vel@rcfllp.com
jdelich@rcfllp.com

*Counsel for Plaintiffs and the Proposed Class*