# Exhibit 2



RECEIVED CFTC

Office of Proceedings
Proceedings Clerk

**2:06 pm, Jun 29, 2017**

UNITED STATES OF AMERICA
Before the
COMMODITY FUTURES TRADING COMMISSION

|  |  |  |
|---|---|---|
| In the Matter of:<br><br>Brandon Elsasser,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CFTC Docket No. 17-18 |

ORDER INSTITUTING PROCEEDINGS PURSUANT TO
SECTIONS 6(c) AND 6(d) OF THE COMMODITY EXCHANGE ACT, MAKING
FINDINGS AND IMPOSING REMEDIAL SANCTIONS

**I.**

The Commodity Futures Trading Commission ("Commission") has reason to believe that between July 2014 and July 2015 (the "Relevant Period"), Brandon Elsasser ("Respondent" or "Elsasser") violated Section 4c(a) of the Commodity Exchange Act ("Act"), 7 U.S.C. § 6c(a) (2012), and Commission Regulation ("Regulation") 1.38(a), 17 C.F.R. § 1.38(a) (2016). Therefore, the Commission deems it appropriate and in the public interest that public administrative proceedings be, and hereby are, instituted to determine whether Respondent engaged in the violations set forth herein and to determine whether any order should be issued imposing remedial sanctions.

**II.**

In anticipation of the institution of an administrative proceeding, Respondent has submitted an Offer of Settlement ("Offer"), which the Commission has determined to accept. Without admitting or denying any of the findings or conclusions herein, Respondent consents to the entry of this Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions ("Order") and acknowledges service of this Order.[1]

---

[1] Respondent consents to the entry of this Order and to the use of these findings in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party; provided, however, that Respondent does not consent to the use of the Offer, or the findings or conclusions in this Order consented to in the Offer, as the sole basis for any other proceeding brought by the Commission, other than in a proceeding in bankruptcy or to enforce the terms of this Order.  Nor does Respondent consent to the use of the Offer or this Order, or the

III.

The Commission finds the following:

A.   **SUMMARY**

During the Relevant Period, Elsasser engaged in a fictitious trading strategy in order to generate rebates from an exchange's market maker program. Elsasser discovered that he could trade against himself in rebate-eligible products and avoid detection using the exchange's implied matching engine. Elsasser entered orders for several Eurodollar pack butterfly spreads on one side of the market and then entered orders on the opposite side of the market for Eurodollar pack spreads with component legs that contained the same underlying contracts. Using this technique, Elsasser traded against himself and generated rebates that benefitted his trading group and his employer's house account. As such, Elsasser's trading constituted fictitious, wash sales in violation of Section 4c(a) and non-competitive transactions in violation of Regulation 1.38(a).

B.   **RESPONDENT**

During the Relevant Period, Brandon Elsasser ("Elsasser") was a trader employed by Rosenthal Collins Capital Markets LLC ("RCCM") in Chicago, Illinois, and he traded for a division within RCCM known as DV Trading. Elsasser was not registered with the Commission during the Relevant Period.

C.   **FACTS**

   1.   **CME's Eurodollar Pack and Bundle Market Maker Program**

During the Relevant Period, RCCM was a participant in the Eurodollar Pack and Bundle Market Maker Program ("Program") offered by Chicago Mercantile Exchange, Inc. ("CME" or "exchange").[2] Elsasser was designated as one of several RCCM traders in the Program. Under the terms of the Program, RCCM had certain quoting obligations and, in return, it could earn rebates for its trading in the Eurodollar pack and bundles. Pursuant to the Program, RCCM received the rebates in the form of credits on the exchange fees that it had incurred for its trading ("rebates"). The rebates RCCM earned through Eurodollar pack and bundle trading could be applied to offset exchange fees for any trading RCCM had done in the Eurodollar complex.

Eurodollar packs and bundles are groups of Eurodollar futures contracts that allow market participants to purchase or sell a series of Eurodollar futures representing a particular

---

findings or conclusions in this Order consented to in the Offer, by any other party in any other proceeding.

[2]   The terms of the Eurodollar Pack and Bundle Market Maker Program changed each year, and there were several different agreements in effect during the Relevant Period.

segment along the yield curve.[3]  Market participants may trade Eurodollar packs and bundles at a single price, eliminating the necessity of entering multiple orders and the possibility that some orders may go unfilled.  Under the Program, the amount of the potential rebate credit increased as the Eurodollar Pack and Bundle contracts extend further out along the yield curve.  For example, trading in Eurodollar packs that extend seven years into the future would generate more credits than trading in Eurodollar packs that extend only two years into the future.

The CME provides electronic markets for specific Eurodollar packs and bundles as well as electronic markets for the individual, underlying contracts.  When a market participant enters an order for a Eurodollar pack or bundle, the exchange can either: (i) match that order with an identical pack or bundle order on the opposite side, or (ii) if there is not an identical pack or bundle on the opposite side, it can break apart the pack or bundle into individual contracts or smaller spreads in order to fill all of the contracts contained in the original order.  The latter technique is known as "implied" matching.

In the spring of 2014, CME informed RCCM that it would exclude self-matches among traders at the same firm before calculating rebate credits.

### 2. Elsasser Entered into Fictitious Trades In Order to Generate Rebates

In mid-2014, RCCM was not generating its desired level of rebates in the Program.  Elsasser began trading in the Program at that time and discovered that he was able to match his own orders without detection and still earn rebates on wash trades using the exchange's implied matching engine.  Elsasser entered orders for several Eurodollar pack butterfly spreads on one side of the market and then entered orders on the opposite side of the market for Eurodollar pack spreads that contain the same underlying contracts.[4]

Using this technique, Elsasser was able to trade against himself in products subject to the Program for approximately 12 months.  Elsasser's strategy was so effective that he generated rebates in excess of his group's Eurodollar trading fees, and he distributed the rebates among other RCCM traders and the house account at RCCM.

---

[3]  A Eurodollar bundle consists of the simultaneous sale or purchase of one each of a series of consecutive Eurodollar futures contracts.  Eurodollar packs represent a series of four consecutive quarterly Eurodollar futures.

[4]  A butterfly spread involves the placing of two inter-delivery spreads in opposite directions with the center delivery month common to both spreads.  *CME Group Glossary* at http://www.cmegroup.com/education/glossary.html.

IV.

LEGAL DISCUSSION

A. <u>**Elsasser Entered into Fictitious Trades in Violation of Section 4c(a)**</u>

Section 4c(a) of the Act makes it "unlawful for any person to offer to enter into, enter into, or confirm the execution of a transaction" that "is, is of the character of, or is commonly known to the trade as, a 'wash sale' . . . ." 7 U.S.C. § 6c(a) (2012). A wash sale is a form of fictitious sale. *In re Gimbel*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,213 at 35,003 (CFTC Apr. 14, 1988), *aff'd as to liability*, 872 F.2d 196 (7th Cir. 1989).

Wash sales are harmful, in part, because they create illusory price movements in the market. *Wilson v. CFTC*, 322 F.3d 555, 559 (8th Cir. 2003*); Reddy v. CFTC*, 191 F.3d 109, 115 (2d Cir. 1999); s*ee also CFTC v. Savage*, 611 F.2d 270, 284 (9th Cir. 1980) (wash sales may mislead market participants because they do not reflect the forces of supply and demand). They also are considered "grave" violations because "they undermine confidence in the market mechanism that underlies price discovery." *In re Piasio*, [1999-2000 Transfer Binder] Comm. Fut. L. Rep. (CCH) 50,691 (CFTC Sept. 29, 2000), *aff'd after remand and further proceedings, sub nom. Piasio v. CFTC,* 54 Fed. Appx. 702, [2002-2003 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 29,251 (2d Cir. Dec. 31, 2002).

In order to establish that a wash sale has occurred, the Commission must show that the transaction at issue achieved a wash result. The Commission may demonstrate that the trades resulted in a wash by (1) the purchase and sale (2) of the same delivery month of the same futures contract (3) at the same (or a similar) price. *Wilson,* 322 F.3d at 559; *In re Gilchrist,* [1990-1992 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,993 at 37,653 (CFTC Jan. 25, 1991); *see also In re Citadel Trading,* [1986-1987 Transfer Binder] Comm. Fut. L. Rep (CCH) ¶ 23,082 at 32,190 (CFTC May 12, 1986) ("Orders to purchase and sell for the account of the same customer the identical quantity of the same futures contract at identical prices were entered virtually simultaneously.")

In addition to the factors enumerated by the Commission in *Gilchrist,* the Commission must prove intent to establish a violation of Section 4c of the Act. *Reddy,* 191 F.3d at 119. A trader's intent to negate risk or price competition and avoid a bona fide market position may involve explicit prearrangement, or it can be inferred "from the intentional structuring of a transaction in a manner to achieve the same result as prearrangement." *In re Three Eight Corp.,* [1992-1994 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25,749 at 40,444 n.15 (CFTC June 16, 1993); *see also In re Elliott*, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 27,243 at 46,007 (CFTC Feb. 3, 1998), *aff'd*, *Elliott v. CFTC*, 202 F.3d 926 (7th Cir. 2000) (finding wash trading among traders who were buying and selling spreads to each other at the same price differential when the trades reflected a "precision and symmetry not generally found in competitive trading").

Placing offsetting orders to buy and sell, while simultaneously taking steps to "enhance the likelihood that the buy and sell orders would be filled at the same or a similar price" is persuasive evidence that the trader intends to negate risk and price competition. *In re Collins* [1986-1987 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 22,982 at 31,900 (CFTC Apr. 4, 1986), *rev'd on other grounds sub nom. Stoller v. CFTC,* 834 F.2d 262 (2d Cir. 1987) ; *see also In re Piasio,* [1999-2000 Transfer Binder] Comm. Fut. L. Rep. (CCH)  at 50,689-91 (finding customer who placed paired buy and sell orders, with specific pricing and loss limitation instructions, "structured orders to negate risk" and thus had intent to violate Section 4c). Traders violate Section 4c when they avoid taking bona fide positions in the market and simply buy and sell the same product at the same price in order to generate exchange rebates  *See In re Gelber Grp., LCC*, [2012-2013 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 32,534 at 72,115 (CFTC Feb. 8, 2013) (consent order imposing $750,000 civil monetary penalty against proprietary trading firm, finding two proprietary traders, at the direction of a trading group manager, had engaged in wash trades in certain Russell Index futures contracts on the Intercontinental Exchange in order to inflate firm's trading volume to enable it to obtain increased rebates from exchange as part of an incentive program); *In re Martin A. Lorenzen*, [2012-2013 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 32,534 (CFTC Feb. 8, 2016) (consent order imposing $200,000 civil monetary penalty against manager of trading group, finding manager liable as a controlling person for directing two traders to engage in wash sales).

Elsasser violated Section 4c(a) of the Act by entering into transactions of the character of and commonly known as wash sales.  Elsasser knowingly entered into the wash sales with the intent of inflating his trading volume in order to generate additional rebates from the Program.

**B.     Elsasser Executed Trades Noncompetitively in Violation of Regulation 1.38(a)**

With certain exceptions not relevant here, Regulation 1.38(a) requires that "all purchases and sales of any commodity for future delivery, and of any commodity option, on or subject to the rules of a contract market shall be executed openly and competitively by open outcry or posting of bids and offers or by other equally open and competitive methods, in the trading pit or ring or similar place provided by the contract market, during the regular hours prescribed by the contract market for trading in such commodity or commodity option ...." 17 C.F.R. § 1.38(a) (2016).

Noncompetitive trades are a type of fictitious sale because they negate the risk incidental to an open and competitive market. *In re Fisher*, [2003-2004 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 29,725 at 56,052 n.11 (CFTC Mar. 24, 2004).  Prearranged trading is a form of anti-competitive trading that violates Regulation 1.38(a). *In re Shell US Trading Co.*, [2005-2007 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 30,161 at 57,632 (CFTC Jan. 4, 2006) (consent order); *In re Gimbel*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) at 35,003.

Elsasser violated Regulation 1.38 by executing trades noncompetitively.  Elsasser knowingly entered into the noncompetitive trades with the intent of inflating his Eurodollar pack and bundle trading volumes in order to generate additional rebates from the Program.

In accepting Respondent's Offer, the Commission recognizes Respondent's significant cooperation during the investigation of this matter with the CFTC's Division of Enforcement ("Division"), in the form of a proffer and providing additional evidence of value to the Division's investigation.

## V.

## FINDINGS OF VIOLATION

Based on the foregoing, the Commission finds that Respondent Brandon Elsasser violated Section 4c(a) of the Act, 7 U.S.C. § 6c(a) (2012), and Regulation 1.38, 17 C.F.R. § 1.38 (2016).

## VI.

## OFFER OF SETTLEMENT

Respondent has submitted the Offer in which it, without admitting or denying the findings and conclusions herein:

A.  Acknowledges receipt of service of this Order;

B.  Admits the jurisdiction of the Commission with respect to all matters set forth in this Order and for any action or proceeding brought or authorized by the Commission based on violation of or enforcement of this Order;

C.  Waives:

   1.  The filing and service of a complaint and notice of hearing;

   2.  A hearing;

   3.  All post-hearing procedures;

   4.  Judicial review by any court;

   5.  Any and all objections to the participation by any member of the Commission's staff in the Commission's consideration of the Offer;

   6.  Any and all claims that it may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Commission's Regulations, 17 C.F.R. §§ 148.1-30 (2016), relating to, or arising from, this proceeding;

7. Any and all claims that it may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-53, 110 Stat. 847, 857-68 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-05 (2007), relating to, or arising from, this proceeding; and

8. Any claims of Double Jeopardy based on the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief;

D. Stipulates that the record basis on which this Order is entered shall consist solely of the findings contained in this Order to which Respondent has consented in the Offer;

E. Consents, solely on the basis of the Offer, to the Commission's entry of this Order that:

1. Makes findings by the Commission that Respondent violated Section 4c(a) of the Act, 7 U.S.C. § 6c(a) (2012), and Regulation 1.38, 17 C.F.R. § 1.38(a) (2016);

2. Orders Respondent to cease and desist from violating Section 4c(a) of the Act, 7 U.S.C. § 6c(a) (2012), and Regulation ("Regulation") 1.38, 17 C.F.R. § 1.38(a) (2016);

3. Orders Respondent to pay a civil monetary penalty in the amount of two hundred thousand dollars ($200,000), plus post-judgment interest within ten (10) days of the date of entry of this Order;

4. Orders Respondent to comply with the conditions and undertakings consented to in the Offer and as set forth in Part VII of this Order.

Upon consideration, the Commission has determined to accept the Offer.

## VII.

## ORDER

**Accordingly, IT IS HEREBY ORDERED THAT:**

A. Respondent shall cease and desist from violating Section 4c(a) of the Act, 7 U.S.C. § 6c(a) (2012), and Regulation 1.38, 17 C.F.R. § 1.38(a) (2016).

B. Respondent shall pay a civil monetary penalty in the amount of two hundred thousand dollars ($200,000) ("CMP Obligation"), plus post-judgment interest, within ten (10) days of the date of the entry of this Order. If the CMP Obligation is not paid in full within ten (10) days of the date of entry of this Order, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

      Respondent shall pay the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-7262 office
> (405) 954-1620 fax
> nikki.gibson@faa.gov

      If payment is to be made by electronic funds transfer, Respondent shall contact Nikki Gibson or her successor at the above address to receive payment instructions and shall fully comply with those instructions. Respondent shall accompany payment of the CMP Obligation with a cover letter that identifies the paying Respondent and the name and docket number of this proceeding. The paying Respondent shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581 and Lindsey Evans, Commodity Futures Trading Commission 525 W. Monroe, Suite 1100, Chicago, Illinois 60661.

C.    Respondent and its successors and assigns shall comply with the following conditions and undertakings set forth in the Offer:

    1.    <u>Public Statements</u>: Respondent agrees that neither it nor any of its successors or assigns, agents or employees under its authority or control shall take any action or make any public statement denying, directly or indirectly, any findings or conclusions in this Order or creating, or tending to create, the impression that this Order is without a factual basis; provided, however, that nothing in this provision shall affect Respondent's: (i) testimonial obligations; or (ii) right to take legal positions in other proceedings to which the Commission is not a party. Respondent's successors and assigns shall undertake all steps necessary to ensure that all of its agents and/or employees under its authority or control understand and comply with this agreement.

    2.    <u>Cooperation with the Commission</u>: Respondent shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, and any other governmental agency in this action, and in any investigation, civil litigation, or administrative matter related to the subject matter of this action or any current or future Commission investigation related thereto.

D.  Partial Satisfaction: Respondent understands and agrees that any acceptance by the Commission of any partial payment of Respondent's CMP Obligation shall not be deemed a waiver of its obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

**The provisions of this Order shall be effective as of this date.**

By the Commission,

*[signature]*

Christopher J. Kirkpatrick
Secretary of the Commission
Commodity Futures Trading Commission

Dated: June 29, 2017