**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHASE WILLIAMS AND WILLIAM ZHANG, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civ. No. 1:20-cv-2809-LAK |
| v. | <u>CLASS ACTION</u> |
| BLOCK.ONE, BRENDAN BLUMER, and DANIEL LARIMER, | |
| Defendants. | |
| CRYPTO ASSETS OPPORTUNITY FUND LLC and JOHNNY HONG, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civ. No.: 1:20-cv-3829 |
| v. | |
| BLOCK.ONE, BRENDAN BLUMER, DANIEL LARIMER, IAN GRIGG, and BROCK PIERCE, | <u>CLASS ACTION</u> |
| Defendants. | |

**LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
APPROVAL OF NOTICE OF SETTLEMENT PURSUANT TO FED. R. CIV. P. 23**

# **TABLE OF CONTENTS**

<b>Page</b>

TABLE OF CONTENTS..................................................................................................................ii

I.  INTRODUCTION .............................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION...................... 1

III.  THE PROPOSED SETTLEMENT WARRANTS NOTICE TO THE SETTLEMENT
      CLASS ............................................................................................................................... 5

   A.  Description of the Settlement and Plan of Allocation .................................................. 5

   B.  Notice of Settlement Should be Authorized ............................................................... 7

      1.  Standard for Authorizing Notice of Settlement Under Rule 23.......................... 7

      2.  The Settlement Is Likely to Be Approved Under Rule 23(e)(2)......................... 7

         a.  Representation Is Adequate .......................................................... 8

         b.  The Proposed Settlement Is the Result of Good-Faith, Arm's-Length
             Negotiations ................................................................................ 9

         c.  The Relief Provided by the Settlement Is Adequate When Weighed
             Against the Risks of Litigation ................................................... 10

         d.  Class Members Are Treated Equitably Under the Plan of Allocation........ 12

         e.  The Proposed Settlement Satisfies the *Grinell* Factors................................ 13

      3.  The Court Is Likely to Certify the Class for Purposes of Judgment
          of the Proposal ........................................................................................... 14

      a.  The Class Members Are So Numerous That Joinder Would Be
          Impracticable.............................................................................................. 15

      b.  There Are Questions of Law or Fact Common to the Class ........................... 16

      c.  Lead Plaintiff's Claims Are Typical of the Class's Claims............................ 17

      d.  Lead Plaintiff Has Fairly and Adequately Protected the Interests
          of the Class................................................................................................ 18

      e.  Questions Common to the Class Predominate Over Individual
          Questions and a Class Action Is Superior to Other Available
          Means of Adjudication................................................................................ 20

IV.  NOTICE OF THE SETTLEMENT AND PROCEDURE FOR PROVIDING
      NOTICE TO CLASS MEMBERS SHOULD BE APPROVED.......................................... 22

   A.  The Content of the Notice ..................................................................................... 22

   B.  The Notice Procedure ............................................................................................ 24

V.  THE PROPOSED SCHEDULE SHOULD BE APPROVED .............................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
   No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ............................21

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012)...................................................................................................21

*In re AOL Time Warner, Inc.*,
   No. 02-cv-5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)......................................13

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 U.S. Dist. LEXIS 17588 .........................................................................................11, 13

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
   Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007)...................................................................................................16

*In re Citigroup, Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)....................................................................................13

*City of Providence v. Aeropostale, Inc.*,
   No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
   *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015) ....................................10

*Clark v. Ecolab, Inc.*,
   No. 07-cv-8623-PAC, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ....................................12

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995).....................................................................................................16

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007).......................................................................................................8

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)......................................................................................................14

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)......................................................................................................9

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)......................................................................................................8

*Espinoza v. 953 Assocs. LLC*,
    280 F.R.D. 113 (S.D.N.Y. 2011) ...........................................................................21

*In re EVCI Career Colls.*,
    No. 05-cv-10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .......................... *passim*

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    312 F.R.D. 332 (S.D.N.Y. 2015) ...........................................................................17

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
    No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov 8, 2010)...................................9

*Fogarazzao v. Lehman Bros.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) ...........................................................................19

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990)...................................................................................18

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................17

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019)............................................................ *passim*

*Holsworth v. BProtocol Foundation, et al.*,
    1:20-CV-02810-AKH (S.D.N.Y.)....................................................................9, 11

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015).................................................................................17

*Karvaly v. eBay, Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) ............................................................................15

*Lomeli v. Sec. & Inv. Co. Bahr.*,
    2013 WL 6170572 (2d Cir. Nov. 26, 2013)..........................................................25

*Marisol A. by Forbes v. Giuliani*,
    929 F. Supp. 662 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126
    F.3d 372 (2d Cir. 1997)........................................................................................18

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)...........19, 22

*Odom v. Hazen Transp., Inc.*,
    275 F.R.D. 400 (W.D.N.Y. 2011)..........................................................................14

*Pantelyat v. Bank of Am., N.A.*,
    No. 16-CV-8964 (AJN), 2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) ....................10

iii

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) .................................................................7

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ...............................................................................22

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ....................................................................16

*In re Sadia, S.A. Sec. Litig.*,
269 F.R.D. 298 (S.D.N.Y. 2010) ............................................................16

*In re Tezos Sec. Litig.*,
3:17-cv-6799 (N.D. Cal.) ........................................................................24

*In re Traffic Exec. Ass'n-E. Railroads*,
627 F.2d 631 (2d Cir. 1980) ......................................................................7

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05-md-01695, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............12

*In re Vivendi Universal, S.A.*,
242 F.R.D. 76 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi Universal, S.A.
Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) .....................................16, 17, 18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ..................................................................................9

*Weinberer v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ......................................................................15

*Williams, et al. v. Block.one, et al.*,
Case No. 1:20-cv-2809, ECF No. 1 .......................................................1, 3

*Yuzary v. HSBC Bank USA, N.A.*,
No. 12-cv-3693 (PGG), 2013 U.S. Dist. LEXIS 61643 (S.D.N.Y. Apr. 29,
2013) ........................................................................................................12

Lead Plaintiff Crypto Assets Opportunity Fund, LLC ("Lead Plaintiff" or "CAOF") respectfully submits this memorandum of law in support of its unopposed motion for approval of its notice of settlement of the claims against defendants Block.one ("Block.one" or the "Company"), Brendan Blumer, Daniel Larimer, Ian Grigg, and Brock Pierce (collectively, "Defendants").

## I.      INTRODUCTION

As set forth in the Stipulation of Settlement dated as of June 11, 2021, (the "Settlement Agreement"), Lead Plaintiff, on behalf of itself and the putative Class, has agreed to settle all claims asserted in the Consolidated Actions[1] in exchange for $27,500,000 in cash (the "Settlement Amount"). This proposed settlement ("Proposed Settlement") represents a significant recovery for the Class – a result that is even more impressive in light of the difficulties associated with litigating a securities fraud class action on behalf of cryptocurrency purchasers.

While Lead Plaintiff and its counsel believe that the claims against Defendants are meritorious, they also recognize that, in the absence of a settlement, they faced the significant risk that a smaller recovery – or, indeed, no recovery – might be achieved after a trial of the Consolidated Action and the likely appeals that would ensue.  Throughout the litigation, Lead Plaintiff was fully apprised of the strengths and weaknesses of its case.

## II.     FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

The case arises out of Defendant Block.one's token sale that lasted from June 26, 2017 through June 1, 2018, in which it promoted and sold millions of cryptocurrency tokens to individual and institutional buyers.  Block.one did not register its tokens with the SEC or conduct

---

[1] The two captioned actions, *Williams, et al. v. Block.one, et al.*, 1:20-cv-2809 and *Crypto Assets Opportunity Fund, et al. v. Block.one, et al.*, 1:20-cv-3829, were consolidated by Order of this Court dated August 4, 2020, ECF No. 57.

the token sale pursuant to a registration statement, which Lead Plaintiff alleges violated Section 12(a)(1) of the Securities Act of 1933 ("Securities Act"). *See* Amended Compl., ECF No. 66. Further, Lead Plaintiff contends that defendants effectuated the sale of tokens through false and misleading statements, which violated Section 12(a)(2) of the Securities Act and Section 10(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act"). *Id.* The 350-day token sale raised over $4 billion – a massive sum that Lead Plaintiff contends was not spent on developing the "revolutionary" technology that would underlie the heavily promoted EOS blockchain. *Id.* ¶¶ 61, 71. Rather, Lead Plaintiff asserted that the proceeds were classified as Block.one's revenue and then channeled to Block.one's cryptocurrency trading arm located in Hong Kong, where Defendant Blumer, Block.one's CEO, invested it in bitcoin and other cryptocurrencies as well as more traditional securities, such as government bonds. *Id.* ¶¶ 144, 148. Investors who purchased tokens[2] in the token sale (and subsequently in secondary markets on cryptocurrency exchanges) did not share any stake in the venture capital fund; instead, profits from those investments inured to Block.one's executives and equity owners. *Id.* ¶¶ 71, 144, 148. Lead Plaintiff asserts that the EOSIO software and EOS blockchain, once released, came nowhere near Block.one's promises of efficient, fair, and above all decentralized governance, by 21 "block producers," which Lead Plaintiff contends revealed that Defendants' heavy promotional efforts were false and misleading. *Id.* ¶¶ 128-143. Lead Plaintiff asserts that, as Block.one's misrepresentations about EOSIO, ERC-20 Tokens, and EOS Tokens were gradually revealed through June 26, 2019, the price of EOS Tokens plummeted, causing substantial losses to investors. *Id.* ¶ 26.

---

[2] Investors who purchased in the token sale were first given Ethereum-native "ERC-20 Tokens," which entitled them to native EOS Tokens once the EOSIO software and EOS blockchain officially launched. As a result, the Class definition encompasses purchasers of Block.one-issued ERC-20 Tokens and EOS Tokens.

The Complaint alleges that a reasonable purchaser could not have concluded that ERC-20 EOS Tokens or EOS Tokens were securities, however, until September 30, 2019, when the SEC issued a cease-and-desist order.  *Id.* ¶¶ 25, 111. The SEC asserted that Block.one-issued ERC-20 Tokens are securities within the meaning of the Securities Act and should not have been sold without registration with the SEC (or pursuant to an exemption) and ordered that Block.one cease and desist its violations of securities laws. *Id.* Block.one paid a $24 million fine to settle the charges. *Id.* ¶ 114.

The initial complaint was filed in this Court on April 3, 2020 by plaintiffs Chase Williams and William Zhang against defendants Block.one, Brendan Blumer, and Daniel Larimer. *Williams, et al. v. Block.one, et al.*, Case No. 1:20-cv-2809, ECF No. 1. It asserted claims for offering or selling unregistered securities in violation of §§ 5 and 12(a)(1) of the Securities Act and several state "Blue Sky" laws. *Id.* On May 18, 2020, plaintiffs CAOF and Johnny Hong filed a separate complaint against Defendants. *Crypto Assets Opportunity Fund, et al. v. Block.one, et al.*, Case No. 1:20-cv-3829, ECF No. 1.  In addition to asserting claims under the 1933 Act, they asserted claims under Section 10(b) of the Exchange Act and SEC Rule 10b-5. *Id.* On August 4, 2020, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), the Court consolidated the two cases and appointed CAOF as Lead Plaintiff and Grant & Eisenhofer as Lead Counsel.  ECF No.[3] 57.

On September 18, 2020, Lead Plaintiff filed the First Amended Class Action Complaint, alleging that Defendants sold unregistered securities in violation of federal securities laws, issued securities pursuant to a false and misleading prospectus, and disseminated materially false and

---

[3] All future references to "ECF No." are to the docket in the earlier filed action captioned *Williams, et al. v. Block.one, et al.*, Case No. 1:20-cv-2809.

misleading statements regarding ERC-20 EOS Tokens and native EOS Tokens during the Class Period.  ECF No. 66.  This operative complaint alleged violations of §§ 5, 12(a)(1) and 12(a)(2) of the Securities Act and § 10(b) of the Exchange Act and SEC Rule 10b-5 against Defendants, and violations of § 15 of the Securities Act and § 20 of the Exchange Act against Defendants Blumer, Larimer, Grigg, and Pierce.  *Id*.

On November 2, 2020, Defendants Block.one, Larimer, and Pierce, who had been served as of that date, filed a motion to dismiss the Complaint. ECF No. 85. Lead Plaintiff filed its opposition on December 2, 2020 (ECF No. 92), and the moving defendants filed their reply on January 11, 2021.  ECF No. 97.

Lead Plaintiff commissioned Total Credit Management Services Hong Kong Limited ("Total Credit") to effect personal service on Defendants Blumer and Grigg in Hong Kong. Having made diligent, albeit unsuccessful, efforts to personally serve Blumer, Lead Plaintiff moved the Court to authorize alternative service of process on Blumer pursuant to Fed. R. Civ. P. 4(f).  ECF No. 99.  On February 22, 2021, the Court granted Lead Plaintiff's motion. ECF. No. 106.

In late February 2021, while the motion to dismiss was pending, the parties began to explore the possibility of a settlement of the Action and claims of the class.  Lead Counsel then engaged the Berkeley Research Group, LLC ("BRG") to assist with evaluating potential damages to the putative Class in this Action.  While Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action have merit, mindful of potential weaknesses in Lead Plaintiff's claims as well as the expense and length of continued proceedings necessary to prosecute the Action through trial, Lead Plaintiff believed that it would be beneficial to explore the possibility of a settlement.

Over the course of the next two months, Counsel for Defendants and Lead Counsel engaged in extensive negotiations of a prospective settlement.  Separately, Lead Plaintiff and Lead Counsel

discussed the strengths and weaknesses of the claims and defenses, costs and risks of litigation, and the possibility of the Court's dismissal of the claims in light of other, recent decisions in cases involving cryptocurrencies.

At the end of April 2021, the parties engaged in another series of discussions, and on May 8, 2021, Lead Plaintiff and Defendants reached an agreement to settle the claims for a sum of Twenty-Seven Million and Five Hundred Thousand Dollars ($27,500,000).  On May 9, 2021, counsel for the parties notified the Court on a confidential basis that the parties had reached an agreement in principle and thereafter executed a term sheet that reflected their agreement. Over the next month, the parties worked diligently to prepare the Stipulation of Settlement and accompanying documents to bring the settlement to the Class for its consideration.

## III.    THE PROPOSED SETTLEMENT WARRANTS NOTICE TO THE SETTLEMENT CLASS

### A.    Description of the Settlement and Plan of Allocation

The Proposed Settlement provides that Defendants will pay $27.5 million in cash into an Escrow Account for the benefit of the Settlement Class.  This consideration, after deduction of any attorneys' fees and litigation expenses, as provided for in the Settlement Agreement or approved by the Court, and less any fees associated with notifying the class and administering the settlement consideration (*i.e.*, the "Net Settlement Fund"), will be distributed among the Settling Class Members who submit timely and valid Proof of Claim and Release Forms in accordance with the Plan of Allocation set forth in the Notice.  Lead Plaintiff believes that the Proposed Settlement is an excellent recovery based on the claims asserted in the Consolidated Actions, and is in all respects, fair, adequate, reasonable, and in the best interests of the Settlement Class.  Thus, dissemination of notice of the Proposed Settlement is warranted.

The Claims Administrator – Epiq Systems, Inc. – was selected by Lead Plaintiff based on its experience in handling the one other cryptocurrency case that has settled on a class-wide basis. Epiq will calculate each Authorized Claimant's Recognized Loss based on the information supplied in each person's Proof of Claim. The Plan of Allocation allocates the Net Settlement Fund to Settling Class Members on a *pro rata* bases after determining the Settling Class Members' Recognized Loss Amounts. The Plan of Allocation takes into account the consideration that an Authorized Claimant used to purchase his/her/its ERC-20 and/or EOS Tokens and, if the Authorized Claimant sold the Tokens, when the sale occurred.

The Plan of Allocation was determined with the assistance of Lead Plaintiff's expert, Frank Torchio, of Forensic Economics, who has more than 30 years of experience in assisting with securities damages calculations and development of plans of allocation. Lead Plaintiff submits that the Plan of Allocation is fair and reasonable and should be approved together with the Settlement at the Settlement Hearing.

Specifically, the Plan of Allocation calculates a Recognized Loss Amount in the following ways for Authorized Claimants:

1. <u>Investors Who Purchased in the Token Sale Directly from Defendants in the Period of June 26, 2017 to June 1, 2018</u>: rescissory damages, as set forth in Section 12 of the Securities Act. 15 U.S.C. § 77l.

2. <u>Investors Who Purchased in Secondary Markets in the Period of June 26, 2017 to June 4, 2019</u>: losses based on an inflation ribbon, as constructed by Mr. Torchio, for investors who purchased on secondary market exchanges during the period of June 26, 2017 (first day of trading on secondary markets) to June 25, 2019 (last corrective

disclosure), pursuant to traditional damages theories associated with violations of Section 10(b)(5) of the Exchange Act.

**B.  Notice of Settlement Should be Authorized**

**1.  Standard for Authorizing Notice of Settlement Under Rule 23**

Class action settlement approval is typically a two-stage process: first, the court determines whether the proposed settlement warrants that notice should be given to the class, and, second, the court conducts a "fairness hearing," wherein "class members and settling parties are provided the opportunity to be heard on the question of final court approval." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 691 (S.D.N.Y. 2019); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019).

In the first stage of considering a settlement, pursuant to the revised terms of F.R.C.P. 23(e)(1), a court *must* direct notice of a proposed settlement to the class upon a showing that the court will likely be able to (1) approve the proposal under Rule 23(e)(2) and (2) certify the class for purposes of judgment on the proposal.  Fed. R. Civ. P. 23(e)(1); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 691 (S.D.N.Y. 2019).   A court's grant of permission for a settlement notice to be sent out "is not tantamount to a finding that a settlement is fair and reasonable," but is rather, "at most," a determination regarding the existence of "probable cause" to circulate a notice to settlement class members.  *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

**2.  The Settlement Is Likely to Be Approved Under Rule 23(e)(2)**

Pursuant to Rule 23(e)(2), a settlement should be approved if it is "fair, reasonable, and adequate," as determined by (1) adequacy of representation, (1) the existence of arm's length negotiations; (2) adequacy of relief; (3) equitableness of treatment for class members, Fed. R. Civ.

P. 23(e)(2); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 691.  In addition, courts the Second Circuit consider the overlapping "*Grinell* factors:"  (4) the complexity, expense and likely duration of the litigation; (5) the reaction of the class to the settlement;  (6) the stage of the proceedings and the amount of discovery completed; (7) the risks of establishing liability; (8) the risks of establishing damages; (9) the risks of maintaining the class action through the trial; (10) the ability of the defendants to withstand a greater judgment; (11) the range of reasonableness of the settlement fund in light of the best possible recovery; (12) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Per the advisory committee notes, the Rule 23(e) factors were intended to supplement, rather than displace, the *Grinell* factors.  Advisory Committee Notes to the 2018 Amendments to the Federal Rules of Civil Procedure; *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 691.  The 23(e)(2) factors and the *Grinell* factors weigh in favor of the Court approving notice of the settlement.

### a.   Representation Is Adequate

The class's interests here are adequately represented because (1) Lead Plaintiff's interests are not antagonistic to those of the class, and (2) its attorneys are "qualified, experienced, and able to conduct the litigation." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 691; *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 99 (2d Cir. 2007).  Lead Plaintiff's interests are aligned with and not antagonistic to the class because it suffered the same monetary injury due to defendants' sale of unregistered tokens and misrepresentations regarding EOS, and therefore has an interest in "vigorously pursuing the claims of the class." *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 691; *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Further, both Lead Plaintiff and Lead Counsel have demonstrated their interest and competence in

representing this class through their faithful and zealous pursuit of this litigation to date.  Thus, this factor weighs in favor of issuing notice regarding the proposed settlement.

### b.  The Proposed Settlement Is the Result of Good-Faith, Arm's-Length Negotiations

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between well-informed counsel.  *See Wal-Mart*, 396 F.3d at 116 (noting strong "presumption of fairness" where settlement is product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery); *In re Flag Telecom Holdings Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *13 (S.D.N.Y. Nov 8, 2010) (same).  Moreover, under the PSLRA, a settlement reached "under the supervision of appropriately selected Lead Plaintiffs is entitled to an even greater presumption of reasonableness."  *In re EVCI Career Colls.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Here, the Proposed Settlement is the product of informed arm's-length negotiations, including discussions among counsel spanning several months.  As highlighted above, counsel for Defendants contacted Lead Plaintiff's counsel following a decision, favorable to Defendants, in the *Holsworth v. BProtocol Foundation, et al*., 1:20-CV-02810-AKH (S.D.N.Y.) action in late February 2021.  Conversations discussing settlement ensued for some time, but no agreement was reached during this first round of negotiations.  Following those efforts, Lead Plaintiff's counsel engaged an expert associated with BRG to assist with determining what the recoverable damages at trial might be.  Following internal discussions of these analyses, Lead Counsel approached Defendants' counsel to resume settlement talks.  After several additional weeks of negotiations, involving counsel and their clients, the parties were able to reach agreement.  Thus, this factor also weighs in favor of authorizing notice of the settlement.

### c. The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation

"[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Pantelyat v. Bank of Am., N.A.*, No. 16-CV-8964 (AJN), 2019 WL 402854, at *7 (S.D.N.Y. Jan. 31, 2019). The Settlement provides for a Settlement Fund of $27,500,000 in cash. This recovery is a substantial result for the Class, especially in light of the history of this case and the risks of continued litigation and trial. Thus, the benefit of the present Settlement must be compared to the risk that no recovery or a lesser recovery might be achieved after trial and likely appeals, most likely years into the future. *See City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015) (the Court should consider, "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case.").

Although Lead Plaintiff and its counsel believe that the claims asserted in the Action against Defendants are meritorious, continued litigation is highly risky. In particular, Lead Plaintiff faced difficulties in surviving Defendants' motion to dismiss, which argued that (1) Lead Plaintiff lacked standing because it did not properly allege that its purchases of ERC Tokens and/or EOS Tokens were domestic transactions; (2) Lead Plaintiff lacked standing to allege claims arising under Section 12 of the '33 Act because it did not purchase directly in Block.one's token sale; (3) Lead Plaintiff's Section 12 claim was time-barred; and (4) Lead Plaintiff's claim arising under Section 10(b) failed because it did not allege (a) an actionable false statement or omission, (b) scienter, and (c) loss causation. ECF No. 86. If Lead Plaintiff had lost any of these arguments, all or a substantial portion of it claims, would have been eliminated at the motion to dismiss phase.

Those risks were underscored when, in the weeks leading to the Settlement, two Judges in this District issued rulings supporting some of the arguments defendants here had made. *See Holsworth*, 1:20-CV-2810-AKH (S.D.N.Y.) (ECF. No. 66); *Bibox*, 20-CV-2807-DLC (S.D.N.Y) (ECF. No. 90).

Even if it had survived the motion to dismiss, Lead Plaintiff faced significant hurdles associated with class certification, and in particular the unique challenges associated with certifying a class of investors in cryptocurrency.  Assuming Lead Plaintiff were able to get a class of investors certified, it would have had to engage in lengthy and challenging discovery and would likely have faced additional challenges at the summary judgment phase.  After those significant hurdles were surpassed, Lead Plaintiff would have faced a complex trial with issues that are likely to be unfamiliar to the fact-finders, and potential appeals following any favorable judgment, processes which would no doubt take years to resolve.  The Court should thus consider that the Settlement provides for payment to the Class now – without incurring any addition costs, rather than a speculative payment years down the road.  *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *44.  In light of the foregoing factors, Lead Counsel and Class Representatives believe the proposed Settlement is in the best interests of the Class.

The Court should also take into account the judgment of the parties involved in negotiating the settlement. The opinion of experienced counsel supporting the settlement is entitled to considerable weight in a court's evaluation of a proposed settlement.  *See Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693 (PGG), 2013 U.S. Dist. LEXIS 61643, at *2-*3 (S.D.N.Y. Apr. 29, 2013) (in exercising its discretion, "courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks"); *Clark v. Ecolab, Inc.*, No. 07-cv-8623-PAC, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27,

11

2009) ([T]the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation … .").  Lead Counsel has extensive experience in prosecuting securities class actions in this District and throughout the county and is among the nation's leading securities class action litigation firms.  Similarly, Defendants' counsel, Davis Polk & Wardwell LLP and Waymaker LLP (formerly Baker Marquart LLP), are both nationally renowned law firms with experience in defending securities class actions, including those involving cryptocurrencies.  Accordingly, their judgment that the Settlement is in the best interest of each of their respective clients should be given considerable weight.

Moreover, under the PSLRA, a settlement reached "under the supervision of appropriately selected Lead Plaintiffs is entitled to an even greater presumption of reasonableness."  *In re EVCI Career Colls.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).  This Action included the active participation of the Court-appointed Lead Plaintiff Crypto Assets Opportunity Fund – a sophisticated institutional investor.  *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05-md-01695, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness. . . . Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.").

### d.  Class Members Are Treated Equitably Under the Plan of Allocation

To satisfy this requirement, a plan of allocation "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel," and "need not be perfect."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 694.  The plan of allocation being proposed by Lead Plaintiff, as set forth in the Notice, was developed by Lead Plaintiff's damages

expert in consultation with Lead Counsel and provides a fair and reasonable method to allocate the Settlement among Class Members who submit valid Claim Forms, and thus easily meets this standard.

The Proposed Settlement will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. Similar plans of allocation repeatedly have been approved by courts in this District. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re AOL Time Warner, Inc.*, No. 02-cv-5575 (SWK), 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006). The fact that all Class Members will be treated the same under the proposed Plan of Allocation supports approval of a notice order.

### e.  The Proposed Settlement Satisfies the *Grinell* Factors

The *Grinell* factors likewise support approval of a notice order regarding the settlement:

*First*, the complexity, expense, and likely duration of the litigation support approval of a settlement. Class actions brought under the federal securities laws are notoriously complex and expensive to prosecute. *See, e.g.*, *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 17588, at *31. This is all the more true in a securities case involving cryptocurrency which includes added layers of complexity and novel issues of law.

*Second*, Lead Plaintiff has actively participated throughout the prosecution of this case and was intimately involved in the decision to enter into the Settlement. As notice of the settlement has not yet been given, other class members have not yet had the opportunity to react to the proposed settlement.

*Third*, the stage of the proceedings is sufficiently advanced to justify settlement. Though "the case is still in the relatively early stages of litigation," (a) all negotiations and discovery

conducted thus far have been adversarial, and (b) a "sufficient factual investigation" has been conducted to allow the court to "intelligently" appraise the settlement.  *See Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011).

*Fourth* and *Fifth*, the risks associated with establishing liability and damages weigh in favor of approving notice of settlement.  Plaintiff satisfies these factors for the same reasons it satisfies the Rule 23(e)(2) factor concerning the adequacy of the settlement relief weighed against the risks of litigation, above.

*Sixth*, the risk of maintaining class status through trial weighs in favor of settlement, as a class has not yet been certified in this litigation, and it is "likely that defendants would oppose class certification if the case were to be litigated."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 694.

*Seventh*, though neither party denies that Defendants could withstand a greater judgment than the proposed settlement amount, "this factor, standing alone, does not suggest that the settlement is unfair."  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

*Eighth* and *Ninth*, the settlement fund is reasonable in light of both the best possible recovery and the attendant risks of litigation.  As explained *supra*, § III(B)(2)(c), the parties agree that the proposed settlement amount is reasonable given the risks attendant to litigating this case.

### 3.  The Court Is Likely to Certify the Class for Purposes of Judgment of the Proposal

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes.  *See Weinberer v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).  The Court need not conduct a rigorous analysis at this stage to determine whether class certification is warranted, but should reserve this analysis for the final approval hearing.  *Karvaly v. eBay, Inc.*, 245 F.R.D.

71, 86 (E.D.N.Y. 2007).  Further, the Court need not determine whether the action, if tried, would present management problems, because there will be no trial.  *Id.* at 620.

Certification of a settlement class is appropriate where the proposed class and proposed class representative meet the four requirements of Rule 23(a): (1) "numerosity" – the members of the class are so numerous that joinder would be impracticable; (2) "commonality" – there are common questions of law and fact that apply to all class members; (3) "typicality" – the claims of the proposed class representative are typical of the class, and there are no unique defenses against the class representative; and (4) "adequacy" – the class representative will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

In addition, certification of a class for settlement purposes requires a showing that the requirements of Rule 23(b)(3) are met: that questions of law or fact common to the members of the class predominate over any individual issues of rule or law, and that a class action is superior to other available methods to adjudicate the controversy.  Fed. R. Civ. P. 23(b)(3).

Here, the parties have stipulated to the certification of the Settlement Class for settlement purposes only.  Settlement Agreement ¶ 3.1.  Lead Plaintiff requests that the Court certify the Class defined in the Stipulation, comprising "all persons or entities who, directly or through an intermediary, purchased or otherwise acquired ERC-20 Tokens and/or EOS Tokens at any time during the period of June 26, 2017 through May 18, 2020, inclusive."  Settlement Agreement ¶ 1.36.  Here, the proposed Settlement Class meets the requirements of and satisfied Rule 23(a) and 23(b)(3).

### a. The Class Members Are So Numerous That Joinder Would Be Impracticable

Rule 23(a)(1) requires a class to be so large that joinder of all its members would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  For purposes of Rule 23(a)(1), "[i]mpracticable does

not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and plaintiffs must only show that "the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi Universal, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity."). Although the exact size of the Class is not yet known, the numerosity requirement is generally satisfied in a securities class action where a "large number of [securities] were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 05-cv-10240, 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007) (numerosity requirement is generally met in cases involving nationally traded securities).

Here, there are likely tens of thousands of potential Settlement Class Members as there were over 900 million EOS Tokens in circulation during the Class Period. They traded on multiple cryptocurrency exchanges including United States-based Coinbase, Kraken, Gemini, and Poloniex.

### b. There Are Questions of Law or Fact Common to the Class

Commonality requires that "questions of law or fact [are] common to the class." *EVCI*, 2007 WL 2230177, at *13. Securities class actions are particularly well-suited to class treatment as the commonality requirement "is applied permissively." *Id*; *see also Vivendi*, 242 F.R.D. 84. Commonality does not mean that all class members must make identical claims and arguments,

but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). The common issue must be of such a nature that it is "capable of class wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). Commonality is satisfied if the plaintiffs charge defendants with a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in the company's public publications and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015).

Here, commonality is met due to common questions of law and fact pertaining to whether the ERC-20 Tokens and/or EOS Tokens are securities that were required to be sold pursuant to a registration statement filed with the SEC, whether false statements of material fact were made in Block.one's public statements, whether Defendants acted with due care in misrepresenting or omitting to state material information concerning Block.one, and the extent of damages sustained by members of the Class and the appropriate measure of damages.

### c.  Lead Plaintiff's Claims Are Typical of the Class's Claims

Putative class representatives' claims must also be typical of those of the class members. Fed. R. Civ. P. 23(a)(3). Typicality requires that "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). Typical does not mean identical. *EVCI*, 2007 WL 2230177, at *13.; *Vivendi*, 242 F.R.D. at 85 ("In prosecuting their case, plaintiffs will necessarily

seek to develop facts relating to the . . . dissemination of allegedly false or misleading statements underlying their claims. Such allegations are generally considered sufficient to satisfy the typicality requirement"). Particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not necessarily render their claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Lead Plaintiff's claims are typical of those of the Settlement Class. CAOF purchased ERC-20 Tokens and EOS Tokens on secondary markets throughout the Class Period, ECF No. 23-3 (Certification on Behalf of CAOF and Schedule A demonstrating purchases and sales of EOS Securities form the period of July 26, 2017 through April 2, 2020) and was damaged when the truth concerning Block.one was revealed to the public. Lead Plaintiff satisfies the typicality requirement.

### d.  Lead Plaintiff Has Fairly and Adequately Protected the Interests of the Class

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first, that the interests of the representative party not conflict with the interests of Settlement Class Members, and second, that the representative party's counsel is qualified, experienced, and able to conduct the proposed litigation vigorously. *EVCI*, 2007 WL 2230177, at \*13. Lead Plaintiff is adequate if its interests do not conflict with those of the class. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at \*10 (S.D.N.Y. Dec. 23, 2009). Pursuant to Rule 23(g), adequacy of proposed class counsel is now considered separately from the

determination of the adequacy of the proposed class representatives.  Both prongs of the adequacy requirement are satisfied here.

Lead Plaintiff does not have any interests antagonistic to those of the proposed Settlement Class.  Lead Plaintiff has submitted certifications consistent with the PSLRA, indicating that it reviewed the complaint, that it is willing to represent the Class, and that it will accept no payment for serving as a representative plaintiff beyond its pro rata shares of any recovery.  ECF No. 23. Lead Plaintiff is seeking, on its own behalf and on behalf of all Settlement Class Members, to recover from Defendants damages caused by Defendants' alleged unlawful conduct.  No evidence exists of any conflict of interests with the Settlement Class.  Thus, Lead Plaintiff is an adequate class representative.

Rule 23(g) also requires a court to assess the adequacy of proposed class counsel.  To that end, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

The Court-appointed firm serving as Lead Counsel, Grant & Eisenhofer P.A.  ("Grant & Eisenhofer"), is experienced in prosecuting class actions and has  successfully prosecuted securities class actions in this Court and throughout the country.  Grant & Eisenhofer is routinely appointed as class counsel in courts across the nation in securities class actions.  Lead Counsel's firm resumes was previously submitted to the Court.  ECF No. 25-2.  The Settlement was reached only after Lead Counsel investigated and drafted the Complaint and arduously opposed Defendants' motion to dismiss.  ECF Nos. 85, 86, 92, 97.  Counsel spent considerable time on this action for the

benefit of Block.one investors including: conducting a thorough investigation with the help of a paid, private investigator; opposing Defendants' motion to dismiss; retaining a damages expert experienced in cryptocurrency to help assess the total potential class-wide damages in the action; participating in extensive and prolonged settlement negotiations with Defendants' counsel. Lead Counsel's significant securities class action experience makes it knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation. Thus, Lead Counsel would provide adequate representation as Class Counsel for the Class.

> **e. Questions Common to the Class Predominate Over Individual Questions and a Class Action Is Superior to Other Available Means of Adjudication**

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiffs satisfy the predominance and superiority criteria.

"The focus of the predominance inquiry is on defendants' liability, not on damages." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues common to the class." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *18 (E.D.N.Y. July 18, 2013). Here, no question exists that issues surrounding Defendants' alleged conduct, such as whether their statements and omissions were materially false or

misleading, and whether their conduct caused damages to Plaintiffs and the Settlement Class, are common to each member of the Settlement Class. If each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability. Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem*, 521 U.S. at 625.[4]

Rule 23(b)(3) also requires a finding that the class action mechanism is a superior method of adjudicating Plaintiffs' and the Settlement Class members' claims. The factors relevant to a finding of superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Many of the Settlement Class Members are individuals for whom prosecution of a costly damages action on their own behalves would not provide a realistic or efficient alternative. All outstanding related cases have been consolidated into this Action, in an appropriate forum convenient for all parties. Additionally, Lead Plaintiff believes no difficulties will be encountered in the management of this class action and Settlement.

This Court should balance the merits of certifying a class against other possible methods of adjudication. Without securities class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs

---

[4] Additionally, the Second Circuit has found that "a settlement class ordinarily need not demonstrate that the fraud-on-the-market presumption applies to its claims in order to satisfy the predominance requirement." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2012) (citing *Amchem*, 521 U.S. at 620).

would have no realistic day in court if a class action were not available"). The "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *Marsh & McLennan*, 2009 WL 5178546, at *12. *See also Amchem*, 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"). Moreover, a class action avoids the possibility of repetitious litigation and efficiently resolves the claims of the entire Settlement Class at once, conserving judicial resources. Thus a class action is the superior method of adjudication.

Plaintiffs have satisfied all the requirements of Rules 23(a) and (b)(3). The Court should thus authorize notice of settlement to the Class.

## IV.   NOTICE OF THE SETTLEMENT AND PROCEDURE FOR PROVIDING NOTICE TO CLASS MEMBERS SHOULD BE APPROVED

### A.   The Content of the Notice

Rule 23 of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). There are no "rigid rules" to apply when determining the adequacy of notice for a class action settlement; and "the standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Wal-Mart, 396 F.3d at 113-14. Moreover, the content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members

thereunder."  In re Stock Exch. Options Trading Antitrust Litig., No. 99-cv-0962 (RCC), 2006 U.S. Dist. LEXIS 87825, at *22 (S.D.N.Y. Dec. 4, 2006).

The proposed Notice (attached as Exhibit A-1 to the Settlement Agreement) advises Class Members of, inter alia: (i) the nature of the action and claims, issues and defenses asserted; (ii) the definition of the Class certified by the Court; (iii) the essential terms of the Settlement; (iv) the proposed Plan of Allocation; and (v) information regarding Lead Counsel's forthcoming motion for an award of attorneys' fees and expenses.   The Notice also provides specific information regarding the date, time, and place of the Final Approval Hearing, and sets forth the procedures and deadlines for a class member to:  (i) submit a Claim Form; (ii) object to any aspect of the Settlement, including the proposed Plan of Allocation, and Lead Counsel's request for attorneys' fees and expenses; (iii) exclude herself from the class; and (iv) how to enter an appearance. Finally, the Notice informs class members of the binding effect of the judgment and release provided to be provided to defendants, should the settlement be approved.  As discussed below, no second opportunity for opting out of the Class is necessary under the particular circumstances of this Action.  See §V below.

The content of the proposed Notice also meets the requirements of the PSLRA.  In addition to the foregoing, the Notice includes: (i) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (ii) a statement of the potential outcome of the case (i.e., whether there was agreement or disagreement on the amount of damages); and (iii) a brief statement that explains the reasons why the Parties are proposing the Settlement.  See 15 U.S.C. §78u-4(a)(7).

As outlined in the Preliminary Approval Order, the proposed Claims Administrator, Epiq Global, under the direction of Lead Counsel, will notify Class Members of the proposed

Settlement. Epiq was selected because it served as the claims administrator in a similar cryptocurrency case, *In re Tezos Sec. Litig.*, 3:17-cv-6799 (N.D. Cal.) (ECF No. 246). Lead Plaintiff's counsel also conferred with Defendants' counsel here, Brian Klein, who served as Defendants' counsel in the *Tezos* litigation, and who confirmed that Epiq ably handled the claims administration there.

### B.    The Notice Procedure

Epiq prepared a detailed notification procedure based on its past experience. As noted above, many cryptocurrency investors prefer to remain anonymous, and thus traditional routes of identifying the securities purchasers are not available. Thus, the notification process will rely primarily on a broad marketing campaign targeted at online forums and publications designed to reach as many ERC-20 Token and EOS Token purchasers as possible. Epiq will run banner advertisements on Google Display Network, Blockonomi, Facebook, Reddit, Twitter, and Telegram, targeting individuals who express interests in cryptocurrency funds, digital currency, bitcoin investing, Binance information, and Ethereum information, among other key areas of interest indicating a potential ERC-20 and/or EOS Token purchaser.  Advertisements will also run on coinmarketcap.com, news.bitcoin.com, hackernoon.com, and Investopedia.com.  A Notice Plan Proposal is attached to the accompanying Declaration of Daniel L. Berger as Exhibit 3.

The Notice and Claim Form substantially in the forms of Exhibits A-1 and A-2 to the Settlement Agreement, will be accessible to all interested persons who view the links on the above-referenced sites.  In addition, the Claims Administrator will cause copies of the Notice and Claim Form, along with other documents and information relevant to the Settlement, to be posted on the Settlement website, www.BlockOne-Settlement.com.

In sum, the Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Lomeli v. Sec. & Inv. Co. Bahr.*, 2013 WL 6170572, at *2 (2d Cir. Nov. 26, 2013) (summary order).  Accordingly, Lead Counsel respectfully submits that the proposed notice program is adequate and should be approved by the Court.

## V.   THE PROPOSED SCHEDULE SHOULD BE APPROVED

In connection with preliminary approval of the Proposed Settlement, the Court must also set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims, opting out of the settlement, and objecting to the Settlement.  The parties respectfully submit the following schedule for the Court's consideration, as set forth in the Preliminary Approval Order.

| Event | Date |
|-------|------|
| Commence Mailing of Notice | 14 days after entry of Notice Order ("Notice Date") |
| Publish Summary Notice | 10 days after Notice Date |
| Service by Lead Counsel on Defendants' Counsel of Affidavit Confirming Notice | 7 days prior to Settlement Hearing |
| Deadline to Submit Proofs of Claim and Release | 120 days after Notice Date |
| Deadline to Request Exclusion from the Settlement Class | 21 days prior to Settlement Hearing |
| Deadline to File Objections to the Proposed Settlement | 21 days prior to Settlement Hearing |
| Lead Plaintiff to File Motion for Approval of the Settlement and Lead Counsel to File Application for Attorneys' Fees and Expenses | 30 days prior to Settlement Hearing |

25

Dated: New York, New York
June 11, 2021

Respectfully submitted,

*/s/ Daniel L. Berger*
Daniel L. Berger
Caitlin M. Moyna
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com
Email: cmoyna@gelwa.com

*Lead Counsel for the Class and Counsel for Lead Plaintiff Crypto Assets Opportunity Fund, LLC*

Ievgeniia P. Vatrenko, Esq.
2 Northside Piers
Brooklyn, NY 11249
Tel.: (718) 451-6384
Email: jenny@vatrenkoesq.com

James Koutoulas
**Koutoulas Law LLC**
10 N. Dearborn
Chicago, IL 60604
Tel.: (312) 836-1180
Email: james@koutoulaslaw.com

J. Samuel Tenenbaum
**Bluhm Legal Clinic of the Northwestern Pritzker School of Law**
**Complex Civil Litigation and Investor Protection Center**
375 East Chicago Ave.
Chicago, IL 60611
Tel.: (312) 503-4808
Email: s-tenenbaum@law.northwestern.edu

*Additional Counsel for Crypto Assets Opportunity Fund LLC*