**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHASE WILLIAMS AND WILLIAM ZHANG, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>BLOCK.ONE, BRENDAN BLUMER, and DANIEL LARIMER,<br><br>      Defendants. | Civ. No. 1:20-cv-2809-LAK<br><br>CLASS ACTION |
| CRYPTO ASSETS OPPORTUNITY FUND LLC and JOHNNY HONG, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br>      v.<br><br>BLOCK.ONE, BRENDAN BLUMER, DANIEL LARIMER, IAN GRIGG, and BROCK PIERCE,<br><br>      Defendants. | Civ. No.: 1:20-cv-3829<br><br>CLASS ACTION |

**MEMORANDUM IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF THE
PROPOSED CLASS AND OF CLASS REPRESENTATIVE AND APPOINTMENT OF
LEAD COUNSEL AS  CLASS COUNSEL, AND APPROVAL OF PLAN OF
ALLOCATION**

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... iii

I.   PRELIMINARY STATEMENT ..................................................................... 1

II.  PROCEDURAL AND FACTUAL BACKGROUND ....................................... 3

III. CERTIFICATION OF THE PROPOSED CLASS AND APPOINTMENT OF LEAD
     PLAINTIFF AS CLASS REPRESENTATIVE AND OF LEAD COUNSEL AS CLASS
     COUNSEL REMAINS WARRANTED............................................................. 3

IV.  THE NOTICE SATISFIES RULE 23 AND DUE PROCESS STANDARDS ................. 5

V.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE......... 8

     A.  The Policy  Supporting Settlement of complex Class Actions ..................... 8

     B.  A Presumption of Fairness Applies To This Settlement............................... 9

     C.  The Settlement Satisfies The Requirements For Approval.......................... 11

          1.  Lead Plaintiff and Lead Counsel Have Adequately Represented the  Class ........ 11

          2.  The Settlement Was Negotiated at Arm's Length and Is Absent of Fraud or
              Collusion ........................................................................................ 13

          3.  The Risks and Costs of Further Litigation Demonstrate the Fairness and
              Adequacy of the Settlement ................................................................ 13

          4.  The Reaction of the Class Supports Settlement.................................... 14

          5.  The Stage of the Proceedings Is Sufficiently Advanced to Justify Settlement..... 15

          6.  The Risks of Establishing Liability, Establishing Damages, and Maintaining the
              Class Through Trial Demonstrate that the Settlement Should be Approved........ 15

          7.  The Settlement Is Within the Range of Reasonableness ..................... 19

          8.  The Settlement Satisfies the Remaining Rule 23(e)(2) Factors........................... 20

               (a)  The Proposed Method for Distributing Relief Is Effective ......................... 20

               (b)  The Parties' Sole Supplemental Agreement Concerns Exclusions.............. 20

               (c)  No Class Member Receives Preferential Treatment .................................... 21

VI.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE................................... 21

VII. CONCLUSION............................................................................................................ 22

# TABLE OF AUTHORITIES

**Cases**                                                                      **Pages(s)**

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).......... 17

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir.2000)............................................................................................ 12

*Bano v. Union Carbide Corp.*,
    273 F.3d 120 (2d Cir. 2001) ........................................................................................... 8

*In re Bibox Group Holdings Ltd. Secs. Litig.*,
    No. 1:20-CV-2807 (DLC) (S.D.N.Y., May 8, 2021)...................................................... 16

*Beecher v. Able*,
    575 F.2d 1010 (2d Cir. 1978)......................................................................................... 21

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)............................................................................. 11, 13, 14

*City of Providence v. Aeropostale, Inc.*,
    No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom.
    Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)................................................. 10

*Clark v. Ecolab, Inc.*,
    No. 07-cv-8623-PAC, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ............................ 18

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)............................................................................................ 12

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)............................................................................................ 19

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)........................................................................................... 12

*Garland v. Cohen & Krassner*,
    No. 08-CV-4626, 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011) ................................... 16

*Guevoura Fund Ltd. v. Sillerman*,
    No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............... 8, 21, 22

*Holsworth v. BProtocol Foundation*,
    No. 1:20-CV-02810 (AKH) (S.D.N.Y., July 1, 2021)...................................................... 16

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05-CIV-10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................... 9, 10, 18

*In re Exxon Valdez*,
    229 F.3d 790 (9th Cir. 2000) .................................................................................... 8

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019)................................................................. 11, 12, 16

*Loc. 1180, Commc'ns Workers of Am. , v. City of New York*,
    392 F. Supp. 3d 361 (S.D.N.Y. 2019)............................................................................ 15

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................... 9, 14

*In re Merrill Lynch & Co. Rsch. Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)................................ 22

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ................................................................................. 6

*Mullane v. Cent. Hanover & Tr. Co.*,
    339 U.S. 306 (1950)................................................................................................. 5

*Odom v. Hazen Transp., Inc.*,
    275 F.R.D. 400 (W.D.N.Y. 2011)............................................................................... 15

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998) ) *aff'd*, 117 F.3d 721 (2d Cir. 1997)......................................... 8

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................................. 9

*Plummer v. Chem. Bank*,
    668 F.2d 654 (2d Cir. 1982) .................................................................................... 15

*Seijas v. Republic of Argentina*,
    No. 04-CV-1085 (TPG), 2017 WL 1511352 (S.D.N.Y. Apr. 27, 2017) .......................... 17

*Taft v. Ackermans*,
    No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)............................ 22

*In re Take Two Interactive Sec. Litig.*,
    No. 06 CIV. 1131 (RJS), 2010 WL 11613684 (S.D.N.Y. June 29, 2010)....................... 21

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................ 9

*In re Tezos Sec. Litig.*,
    No. 3:17-cv-06799 (N.D. Cal. Aug. 28, 2020) ........................................... 6, 7

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05-md-01695, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ................................. 10, 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
    396 F.3d 96, 114 (2d Cir. 2005)............................................................. 5, 8, 13

*Yuzary v. HSBC Bank USA, N.A.*
    No. 12-cv-3693 (PGG), 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013)............................ 18

**Other Authorities**

David F. Herr, *Manual for Complex Litigation* §21.312  (4th ed. 2019)........................................ 5

**Statues**

Fed. R. Civ. P. 23 ....................................................................................*Passim*

§15 U.S.C. §78U-4(a)(4)…………………………………………………………………  2,6,10,18

15 U.S.C. §78j(b)…………………………………………………………………………..13

15  U.S.C. §78t(a)…………………………………………………………………………..13

Lead Plaintiff Crypto Assets Opportunity Fund, by and through Lead Counsel Grant & Eisenhofer P.A., respectfully submits this memorandum in support of its motion for final approval of: (i) the $27.5 million Settlement reached in this Action; (ii) certification of the proposed Class and appointment of Lead Plaintiff as Class Representative and appointment of Lead Plaintiff as Class Counsel; and (iii) the proposed Plan of Allocation.[1]

## I.     PRELIMINARY STATEMENT

The proposed Settlement is an excellent result for the class of investors who suffered economic damages in connection with false and misleading statements and omissions issued by Block.one (the "Company") and the Individual Defendants in connection with the Company's token sale and during the Class Period.  It provides for a substantial cash payment of $27.5 million, which has been fully funded for the benefit of the Class in exchange for dismissal of all claims brought against the Defendants.

The Settlement comes after more than a year of contentious litigation, including significant motion practice and protracted and arm's-length settlement negotiations. There is no question that, as a result of their considerable litigation and settlement efforts, Lead Plaintiff and Lead Counsel have a thorough understanding of the relative strengths and weaknesses of the proposed Class's claims and the propriety of the Settlement. It is their view that the Settlement Amount is a superior result for the Class.

While Lead Counsel believes in the strength of the Class's claims, Defendants have adamantly denied liability. During the Parties' settlement negotiations, Lead Counsel made clear that the case would continue to be litigated rather than settle for an amount that was not fair to the

---

[1] All capitalized terms not otherwise defined herein shall have the meanings set forth in the Amended Stipulation of Settlement (Exhibit A to the Declaration of Daniel L. Berger Attaching Amended Stipulation of Settlement).

Class. The arm's-length negotiations resulted in a fair settlement and favorable result for the Class.

Lead Counsel is highly experienced in prosecuting securities class actions. Based on an analysis of all the relevant factors, including: (1) the substantial risk, expense, and uncertainty in continuing the litigation, including the risk that the Court would decline to certify the Class, and the likely motions for summary judgment, trial, post-trial motions, and appeals; (2) the relative strengths and weaknesses of the claims and defenses asserted; (3) past experience in litigating complex actions similar to this one; (4) the novelty of the issues raised in this litigation; and (5) the serious disputes among the parties concerning the merits and damages, the Settlement is an outstanding result and is in the best interests of the proposed Class. The Settlement is also supported by Lead Plaintiff, who is precisely the type of institutional investor Congress sought to have serve as lead plaintiff and engage in major strategic decisions in actions such as this one when it passed the Private Securities Litigation Reform Act of 1995 ("PSLRA").

The reaction of the proposed Class so far also supports the Settlement and Plan of Allocation. Pursuant to the Order Providing for Notice and Certifying Class ("Notice Order") (ECF No. 115), the Notice was disseminated through means specifically designed to reach cryptocurrency investors. Those means included banner advertisements on Google Display Network, Cryptobriefing, Facebook, Reddit, Twitter, and Telegram, targeting individuals whose interests indicated that they may have purchased or otherwise acquired Block.one-issued ERC-20 and/or EOS tokens, as well as advertisements on coinmarketcap.com, news.bitcoin.com, hackernoon.com, and Investopedia.com.  See Mahan Decl. ¶7.  To date, there has not been a single objection to the Settlement, nor have any proposed Class Members submitted any requests for exclusion. *Id.* at ¶18.

Lead Plaintiff also requests that the Court approve the Plan of Allocation, which was set forth in the Notice sent to Class Members. The Plan of Allocation governs how claims will be calculated and how the Settlement proceeds will be distributed among Claimants. It was prepared in consultation with Lead Plaintiff's economic consultant, Frank Torchio of Forensic Economics, Inc., who has over thirty years of experience calculating damages in securities actions such as this one. The Plan of Allocation provides for calculation of investors' "Recognized Loss Amounts" for those who purchased ERC-20 tokens directly from Block.one during the token sale and those who purchased ERC-20 and/or EOS tokens in the secondary market.  Mahan Decl. ¶ 7.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

To avoid repetition, Lead Plaintiff respectfully refers the Court to the accompanying Joint Declaration for a full discussion of: (i) the factual background and procedural history of the Action; (ii) the efforts of Lead Counsel in prosecuting the claims in this Action; (iii) the negotiations resulting in this Settlement; (iv) the reasons why the Settlement and the Plan of Allocation are fair and reasonable and should be approved.

## III.   CERTIFICATION OF THE PROPOSED CLASS AND LEAD PLAINTIFF AS CLASS REPRESENTATIVE AND APPOINTMENT OF LEAD COUNSEL AS CLASS COUNSEL REMAINS WARRANTED

The Court previously, for settlement purposes only, found that it would likely be able to (1) certify the Settlement Class, (2) certify Lead Plaintiff as Class Representative for the Class, and (3) appoint Lead Counsel as Class Counsel for the Settlement Class. ECF No. 115. None of the facts supporting  certification of the Class have changed since the Court's Order, and there has been no objection to certification.

The proposed Class still satisfies the requirements of Rules 23(a) and (b)(3). For the reasons cited in Lead Plaintiff's Memorandum of Law in Support of its Motion for Approval of Notice of

Settlement and should be certified.  ECF No. 111.  The proposed Class still satisfies the numerosity requirement, as there were over 900 million EOS tokens in circulation during the Class period on U.S. based crypto exchanges.  *Id*.  The commonality requirement is also met because Lead Plaintiff has charged defendants with a common course of misconduct whereby alleged misrepresentations appeared in  Block.one's publications and statement; and the proposed Class shares questions of law and fact in common. Namely, whether EOS tokens are a security that were required to be sold pursuant to a registration statement filed with the SEC, whether false statements of material fact were made in Block.one's public statements, whether Defendants acted with due care in misrepresenting or omitting to state material information concerning Block.one, and the extent of damages sustained by members of the Class and the appropriate measure of damages.  *Id.*.  The typicality requirement is also satisfied as Lead Plaintiff's claims are typical of the proposed class since CAOF purchased ERC-20 Tokens and EOS Tokens on secondary markets throughout the Class Period, and was damaged when the truth concerning Block.one was revealed. ECF Nos. 23-3, 111.  Finally, the predominance requirement of  Rule 23 (b)(3).has been met, because  questions of law and fact common to the class predominate, rendering a class action the superior method of adjudicating this action. *Id*.

        Certifying Lead Plaintiff as Class Representative and appointing of Lead Counsel as Class Counsel is also warranted.  Lead Plaintiff is an adequate representative of the proposed Class because it has no interests that are antagonistic to members of the proposed Class.  ECF Nos. 23, 111. Lead Plaintiff has also demonstrated the adequacy of its proposed Class Counsel.  Lead counsel is qualified, experienced, and able to conduct the proposed litigation vigorously given its significant experience prosecuting securities class actions and ability to determine when a proposed settlement is beneficial to investors.  ECF. Nos. 25-2, 111.  Lead Counsel has also conducted significant work

in identifying and investigating the claims in this action, drafting the Complaint; opposing Defendants' motion to dismiss; conducting a thorough investigation with the help of a paid, private investigator; retaining a damages expert experienced in cryptocurrency to assess the total potential class-wide damages in the action; and participating in extensive and prolonged settlement negotiations with Defendants' counsel.  ECF Nos. 85, 86, 92, 97, 111.  Thus, Lead Counsel would provide adequate representation as Class Counsel for the Class.

Accordingly, Lead Plaintiff respectfully requests that the Court confirm final certification of the Class for settlement purposes only, certify CAOF as Class Representative  and appoint Lead Counsel as Class Counsel.

## IV.    THE NOTICE SATISFIES RULE 23 AND DUE PROCESS STANDARDS

Members of a proposed class action must be provided with notice of the existence of the litigation and settlement through "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1). "There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements," but "the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). (Internal quotations omitted.) "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.'" David F. Herr, *Manual for Complex Litigation* §21.312, at 293 (4th ed. 2019). Notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover & Tr. Co.*, 339 U.S. 306, 314 (1950).  "Notice need not be perfect, but need be only the best notice

practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008).

Here, because of the nature of the security – cryptocurrency – Lead Counsel designed a customized notice program designed to reach persons and entities who were likely to have purchased the tokens at issue in the case. Thus, in accordance with the Notice Order, the Claims Administrator caused the Notice and Proof of Claim to be publicized to potential class members through means reasonably likely to apprise them of the litigation and settlement, i.e., via social media and other on-line communication sources. *See* Mahan Decl.,[2] ¶7. Information regarding the Settlement, including copies of the Notice and Proof of Claim that can be easily downloaded, was posted on a website devoted solely to the Settlement. *Id.* ¶14. The Notice, which is available on the settlement website, contains a description of the claims asserted, the Settlement, the Plan of Allocation, and Class Members' rights to participate in and object to the Settlement or the requested fees and expenses, or to exclude themselves from the Class. In sum, the notice program provided all the information required by the PSLRA and is adequate to meet requirements of due process and Rules 23(c)(2) and (e) for providing notice to the Class.

Lead Plaintiff selected Epiq Systems, Inc. ("Epiq") to function as claims administrator because it had previously served as the claims administrator in a similar cryptocurrency case, Lead Plaintiff's Motion for Preliminary Approval of Settlement, *In re Tezos Sec. Litig.*, No. 3:17-cv-06799 (N.D. Cal., Mar. 20, 2020), ECF No. 246. Aside from the *Tezos* settlement, Lead Counsel is unaware of previous securities settlements that are substantially similar to the Settlement here.

---

[2] References to Mahan Decl. are to the Declaration of Joseph Mahan Regarding (a) Media Campaign and Claims Package Dissemination; (b) Publication of the Summary Notice; and (c) Report on Requests for Exclusion Received to Date (ECF 116) (also attached hereto as Exhibit A).

Unlike the Class Members in *Tezos*, Settlement Class Members in this case never provided their contact information to Block.one. Further, as noted above, many cryptocurrency investors prefer to remain anonymous, and thus traditional routes of identifying the securities purchasers are not available. Given the unique, online-only nature of this case and the lack of contact information for the Settlement Class Members, Epiq devised a notification process that involved a broad marketing campaign targeted at online forums and publications designed to reach as many potential ERC-20 and EOS Token purchasers as possible and allowed claim forms to be completed entirely online with electronic signature capability. *See* Mahan Decl. ¶7.

As part of the notification process, Epiq caused advertisements of the settlement to be run for a period of at least 31 days on various mainstream websites including Google Display Network, Facebook, Reddit, Twitter, and Telegram. *Id*. The advertisements were targeted to various key words including: cryptocurrency, bitcoin, ethereum, coinbase, digital currency, and EOS. *Id*. In addition, on July 15, 2021 the Summary Notice was published over U.S. National Newsline and transmitted via PRNewsire. *Id*. ¶13. In September 2021, Epiq launched a supplemental media campaign incorporating data drawn from the original campaign and targeting the three networks Epiq's publication team identified as having the highest response and click-thru rates thus far. *Id*. ¶9. In addition, Epiq identified 186 email addresses of potential claimants who had begun claims without completing them, and reached out directly to those potential claimants. *Id*. In response to feedback suggesting that potential claimants were hesitating to complete claims because of difficulty accessing data due, in part, to limitations on access to the cryptocurrency platform Binance in the United States, on September 28, 2021 Epiq updated the claim form on the settlement website to encourage claimants to submit claims even without complete documentation. *Id*. ¶10.

Likewise, in response to feedback, Epiq updated the website language to reassure potential claimants that information submitted would be kept confidential. *Id.*

The campaigns were effective in that they resulted in numerous cryptocurrency-focused publications, like Cointelegraph, Decrypt, and The Block Crypto, publishing the news on their platforms, nearly a hundred thousand views of the website dedicated solely to the Settlement, and the generally positive sentiment on online forums, praising Lead Plaintiff and its Counsel for achieving a favorable outcome for the Class. *See id.* ¶8. Further, the media campaigns successfully drove significant traffic to the settlement website resulting in 76,369 hits as of October 8, 2021. *Id.* ¶11. Lead Plaintiff's Counsel also notified all purchasers of ERC-20 and EOS Tokens who reached out to Counsel after the announcement of the filing of this action, and those purchasers reacted favorably to the Settlement. *Id.* ¶8.

## V. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. THE POLICY SUPPORTING SETTLEMENT OF COMPLEX CLASS ACTIONS

The Second Circuit has long adhered to a general policy that favors and promotes the settlement of disputed claims, particularly in class actions. *Wal-Mart Stores, Inc.*, 396 F.3d at 116 ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context."), *citing In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) *aff'd*, 117 F.3d 721 (2d Cir. 1997); *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129 (2d Cir. 2001) ("[I]t is axiomatic that the law encourages settlement of disputes," and "[t]he public interest in amicable resolution of cases is particularly strong in the context of mass tort and similar litigation."), *citing In re Exxon Valdez*, 229 F.3d 790, 795 (9th Cir. 2000) ("[T]he general policy of federal courts to promote settlement before trial is even stronger in the context of large-scale class actions."); *see also Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *5 (S.D.N.Y. Dec. 18, 2019)

("Absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel. This is particularly true in complex class actions, where the courts have long recognized that such litigation is notably difficult and notoriously uncertain, and that compromise is particularly appropriate.") (Internal quotations and citation omitted.); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CIV-10240 CM, 2007 WL 2230177, at *3 (S.D.N.Y. July 27, 2007) ("Settlement approval is within the [c]ourt's discretion, which should be exercised in light of the general judicial policy favoring settlement.") (Internal quotations and citations omitted.).

## B.   A PRESUMPTION OF FAIRNESS APPLIES TO THIS SETTLEMENT

A strong presumption of fairness is warranted where, as here, a proposed settlement is reached by experienced counsel through arm's-length negotiations. *In re EVCI Career Colleges.*, No. 05-CIV-10240 CM, 2007 WL 2230177, at *4  ("A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."). Moreover, "great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation" in determining the fairness of a proposed settlement.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).

Further still, under the PSLRA, a settlement reached "under the supervision of appropriately selected [L]ead [P]laintiff is entitled to an even greater presumption of reasonableness." *In re EVCI Career Colleges.*, No. 05-CIV-10240 CM, 2007 WL 2230177, at *4; *see also In re Veeco Instruments Inc. Sec. Litig.*, No. 05-md-01695, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness . . . . Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.").

The Settlement was reached in this case by experienced, fully informed counsel following negotiations that spanned several months, multiple rounds, and expert consultations.  Defendants reached out to Plaintiff's counsel in late February, 2021, and a settlement agreeable to both parties was not reached until June 11, 2021. During the negotiations, Lead Counsel zealously advanced Lead Plaintiff's position and made clear that it was prepared to continue to litigate to and through trial rather than settle for less than a fair value. *Id.* Likewise, Defendants were represented by law firms with a reputation for the tenacious defense of class actions and other complex civil matters. *Id.* Lead Plaintiff Crypto Assets Opportunity Fund, a sophisticated institutional investor with deep experience in the Cryptocurrency space supervised and participated in the settlement negotiations. Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Given the arm's-length nature of the negotiations and counsel's significant experience, the Settlement is procedurally fair and not the product of fraud or collusion.  See *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("A court may find the negotiating process is fair where, as here, the settlement resulted

from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.") (internal quotations and citations omitted).

### C.   THE SETTLEMENT SATISFIES THE REQUIREMENTS FOR APPROVAL

In determining fairness, reasonableness, and adequacy for purposes of final approval, the Court must look at whether under Rule 23(e)(2): (i) "the class representatives and class counsel have adequately represented the class;" (ii) "the proposal was negotiated at arm's length;" and (iii) "the relief provided for the class is adequate." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692-93 (S.D.N.Y. 2019). In addition, courts in the Second Circuit consider the overlapping "*Grinnell* factors:" (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).[3] The 23(e)(2) factors and the *Grinnell* factors weigh in favor of the Court approving the Settlement.

#### 1.   Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The class's interests

---

[3] Per the advisory committee notes, the Rule 23(e) factors were intended to supplement, rather than displace, the *Grinell* factors. *See* Advisory Committee Notes to the 2018 Amendments to the Federal Rules of Civil Procedure; *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 691.

here are adequately represented because (1) Lead Plaintiff's interests are not antagonistic to those of the class, and (2) its attorneys are "qualified, experienced, and able to conduct the litigation." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692; *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). Here, Lead Plaintiff's interests are aligned with, and not antagonistic to, the class because it suffered the same monetary injury due to defendants' sale of unregistered tokens and misrepresentations regarding Block.one-issued ERC-20 and EOS tokens, and Lead Plaintiff, therefore, has an interest in "vigorously pursuing the claims of the class." *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692; *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Lead Counsel is highly experienced in securities litigation, with a long and successful track record representing investors in cases throughout the country. *See* §V(C)(6).

Further, Lead Counsel committed considerable resources and time researching, investigating, prosecuting, and negotiating a Settlement for this Action for eighteen months. First, Lead Counsel conducted a diligent investigation to ensure that it had a sound Amended Complaint that could withstand a motion to dismiss. This included substantial factual and legal research, including the review of the SEC Order instituting cease-and-desist proceedings and imposing a cease-and-desist order against Block.one, numerous news reports relating to Defendants' offering and sale of ERC-20 and EOS tokens, consultations with experts on blockchain technology, cryptocurrencies, and damages, and applicable laws and regulations. Lead Counsel then spent significant time drafting the Complaint and opposition to Defendants' motion to dismiss. Second, Lead Counsel spent a considerable amount of time negotiating the terms of the Settlement, including negotiations with Defendants, consultation with Lead Plaintiff's expert, and drafting of the necessary settlement documents. Third, and perhaps most importantly as the history of the

Action makes clear, the services provided by Lead Counsel proved fruitful, resulting in a favorable recovery for the Class. Defendants have fought fiercely throughout the litigation process, and Lead Counsel responded accordingly.

### 2. The Settlement Was Negotiated at Arm's Length and Is Absent of Fraud or Collusion

As detailed in §IV(B), above, the Settlement was negotiated at arm's length and involved months-long discussions among counsel, Lead Plaintiff, and an expert associated with BRG to assist with determining what the recoverable damages might be at trial. Following internal discussions of these analyses and several additional weeks of negotiations, the parties were able to reach the Settlement, which presents no fraud or collusion.

Thus, final approval of the Settlement is warranted pursuant to Rule 23(e)(2)(B) and *Wal-Mart*, 396 F.3d at 116.

### 3. The Risks and Costs of Further Litigation Demonstrate the Fairness and Adequacy of the Settlement

Rule 23(e)(2)(C)(i) examines "the costs, risks, and delay of trial and appeal," and the first *Grinnell* factor looks at the "complexity, expense, and likely duration of the litigation." *Grinnell*, 495 F.2d at 463. The Settlement is fair and adequate in light of Rule 23(e)(2)(cc)(i) and this first *Grinnell* factor.

Lead Plaintiff faced formidable obstacles to recovery at trial, both with respect to liability and damages. The principal claims are based on §§5, 12(a)(1), and 12(a)(2) of the 1933 Act, and §§10(b) and 20(a) of the 1934 Act. Lead Plaintiff alleges that Defendants failed to register Block.one-issued ERC-20 and EOS tokens pursuant to federal securities laws and disseminated materially false and misleading statements by representing that EOSIO software, which powered the EOS blockchain, would make EOS superior to existing blockchains because of enhanced decentralization and functionality. Following disclosures that EOS failed to meet Block.one's

representations about its functionality and decentralization, the price of EOS tokens fell.  AC ¶¶173-192.

Lead Plaintiff believes that the allegations of the Complaint would ultimately be borne out by the evidence. Nevertheless, it also recognizes that it faced significant hurdles to proving liability at trial. As a result, were the parties to continue with the litigation, it would be protracted and costly. At the time of the settlement, the Court had not yet ruled on Defendants' motion to dismiss. Following a ruling on the motion, the Parties would have needed to engage in motion practice relating to class certification and possible appeal. If the case proceeded to trial, fact discovery would be lengthy, costly, and labor intensive. Expert discovery would likely be even more complex than in a standard securities litigation case, due to the novel nature of the cryptocurrency-based claims. Summary judgment-related motion practice would be costly and time-consuming as well. Further, as explained infra §IV(C)(6), continued litigation would be highly risky to the success of Lead Plaintiff's claims and the possibility of recovery for the Class.  Thus, these factors support final approval of the Proposed Settlement.

### 4.    The Reaction of the Class Supports Settlement

Per the second *Grinnell* factor, a positive reaction by the Class supports final approval of a settlement. *See Grinnell*, 495 F.2d at 462 (approving settlement where only twenty objectors appeared from group of 14,156 claimants); *Maley*, 186 F.Supp.2d at 362-63 ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.") Lead Plaintiff, together with Claims Administrator Epiq Systems, Inc., has provided Notice to the Settlement Class as directed in the Preliminary Approval Order.

To date, not a single Class Member has objected to there the Settlement, nor have any Class Members requested to be excluded from it. Mahan Decl. at ¶18.  This factor thus militates in favor of final approval.

### 5.   The Stage of the Proceedings Is Sufficiently Advanced to Justify Settlement

So long as a proposed settlement is "fair, adequate and reasonable, and not influenced in any way by fraud or collusion," formal pretrial discovery is not a prerequisite to final approval. *Plummer v. Chem. Bank*, 668 F.2d 654, 658 (2d Cir. 1982) (citation omitted). Though this Action is still in its relatively early stages, (a) all negotiations and discovery conducted thus far have been adversarial, and (b) a "sufficient factual investigation" has been conducted to allow the court to "intelligently" appraise the settlement. *See Loc. 1180, Commc'ns Workers of Am. , v. City of New York*, 392 F. Supp. 3d 361, 375 (S.D.N.Y. 2019); *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011).  Thus, the third *Grinnell* factor favors final approval.

### 6.   The Risks of Establishing Liability, Establishing Damages, and Maintaining the Class Through Trial Demonstrate that the Settlement Should be Approved

The fourth, fifth, and sixth *Grinnell* factors consider the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class action through the trial, respectively. In this Action, the risks are particularly significant, and Lead Plaintiff strongly believes that this Settlement is in the best interests of the Class when weighed against these risks.

First, absent a Settlement, the Court would proceed to issue a ruling on Defendants' motion to dismiss, which could eliminate some or all of Lead Plaintiff's claims. Defendants argued in their motion to dismiss that (1) Lead Plaintiff lacked standing because it did not properly allege that its purchases of ERC-20 Tokens and/or EOS Tokens were domestic transactions; (2) Lead Plaintiff lacked standing to allege claims arising under Section 12 of the '33 Act because it did not purchase ERC-20 Tokens directly in Block.one's token sale; (3) Lead Plaintiff's Section 12 claim was time-barred; and (4) Lead Plaintiff's claim arising under Section 10(b) failed because it did not allege (a) an actionable false statement or omission, (b) scienter, and (c) loss causation. ECF No. 86.  Had

the Court accepted Defendants' arguments on any of these points in ruling on the motion to dismiss, all or substantially all of Lead Plaintiff's claims would not have survived. Lead Plaintiff was particularly attuned to this risk in light of adverse rulings issued on some of these issues by two judges in this District shortly before this Settlement was reached. *See* Orders Granting Motion to Dismiss, *Holsworth v. BProtocol Foundation*, No. 1:20-CV-02810 (AKH) (S.D.N.Y., Feb. 22, 2021), ECF. No. 66; *In re Bibox Group Holdings Ltd. Secs. Litig.*, No. 1:20-CV-2807 (DLC) (S.D.N.Y., Apr. 16, 2021), ECF. No. 90.

Lead Plaintiff also recognizes that it faced significant challenges specific to cryptocurrency litigation, in particular with regards to identifying a class of investors for purposes of class certification.  In fact, several factors are present here that make it a practical certainty that, without the Settlement, this case would require additional large expenditures of time and money and there would be a significant risk that the Class would obtain a result less beneficial than the one provided by the Settlement. These factors include the following:

- The Court has not yet ruled on Defendants' motion to dismiss, and there is substantial risk that the Court would have sided with Defendants on some or all of the issues raised, particularly given recent precedent in the Southern District.  *See* Orders Granting Motion to Dismiss, *Holsworth v. BProtocol Foundation*, No. 1:20-CV-02810 (AKH) (S.D.N.Y., Feb. 22, 2021), ECF. No. 66; *In re Bibox Group Holdings Ltd. Secs. Litig.*, No. 1:20-CV-2807 (DLC) (S.D.N.Y., April 16, 2021), ECF. No. 90.

- Class certification motions have not yet been briefed, and "'it is likely that defendants would oppose class certification' if the case were to be litigated." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 694. (quoting *Garland v. Cohen & Krassner*, No. 08-CV-4626, 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011). Identifying a class of cryptocurrency investors would have been significantly more challenging than identifying a class of investors who purchased a stock sold on a traditional exchange due, in part, to the anonymity of cryptocurrency purchasers, the range of platforms selling EOS Tokens, and the lack of traditional records of purchases.

- Even if the Class were certified, Lead Plaintiff would face months, if not years, of costly fact and expert discovery. Discovery – always complicated, contentious, and

challenging in these types of class actions – would have posed even more unusual burdens in this instance given that the operative facts concern a novel type of security. After a lengthy discovery period that would have included taking depositions of dozens of witnesses and reviewing large volumes of documents, the parties would have engaged in extensive expert discovery, which would have required experts in blockchain and cryptocurrency transactions, in addition to traditional economics experts and others generally used in securities cases.

- Defendants likely would have filed a motion for summary judgment, leading to another lengthy round of motion practice and the potential for judgment in favor of Defendants on all or some of the relevant issues.

- At trial, fact-finders would have faced unfamiliar, complex issues relating to the novel blockchain technology, necessitating significant time and expense of educating them on those issues. A trial of the Action would unquestionably require months of effort and involve the introduction of hundreds of exhibits, addressing complicated regulatory matters, vigorously contested evidentiary motions, substantial additional expenses, and conflicting expert testimony.

- Lead Plaintiff would also have faced significant hurdles in calculating damages.

- Even had Lead Plaintiff succeeded in obtaining a favorable judgment, it likely would have faced years of appeals before the class received any tangible recovery. Experience shows that even very large judgments, recovered after lengthy litigation and trial, can be lost or significantly winnowed on appeal.

- Finally, even if a judgment after trial yielded a larger sum than the value of the Settlement, given the time value of money and the risks associated with continued litigation, such a future recovery might not be more beneficial than receiving the benefits of the proposed Settlement now. The Settlement, by contrast, will allow for a significant payout to the class immediately without additional costs being incurred by any party. *See Seijas v. Republic of Argentina*, No. 04-CV-1085 (TPG), 2017 WL 1511352, at *8 (S.D.N.Y. Apr. 27, 2017) ("[W]hen settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable.") (Citation omitted.); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) ("The concrete benefits of this [s]ettlement outweigh the possibility of a higher recovery after trial.").

All of these foregoing factors demonstrate that, given the significant risks inherent in this litigation, the result achieved for the Class is exceptionally favorable. Moreover, the Court should also consider that Lead Plaintiff, Lead Counsel, and Defendants' counsel believe this Settlement to be in the best interests of the Class in light of the risks attendant to continuing litigation, and that

17

they are uniquely positioned to assess these risks. *See Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693 (PGG), 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013) ("In exercising [its] discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks"); *Clark v. Ecolab, Inc.*, No. 07-cv-8623-PAC, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) ([T]the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . .").  Lead Counsel has extensive experience in prosecuting securities class actions in this District and throughout the country and is among the nation's leading securities class action litigation firms. Similarly, Defendants' counsel, Davis Polk & Wardwell LLP and Waymaker LLP (formerly Baker Marquart LLP), are both nationally renowned law firms with experience in defending securities class actions, including those involving cryptocurrencies. Accordingly, their judgment that the Settlement is in the best interest of each of their respective clients should be given considerable weight.

Further, under the PSLRA, a settlement reached "under the supervision of appropriately selected [L]ead [P]laintiffs is entitled to an even greater presumption of reasonableness." *In re EVCI Career Colleges*, No. 05-CIV-10240 CM, 2007 WL 2230177, at *4. This Action included the active participation of the Court-appointed Lead Plaintiff Crypto Assets Opportunity Fund – a sophisticated institutional investor. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05-md-01695, 2007 WL 4115809, at *5 ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness. . . . . Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.").  Thus, Rule

23(e)(2)(C)(i) and the first, fourth, fifth, and sixth *Grinnell* factors weigh in favor of approving the Settlement.

### 7.    The Settlement Is Within the Range of Reasonableness

The last three *Grinnell* factors relate to the reasonableness of the Settlement amount in relation to Defendants' ability to withstand a greater judgment, the best possible recovery, and the attendant risks of litigation. Although neither party denies that Defendants could withstand a greater judgment than the proposed settlement amount, "this factor, standing alone, does not suggest that the settlement is unfair." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (citation omitted).

Lead Plaintiff and Lead Counsel determined that $27.5 million is the appropriate settlement amount for this Action based on careful analysis of the value of the claims and consultation with economics experts. As alleged in the Amended Complaint, Block.one released 900 million EOS tokens valued at $4 billion. AC ¶ 78. Because the majority of EOS purchasers were foreign and because the price of EOS fluctuated significantly during the Class Period, Lead Plaintiff and Lead Counsel estimate that only 25% of those 900 million tokens are likely eligible to recover as part of the Settlement agreement. As explained in the Plan of Allocation,[4] Lead Plaintiff's expert calculated that the inflation per token ranged from $1.83 to $8.00 during the Class Period. Thus, the total amount of inflation during the Class Period likely falls between $411,750,000 and $1.8 billion. While trading patterns are extremely difficult to ascertain given the nature of EOS transactions, Lead Plaintiff and Lead Counsel believe, based on an analysis based on preliminary data, that the true amount falls toward the low end of the range. Given the significant risks inherent in this litigation, Lead Plaintiff

---

[4] The Plan of Allocation is set forth in the Notice of Pendency and Proposed Settlement of Class Action (attached as Exhibit 2 to the Declaration of Daniel L. Berger in Support of Motion to Approve form and manner of giving notice of proposed settlement to the proposed class)

and Lead Counsel believe that the Settlement Amount is a reasonable percentage of the total possible recovery.

Given the risks discussed supra, §V(C)(6)including the pending motion to dismiss and the fact that a class was not yet certified for litigation purposes, the proposed settlement amount of $27.5 million achieved by Lead Plaintiff represents an excellent result for the Class. Thus, the *Grinnell* factors support final approval of the Settlement.

### 8.  The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

#### (a)  The Proposed Method for Distributing Relief Is Effective

Lead Counsel, in consultation with experts, devised a plan of allocation that will fairly distribute the Net Settlement Fund to Authorized Claimants. *See* Rule 23(e)(2)(C)(ii); Declaration of Daniel L. Berger at §IV. As explained more fully below, in §V, the Plan of Allocation provides a fair method of distribution.

#### (b)  The Parties' Sole Supplemental Agreement Concerns Exclusions

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement made in connection with the proposed Settlement. As disclosed in the Stipulation[5] (¶7.3), and in the memorandum in support of Lead Plaintiff's motion for preliminary approval (ECF No. 110), the Settling Parties have entered into a standard Supplemental Agreement that provides that if the number of Block.one-issued ERC-20 or EOS tokens purchased or acquired by Class Members who request to opt out of the Class equals or exceeds a certain amount, Block.one has the right to terminate the Settlement.

---

[5] On October 11, 2021, the Parties executed an Amended Stipulation of Settlement which excluded certain parties from the definition of "Released Defendant Parties" per Defendants' request.  The Amended Stipulation is attached as Exhibit A to the Declaration of Daniel L. Berger Attaching Amended Stipulation.

Such side agreements are standard, and their existence does not preclude final approval of settlements. *In re Take Two Interactive Sec. Litig.*, No. 06 CIV. 1131 (RJS) 2010 WL 11613684, at *11 (S.D.N.Y. June 29, 2010) (granting final approval of securities class action that included a supplemental confidential agreement permitting settlement termination in the event of exclusion requests by a certain portion of the class). The parties have no additional side agreements.

### (c)      No Class Member Receives Preferential Treatment

As explained more fully below, the Plan of Allocation explains how the Settlement proceeds will be distributed among Authorized Claimants. It provides specific formulas for calculating the recognized claim of each Class Member, based on each Class Member's purchases or acquisitions of ERC-20 and EOS tokens and when and if they were sold. Lead Plaintiff, like all other Class Members, will have its recognized losses calculated in the exact same manner, and its *pro rata* distribution will be calculated in the same manner as all other Class Members'; *i.e.*, according to the amount of their Recognized Loss.

## VI.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

This Court has "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978). The standard for approving a plan of allocation is the same as the standard for approving the settlement: the plan must be "fair and adequate." *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *10.  Courts recognize that "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *Id*. (Citation omitted.) Moreover, an allocation needs only to have a "reasonable, rational basis," where, as here, it is recommended by competent and experienced class counsel. *Id.; Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *9 (S.D.N.Y. Jan. 31, 2007).

With the assistance of Lead Plaintiff's economic and damages expert and after careful consideration and analysis, Lead Counsel prepared the Plan of Allocation without reference to any particular trading patterns of Lead Plaintiff. The Plan of Allocation is fully set forth in the Notice. If the total claims for all Authorized Claimants exceed the Net Settlement Fund, each Authorized Claimant's share of the Net Settlement Fund will be determined based upon the percentage that his, her, or its claim bears to the total of the claims for all Authorized Claimants. *See In re Merrill Lynch & Co. Rsch. Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *12 (S.D.N.Y. Feb. 1, 2007) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is reasonable."). Moreover, to date, not a single Class Member has filed an objection to the Plan of Allocation. Thus, this method of allocation is fair, reasonable, and adequate, and should be approved by the Court.

## VII.   CONCLUSION

For all the foregoing reasons, Lead Plaintiff and Lead Counsel respectfully request that the Court approve the Settlement and Plan of Allocation as fair, reasonable, and adequate, confirm certification of the Class, appoint Lead Plaintiff as Class Representative and appoint Lead Counsel as Class Counsel.

Dated: New York, New York
October 17, 2021

Respectfully submitted,

 */s/Daniel L. Berger*
Daniel L. Berger
Caitlin M. Moyna
**Grant & Eisenhofer P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com

Email: cmoyna@gelwa.com

*Lead Counsel for the Class and Counsel for Lead Plaintiff Crypto Assets Opportunity Fund, LLC*

Ievgeniia P. Vatrenko, Esq.
2 Northside Piers
Brooklyn, NY 11249
Tel.: (718) 451-6384
Email: jenny@vatrenkoesq.com

James Koutoulas
**Koutoulas Law LLC**
10 N. Dearborn
Chicago, IL 60604
Tel.: (312) 836-1180
Email: james@koutoulaslaw.com

J. Samuel Tenenbaum
**Bluhm Legal Clinic of the Northwestern Pritzker School of Law**
**Complex Civil Litigation and Investor Protection Center**
375 East Chicago Ave.
Chicago, IL 60611
Tel.: (312) 503-4808
Email: s-tenenbaum@law.northwestern.edu

*Additional Counsel for Crypto Assets Opportunity Fund LLC*