**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHASE WILLIAMS AND WILLIAM ZHANG, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civ. No. 1:20-cv-2809-LAK |
| v. | <u>CLASS ACTION</u> |
| BLOCK.ONE, BRENDAN BLUMER, and DANIEL LARIMER, | |
| Defendants. | |
| CRYPTO ASSETS OPPORTUNITY FUND LLC and JOHNNY HONG, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civ. No.: 1:20-cv-3829 |
| v. | <u>CLASS ACTION</u> |
| BLOCK.ONE, BRENDAN BLUMER, DANIEL LARIMER, IAN GRIGG, and BROCK PIERCE, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(A)(4)**

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ iii

I.    Preliminary Statement.................................................................................................... 1

II.   Procedural and Factual Background .............................................................................. 1

III.  Award of Attorneys' Fees.............................................................................................. 2

      A.  Lead Plaintiff's Counsel Is Entitled to an Award of Attorneys' Fees From the
          Common Fund ..................................................................................................... 2

      B.  The Court Should Award a Percentage of the Common Fund ...................................... 2

      C.  The Requested Percentage Is Fair And Reasonable .................................................... 4

      D.  The *Goldberger* Factors Further Confirm that the Requested Fee Is Fair and
          Reasonable .......................................................................................................... 5

          1.  Time and Labor Expended by Counsel.................................................................. 6

          2.  Magnitude and Complexity of the Litigation.......................................................... 6

          3.  The Substantial Risks to the Class's Recovery Fully Support the Fee Requested
              by Lead Counsel ........................................................................................... 7

          4.  Quality of Representation ................................................................................ 8

          5.  The Fee Requested Is Fair in Relation to the Settlement Amount.......................... 9

          6.  Public Policy Concerns .................................................................................. 10

      E.  Class Members' Reaction ................................................................................... 11

      F.  Lead Plaintiffs' Reaction ................................................................................... 11

IV.   The Requested Expenses Are Reasonable and Were Necessarily Incurred to Achieve the
      Settlement ................................................................................................................ 11

V.    Lead Plaintiff's Request for an Award Under 15 U.S.C. §78u-4(a)(4)
       Is Also Reasonable.................................................................................................. 12

VI.   Conclusion ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Aetna Inc. Sec. Litig.*,
   MDL No. 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ........................................................8

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)..............................................................................................................10

*In re BioScrip, Inc. Sec. Litig.*,
   273 F. Supp. 3d 474 (S.D.N.Y. 2017), *aff'd sub nom. Fresno Cty. Employees'*
   *Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63 (2d Cir. 2019)......................................5

*Blum v. Stenson*,
   465 U.S. 886 (1984)............................................................................................................3, 4

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)............................................................................................................2, 3

*Carlson v. Xerox Corp.*,
   355 F. App'x 523 (2d Cir. 2009) ............................................................................................5

*Cent. R.R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885)................................................................................................................3

*City of Providence v. Aeropostale, Inc.*,
   No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
   *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)....................................3

*Doglow v. Anderson*,
   43 F.R.D. 472 (E.D.N.Y. 1968) ..............................................................................................2

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018)..............2*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .........................9, 10

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................9

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)............................................................................................ *passim*

*In re Grana Y Montero S.A.A. Sec. Litig.*,
   No. 17CV01105LDHST, 2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021), ...........................5, 9

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) )......................................................................4, 5

*In re IMAX Sec. Litig.*,
No. 06 CIV. 6128 NRB, 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012)...................................3

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009).......................................................................................5

*Internal Imp. Fund Trs. v. Greenough*,
105 U.S. 527 (1882)...................................................................................................................3

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).............................................................................. *passim*

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ...............................................................................................6

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)...................................................................................................................2

*Missouri v. Jenkins*,
491 U.S. 274 (1989)...................................................................................................................4

*Sprague v. Ticonic Nat'l Bank*,
307 U.S. 161 (1939).............................................................................................................2, 3

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008).............................................................................. *passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...................................................................................................................2

*Velez v. Novartis Pharms. Corp.*,
No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)...................................4

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v.
Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005) .......................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)...........................................................................................4, 5, 10

**Statutes**

15 U.S.C. § 78u–4(a)(6)..............................................................................................................4

15 U.S.C. §78U-4(A)(4) ................................................................................................ *passim*

Lead Plaintiff Crypto Assets Opportunity Fund, by and through Lead Counsel Grant & Eisenhofer P.A., respectfully submits this memorandum in support of Lead Counsel's motion for (i) for an award of attorneys' fees and expenses; and (ii) an award to Lead Plaintiff of costs and expenses pursuant to 15 U.S.C. §78u-4(a)(4).[1]

## I.   PRELIMINARY STATEMENT

On October 17, 2021, Lead Plaintiff filed a Motion for Final Approval of the Settlement Agreement reached by the parties on June 11, 2021.  (ECF No. 119).  On the same day, Lead Plaintiff filed another Motion requesting a short extension of the time for Lead Counsel to file an application for attorneys' fees and expenses and costs and expenses of Lead Plaintiff.  Further to the October 17th motions, Lead Counsel now respectfully applies for an award of attorneys' fees on behalf of all Plaintiff's Counsel in the amount of 20% of the $ 27,500,000 Settlement Amount (i.e., $5.5 million) and litigation expenses of $156,507.04.  This fee request is supported by Lead Plaintiff (*see* Declaration of Brandon Elsasser ("Elsasser Decl."), ¶7, submitted herewith) and is well within the range of percentages awarded in class actions in this Circuit.  It is also reasonable when viewed against the result achieved here and the risks Lead Counsel assumed.  Finally, Lead Plaintiff Crypto Assets Opportunity Fund applies for an award of costs and expenses of $20,000, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with its representation of the Class.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

To avoid repetition, Lead Plaintiff respectfully refers the Court to the Declaration of Daniel L. Berger in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement (ECF No. 120) for a full discussion of: (i) the factual background and procedural history of the Action; (ii)

---

[1] All capitalized terms not otherwise defined herein shall have the meanings set forth in the Amended Stipulation of Settlement (ECF No. 117-1).

the efforts of Lead Counsel in prosecuting the claims in this Action; (iii) the negotiations resulting in

this Settlement; and (iv) the reasons why the Settlement and the Plan of Allocation are fair and

reasonable and should be approved.

## III.   AWARD OF ATTORNEYS' FEES

### A.   LEAD PLAINTIFF'S COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The Supreme Court and the Second Circuit have long recognized that "a lawyer who

recovers a common fund for the benefit of persons other than himself or his client is entitled to a

reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472,

478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970); *Sprague v. Ticonic Nat'l*

*Bank*, 307 U.S. 161 (1939); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). In

addition to providing compensation, attorneys' fee awards from a common fund serve to encourage

skilled counsel to represent those who seek redress for damages inflicted on entire classes of

persons, and to discourage future misconduct of a similar nature. *See, e.g., Doglow v. Anderson*,

43 F.R.D. 472, 481-84 (E.D.N.Y. 1968). Indeed, the Supreme Court has emphasized that private

securities actions, such as this Action, are "an essential supplement to criminal prosecutions and

civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

U.S. 308, 313 (2007).

### B.   THE COURT SHOULD AWARD A PERCENTAGE OF THE COMMON FUND

The Supreme Court has consistently held that where a common fund has been created for the

benefit of a class as a result of counsel's efforts, the award of counsel's fee should be determined on

a percentage-of-the-fund basis. *See, e.g., Internal Imp. Fund Trs. v. Greenough*, 105 U.S. 527, 532

(1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Sprague*, 307 U.S. at

16667; *Boeing*, 444 U.S. at 478-79.  Indeed, by 1984 this point was so well established that the

Supreme Court needed no more than a footnote to make it in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class.").

The Second Circuit has approved the percentage method of awarding fees from a common fund. *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 416 (S.D.N.Y. 2018) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 584 (S.D.N.Y. 2008); *see also Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002). Courts in the Second Circuit can use the percentage method or the lodestar method of calculating attorneys' fees. *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005). However, "the trend among district courts in the Second Circuit is to award fees using the percentage method." *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (collecting cases). Courts recognize that the percentage method is "simpler," and the lodestar method can be a "cumbersome, enervating, and often surrealistic process." *Telik*, 576 F. Supp. 2d at *586, *citing Goldberger*, 209 F.3d at 49-50. Courts in the Southern District have recognized this trend and used the percentage method for calculating fees in similar cases, while using the lodestar merely as a "cross-check." *See e.g.*, *In re IMAX Sec. Litig.*, No. 06 CIV. 6128 NRB, 2012 WL 3133476, at *6-11, (S.D.N.Y. Aug. 1, 2012); *Velez v. Novartis Pharms. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *20-22 (S.D.N.Y. Nov. 30, 2010).

Moreover, the PSLRA explicitly authorizes the percentage method in calculating fees in securities actions. 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court

to counsel for the plaintiff class shall not exceed reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."); *Telik*, 576 F. Supp. 2d at 586 ("Indeed, the PSLRA expressly provides that class counsel are entitled to attorneys' fees that represent 'reasonable percentage' of the damages recovered by the class. *See* 15 U.S.C. § 78u–4(a)(6).  Thus, Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.").

As discussed below, the requested 20% fee is reasonable under the circumstances of this case and falls squarely within the range of percentages regularly approved in the Second Circuit.

### C.  THE REQUESTED PERCENTAGE IS FAIR AND REASONABLE

An appropriate court-awarded fee is intended to approximate what counsel would receive if they were offering their services in the marketplace.  *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989).  If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum*, 465 U.S. at 904 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

"The trend among district courts in the Second Circuit is to award fees using the percentage method."  *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *15 (S.D.N.Y. Dec. 18, 2019). This is also supported by the text of the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class.  15 U.S.C. § 78u-4(a)(6).  A review of attorneys' fees awarded in similar cases in this Circuit supports the reasonableness of the 20% fee request.  The requested 20% fee award, supported by Lead Plaintiff (*see* Elsasser Decl. ¶ 7), is consistent with percentage fees awarded in the Second Circuit in securities class actions like this one, and, in fact, lower than the amount awarded in many cases. *Telik*, 576 F. Supp. 2d at 587 ("Plaintiffs' Counsel

request a fee award of 25% of the Gross Settlement Fund, plus interest.  The requested fee is well within the range of fees approved by courts in this Circuit and elsewhere, under the percentage and the lodestar/multiplier approaches … On a percentage basis, the amount of attorneys' fees requested is less than the attorneys' fees awards made by courts in this District and other courts within the Second Circuit.") (awarding 25%); *see also Guevoura Fund*, 2019 WL 6889901, at *15 (awarding 33.3%); *In re BioScrip, Inc. Sec. Litig.,* 273 F. Supp. 3d 474, at *501 (S.D.N.Y. 2017), *aff'd sub nom. Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63 (2d Cir. 2019) (awarding 25%); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 505 (S.D.N.Y. 2009) (awarding 33%).

Further, a cross-check of the requested fee amount against the lodestar of all Plaintiff's counsel ($1,705,413) yields a multiplier of 3.2, which is considered reasonable by courts in this Circuit.  *In re Grana Y Montero S.A.A. Sec. Litig.*, No. 17CV01105LDHST, 2021 WL 4173684, at *18 (E.D.N.Y. Aug. 13, 2021), *report and recommendation adopted sub nom. In re Grana y Montero S.A.A. Sec. Litig.*, No. 17-CV-1105 (LDH)(ST), 2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021) (multiplier of 3.56 is "below what has been deemed reasonable for the common fund settlements in securities class action cases in this circuit."); *Carlson v. Xerox Corp.*, 355 F. App'x 523, 526 (2d Cir. 2009) (multiplier of 3.59 in a complex securities class action would be below the average and in line with the median for similar cases); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 368, 371 (S.D.N.Y. 2002) (finding multiplier of 4.65 to be "modest," "fair and reasonable," and "well within the range awarded by courts in this Circuit and courts throughout the country.").

###### D.     THE *GOLDBERGER* FACTORS FURTHER CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

The *Goldberger* factors, which the Second Circuit considers in evaluating the reasonableness of attorneys' fee requests support a finding that the fee requested here is reasonable.

These factors are: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50.

### 1. Time and Labor Expended by Counsel

Lead Counsel committed considerable resources and time researching, investigating, prosecuting, and negotiating a settlement for this Action for over a year.  First, Lead Counsel conducted a diligent investigation to ensure that it had a sound amended complaint that could withstand a motion to dismiss.  This included substantial factual and legal research, including the review of the SEC Order instituting cease-and-desist proceedings and imposing a cease-and-desist order against Block.one, numerous news reports relating to Defendants' offering and sale of ERC-20 and EOS tokens, consultations with experts on blockchain technology, cryptocurrencies, damages, and applicable laws and regulations. Lead Counsel then spent significant time drafting the Complaint and opposing  Defendants' motion to dismiss. Second, Lead Counsel spent a considerable amount of time negotiating the terms of the Settlement, including participating in negotiations with Defendants' counsel, consulting with Lead Plaintiff's expert, and drafting  the necessary settlement documents. Third, and perhaps most importantly, as the history of the Action makes clear, the services provided by Lead Counsel proved fruitful, resulting in a favorable recovery for the Class.  Defendants have fought fiercely throughout the litigation process, and Lead Counsel responded accordingly.

### 2. Magnitude and Complexity of the Litigation

It is widely recognized that securities class actions are complex and difficult.  *See e.g.*, *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 138 (S.D.N.Y. 2008) ("[S]ecurities class litigation is  "notably  difficult  and notoriously uncertain."), *citing In re Sumitomo Copper Litig.,* 189 F.R.D. 274, 281 (S.D.N.Y. 1999).  This Action is still more complex

than others due to the significant risks surrounding the legal issues raised, complications relating to class certification, and complexities emerging from the attempt in this action to apply federal securities laws to a novel form of blockchain technology and related digital assets, namely, cryptocurrency. *See Telik*, 576 F. Supp. 2d at 592 (considering "enormous challenges" presented by the litigation in its analysis of magnitude and complexity). To date, only a handful of private securities class actions relating to cryptocurrencies filed in the United States have managed to obtain recovery for the Class, and Lead Counsel is unaware of any fraud-based securities class action settlements substantially similar to the Settlement here. Nevertheless, Lead Counsel were able to negotiate a substantial settlement of $27.5 million on behalf of the Class.

### 3. The Substantial Risks to the Class's Recovery Fully Support the Fee Requested by Lead Counsel

Courts recognize that the risk of no recovery is a "pivotal" factor in the analysis of reasonable attorneys' fees. *Id*. Plaintiff's Counsel undertook this Action on a contingent fee basis, assuming a substantial risk that the Action would yield no recovery and leave counsel uncompensated. This factor is particularly relevant in this Action, which raised novel issues of law and uncertain application of existing securities laws framework to emerging blockchain technology and digital assets – including the lack of controlling precedent involving similar issues of fact and law – and represented a serious gamble on Plaintiff's Counsel's part. Nevertheless, Plaintiff's Counsel has expended significant time and money litigating this Action and negotiating this Settlement. Plaintiff's Counsel have not been compensated in any other way for their time and expenses. It is, therefore, fair that that they should receive the requested percentage of the Settlement Amount.

### 4.     Quality of Representation

Lead Counsel performed their work diligently and skillfully and managed a substantial recovery for the class.  Lead counsel is confident that they provided excellent representation to the Class, despite all of the difficulties and complexities raised in this Action.  Lead Counsel has many years of experience in complex federal civil litigation, particularly the litigation of securities and other class actions, and has achieved significant acclaim for their work, as set forth in the exhibits to Lead Counsel's accompanying fee and expense submissions.  Other counsel who participated in the representation are experts in the field of cryptocurrency law and have significant experience in that area.

Plaintiff's Counsel's experience in the relevant fields allowed them to identify the complex issues involved in this case and formulate strategies to successfully prosecute it effectively.  As a result of Plaintiff's Counsel's efforts, Lead Plaintiff secured a settlement of $27.5 million, representing an excellent result for the Class. In fact, this Settlement is, to date, the largest settlement in a securities class action involving cryptocurrency in the United States.

The quality of opposing counsel is also important in evaluating the quality of services rendered by Lead Counsel. *See, e.g.*, *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001).  Davis Polk & Wardwell LLP and Waymaker LLP (formerly Baker Marquart LLP), the defense firms in this case, are both nationally renowned law firms with experience in defending securities class actions, including those involving cryptocurrencies. That Plaintiff's Counsel developed their case and negotiated this Settlement in the face of such a formidable opposition supports the fee request.  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *28 (S.D.N.Y. Nov. 8, 2010) ("The quality of the opposition should be taken into consideration in assessing the quality of Lead Counsel's performance.").

### 5.    The Fee Requested Is Fair in Relation to the Settlement Amount

As explained supra, §III(C) the 20% fee award requested in this Action is within the range of reasonableness as considered by courts in this Circuit and is actually at the low end of percentages awarded in similar actions.  In addition, as reflected in their lodestars, Plaintiff's Counsel expended 2,826.15 hours, which at the customary hourly rates charged by counsel, amounts to a lodestar of $1,705,413.  *See* Declaration of Daniel L. Berger in Support of Motion for an Award of Attorneys' Fees and Expenses; Declaration of James Koutoulas Law LLC in Support of Motion for Award of Attorneys' Fees and Expenses; Declaration of Ievgeniia P. Vatrenko, Esq. in Support of Motion for Award of Attorneys' Fees and Expenses; and Declaration of Samuel Tenenbaum of the Bluhm Legal Clinic of the Northwestern Pritzker School of Law in Support of Motion for Award of Attorneys' Fees and Expense.  Thus, the requested fee is fair in relation to the settlement amount.  *See In re Grana Y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684 at *18 (E.D.N.Y. Aug. 13, 2021) (observing a multiplier of 3.56 to be "below what has been deemed reasonable for the common fund settlements in securities class action cases in this circuit."); *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 469 (S.D.N.Y. 2004) (considering "novelty and riskiness" of an action in determining that a multiplier of 2.6 was "certainly justified").

In addition, as explained in the Memorandum in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement (ECF No. 119), the Settlement Amount is an excellent result for the Class.  The recoverable damages were uncertain, but our experts have estimated that they fall between $412 million and $1.8 billion.  *Id.* at 19.  In addition, there were significant risks associated with this litigation, and it was very possible that no investor would have recovered anything.  *Id.* at 15-18.

### 6.      Public Policy Concerns

Public policy concerns weigh heavily in favor of awarding the percentage requested.  The Supreme Court has observed that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310 (1985).

Accordingly, courts in this circuit consider whether requested fee amount appropriately compensates plaintiffs' attorneys for their efforts, in order to encourage attorneys to take similar risks in the future. *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003)*, aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005) ("The fees awarded must be reasonable, but they must also serve as an inducement for lawyers to make similar efforts in the future."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("It is therefore imperative that the filing of such contingent lawsuits not be chilled by the imposition of fee awards which fail to adequately compensate counsel for the risks of pursuing such litigation and the benefits which would not otherwise have been achieved but for their persistent and diligent efforts. Private attorneys should be encouraged to take the risks required to represent those who would not otherwise be protected from socially undesirable activities like securities fraud. Thus, important public policy considerations will be promoted by the award of the fees requested herein.").

In keeping with this "important" public policy, "the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010).  This Action was highly risky for Plaintiff's Counsel, but they nevertheless achieved a significant settlement of $27.5 million for the class.  As such, the requested fee is appropriate.

### E.     CLASS MEMBERS' REACTION

Lack of objection from Class Members to the requested fee amount is an important factor in determining whether the amount is fair. *Id*. at 29 ("[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."). Lead Counsel, together with Epiq Systems, Inc., has provided Notice to the Class accordance with the Notice Plan. The Notice informed the Class that Lead Counsel would apply for attorneys' fees in an amount not to exceed 25% of the Settlement Fund. In fact, counsel are applying for less, *i.e.*, 20%. To date, no claimant has objected to Lead Counsel's fee request, which is important evidence that the requested fee is fair. This positive response by the Class to the proposed attorneys' fee amount attests to the Class's approval of the amount.

### F.     LEAD PLAINTIFF'S REACTION

Lead Plaintiff has expressed approval of the proposed settlement of this Action for $27,500,000. Elsasser Decl. ¶ 6. With respect to Lead Counsel's application for an award of attorneys' fees, Lead Plaintiff discussed this subject at length with Lead Counsel and the other Plaintiff's Counsel. Elsasser Decl. ¶ 7. Lead Plaintiff believes the described outcome is a good result for the Class and, therefore, supports Lead Counsel's application for an award of attorneys' fees of 20%. *Id.*

## IV.   THE REQUESTED EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT

Attorneys who create a common fund for the benefit of a class are entitled to payment from the fund of reasonable litigation expenses and charges. *Telik*, 576 F. Supp. 2d at 574 ("It is well established that counsel who create a common fund are entitled to the reimbursement of expenses

that they advanced to a class.").  Courts award these expenses as long as Lead Counsel's expense documentation is "adequate."  *Id.*

Lead Counsel seek payment of counsel's reasonable expenses of $156,507.04 for prosecuting and settling this Action on behalf of the Class.  *See* Declaration of Daniel L. Berger in Support of Motion for an Award of Attorneys' Fees, ¶6.  These expenses were necessary for the investigation and prosecution of the case.  The expenses include consultant and expert fees, travel, photocopying of documents, factual and legal research, messenger service, postage, express mail and next day delivery, and other incidental expenses directly related to the prosecution of this Action, and therefore should be paid from the Settlement Fund.

## V.   LEAD PLAINTIFF'S REQUEST FOR AN AWARD UNDER 15 U.S.C. §78U-4(A)(4) IS ALSO REASONABLE

Lead Plaintiff Crypto Assets Opportunity Fund also seeks approval of an award of $20,000 in recognition of the time and resources it spent representing the Class.  The PSLRA allows an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" to "any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4). As set forth in the Elsasser Declaration, Lead Plaintiff took an active role in prosecuting the Action, including: (1) overseeing Lead Counsel with regard to issues and developments in the Action; (2) reviewing draft filings and other important documents and materials related to the case; and (3) consulting with Lead Counsel on litigation and settlement strategy.  Elsasser Decl., ¶¶6, 8.  Many courts have approved such awards under the PSLRA to compensate class representatives for the time and effort they spend on behalf of the class.  To date, no Class Member has objected to such an award to Lead Plaintiff.  Personnel at Lead Plaintiff spent a total of 75 hours working on the action, which amounts to $20,000 at their hourly rates.  Elsasser Decl. ¶ 9.

## VI.    CONCLUSION

For all the foregoing reasons, Lead Plaintiff and Lead Counsel respectfully request that the Court award attorneys' fees to Lead Counsel of 20% of the Settlement Amount and expenses of $156,507.04.  Finally, Lead Plaintiff requests approval of an award of costs and expenses of $20,000 pursuant to 15 U.S.C. §78u-4(a)(4).

Dated: New York, New York
October 19, 2021

Respectfully submitted,

/s/Daniel L. Berger
Daniel L. Berger
Caitlin M. Moyna
**Grant & Eisenhofer P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com
Email: cmoyna@gelwa.com

*Lead Counsel for the Class and Counsel for Lead Plaintiff Crypto Assets Opportunity Fund, LLC*

Ievgeniia P. Vatrenko, Esq.
2 Northside Piers
Brooklyn, NY 11249
Tel.: (718) 451-6384
Email: jenny@vatrenkoesq.com

James Koutoulas
**Koutoulas Law LLC**
10 N. Dearborn
Chicago, IL 60604
Tel.: (312) 836-1180
Email: james@koutoulaslaw.com

J. Samuel Tenenbaum

**Bluhm Legal Clinic of the Northwestern
Pritzker School of Law
Complex Civil Litigation and Investor
Protection Center**
375 East Chicago Ave.
Chicago, IL 60611
Tel.: (312) 503-4808
Email: s-tenenbaum@law.northwestern.edu

*Additional Counsel for Crypto Assets
Opportunity Fund LLC*