```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____        │
│ DATE FILED: 11/3/2021                │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHASE WILLIAMS, et al.,

                      Plaintiffs,

                -against-                                  20-cv-2809 (LAK)

BLOCK.ONE, et al.,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CRYPTO ASSETS OPPORTUNITY FUND LLC, et al.,

                      Plaintiffs,

                -against-                                  20-cv-3829 (LAK)

BLOCK.ONE, et al.,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff has moved for approval of a proposed class action settlement of this case, which would provide for a settlement fund of $27.5 million. Plaintiff's counsel has moved also for an award of approximately $5.5 million as attorneys' fees.

        The amended stipulation of settlement defines "Settlement Class" as "all persons or entities who, directly or through an intermediary, purchased or otherwise acquired ERC-20 Tokens and/or EOS Tokens at any time during the period of June 26, 2017 through May 18, 2020, inclusive," subject to certain exclusions not relevant here. Dkt. 117-1 at 10. Despite that broad definition, plaintiff submits that "[b]ecause the majority of EOS purchasers were foreign and because the price of EOS fluctuated significantly during the Class Period, we estimated that only 25% of [the] 900 million tokens [issued by Block.one] are likely eligible to recover as part of the Settlement agreement." Dkt. 119 at 19. The settlement amount is reduced accordingly. However, plaintiff has not explained how it determined – or estimated – that a "majority of EOS purchases were foreign."

The Court is concerned also with the proposed method for administering the settlement assuming it were approved. Plaintiff has informed the Court only of one similar settlement in the cryptocurrency context. *Id*. at 6. And plaintiff acknowledges that the referenced settlement was different from the one proposed in this case. *Id*. at 7. Despite the novelty of this settlement, plaintiff has provided only general information regarding the claims administration and verification process.

Finally, with regard to the motion for attorneys' fees, the parties have submitted a lodestar calculation based on 2,824.5 hours of work by 9 lawyers and 3 paralegals. Hourly rates or, in some cases, ranges of hourly rates, are given for individuals or categories of personnel. But virtually no information has been provided about just what the hours were spent on, except of course in a very general way.

In light of the above, the Court requires additional information in order to make an informed judgment on the motions before it. Accordingly, plaintiff's counsel shall provide the following on or before November 10, 2021:

1.      A consolidated summary lodestar spread sheet setting forth, for each individual for whom compensation is sought, (a) the number of hours at each hourly rate in effect for that individual at the time the hours were devoted and (b) a summary line reflecting the total hours and the individual's blended historical hourly rate over the course of the litigation.

2.      An analysis of the categories of work for which compensation is sought, the hours devoted to each category by each individual for whom compensation is sought, and the "lodestar" for that category of work by each individual based on historical rates. For the guidance of counsel, the Court found the categories used in *In re IndyMac Mortgage-Backed Secur. Litig.,* 94 F. Supp.3d 517, 529 (S.D.N.Y. 2015), *aff'd sub nom. DeValerio v. Olinski,* 673 Fed. Appx. 87 (2d Cir. 2016), to have been helpful. The Court, however, recognizes that other sets of categories also might be helpful or more helpful as well as more easily employed. It is open to another approach. Counsel, however, would be well advised to inform the Court in advance of the manner in which they propose to supply this information.

3.      The Court notes that biographical information has not been provided for all persons for whom compensation has been sought. That deficiency should be remedied.

4.      It is the burden of plaintiff's counsel to establish the reasonableness of the hourly rates on which the lodestar is based. That involves, among other considerations, the time keepers' titles and roles (including whether persons performing similar roles typically are billed to paying clients on an hourly basis), years and quality of experience, and market rates for similar professionals, among other factors. Counsel would be well advised to address these and related issues.

5.      Counsel has applied also for an award of a significant amount of expenses. But these include a $25,000 item described only as "PH," over $4,000 for undescribed "service fees," and other items for which greater explanation should be provided.

6.      Plaintiff has informed the Court that "the majority of EOS purchasers were foreign," but has not provided the Court with any grounds for that assumption.  Counsel should provide a detailed explanation of that statement and its impact on the settlement amount.  In doing so, they should consider the analysis in *In re Tezos Sec. Litig.*, No. 17-cv-06779 (RS), 2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) and *Barron v. Helbiz Inc.*, No. 20-cv-4703 (LLS), 2021 WL 229609 (S.D.N.Y. Jan. 22, 2021) *vacated and remanded on other grounds*, No. 21-278, 2021 WL 4519887 (2d Cir. Oct. 4, 2021), although the Court expresses no view with respect to the analysis in either case.  Counsel further should address the implication of the Securities and Exchange Commission's recent instruction that trading platforms such as Poloniex qualify as national securities exchanges under the Exchange Act and Exchange Act Rule 3b-16(a).  *See* Cease and Desist Order, *In re Poloniex*, SEC Rel. No.  92607 (Aug. 9, 2021).

7.      Counsel should address whether plaintiff Crypto Assets Opportunity Fund is typical of other putative class members with regard to the classification of its purchases as domestic or foreign and the basis for the assertion that it is an adequate class representative.

8.      Plaintiff has submitted a proof of claim form which directs claimants to provide the wallet address from which crypto was contributed for the purchases of ERC-20 or EOS tokens.  Please provide additional information regarding the claims administration process, including:

i.      How the administrator will confirm that the wallet address provided is owned by the individual requesting payment.

ii.      How the claims process will differ for investors who purchased EOS or ERC-20 through an exchange that allows for off-chain transactions (i.e., which wallet address will such claimants provide) and how the administrator will confirm purchases and sales made on such platforms.

iii.      Please address whether the information provided by claimants will be sufficient to identify how a purchase of EOS or ERC-20 was made (i.e., through a particular exchange, platform, or other method) and whether that information will be sufficient to analyze whether a transaction should be deemed foreign or domestic (i.e., location of purchaser, location of validating node, etc.).

9.      For claimants who have not sold their EOS or ERC-20 tokens, the proof of claim form requires documentation confirming that claimants held these tokens on May 18, 2020.  What documentation will be required?  Please explain how that documentation would be sufficient to confirm ownership of tokens on May 18, 2020.

10.      The plan of allocation described in the plaintiff's submission states that the "recognized loss amount" for each claimant will be used only to "weigh the claims of claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund." Please address whether a claimant's recovery from the settlement fund in any circumstances may exceed its recognized loss amount and, if that is the case, please explain why such a result is

4

justified.

11.     The plan of allocation provides that any balance remaining in the settlement fund after the initial distributions will be allocated in an "equitable and economic fashion." Please explain what that means.

12.     The plan of allocation specifies that the dates of a claimants' purchases and sales "shall be deemed to have occurred on the 'contract' or 'trade' date as opposed to the 'settlement' or 'payment' date." Please explain what those terms mean in the context of a cryptocurrency transaction.

SO ORDERED.

Dated:        November 3, 2021

_____
Lewis A. Kaplan
United States District Judge