UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHASE WILLIAMS, et al.,<br>　　　　　　　　　　Plaintiffs,<br>　　-against-<br>BLOCK.ONE, et al.,<br>　　　　　　　　　　Defendants.<br>-------------------------------------------x<br>CRYPTO ASSETS OPPORTUNITY FUND, LLC, et al.,<br>　　　　　　　　　　Plaintiffs,<br>　　-against-<br>BLOCK.ONE, et al.,<br>　　　　　　　　　　Defendants. | Case No. 1:20-cv-02809-LAK<br><br>Honorable Lewis A. Kaplan |

**JEFFREY DERRICK ANDERSON'S MEMORANDUM OF LAW IN SUPPORT OF
HIS AMENDED MOTION TO SUBSTITUTE LEAD PLAINTIFF
<u>AND TO APPROVE LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

**Pages**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

PROCEDURAL BACKGROUND ................................................................................................. 2

ARGUMENT .................................................................................................................................. 3

I.        Anderson Satisfies Rule 23's Adequacy Requirement ......................................... 3

II.       Anderson Is the Only Possible Adequate Lead Plaintiff Under the Securities Act ............. 4

III.      The Court Should Substitute Anderson As Lead Plaintiff ..................................... 6

        A.        The Court Has Authority To Substitute A New Lead Plaintiff ............... 6

        B.        Anderson Should Be Appointed Lead Plaintiff ....................................... 8

                1.        Anderson Has The Largest Loss Of All Viable Lead Plaintiffs ................. 8

                2.        Anderson Satisfies The Other Requirements Of Rule 23 .......................... 9

        C.        Selendy Gay Elsberg Should Be Approved As Lead Counsel ............................. 10

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340 (S.D.N.Y. 2019) .......................................... 9, 10

*Batter v. Hecla Mining Co.*, 2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020)................................. 10

*Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017)................................. 5, 6

*In re Barclays Bank PLC Sec. Litig.*, 2015 U.S. Dist. LEXIS 156676 (S.D.N.Y. Nov. 19, 2015) ............................................................................................................................................ 5

*In re Barclays Bank PLC Sec. Litig.*, 2016 WL 3235290 (S.D.N.Y. June 9, 2016)........................ 6

*In re Facebook, Inc., IPO Sec & Derivative Litig.*, 288 F.R.D. 26 (S.D.N.Y. 2012).................... 11

*In re Imax Securities Litigation*, 2011 WL 1487090 (S.D.N.Y. Apr. 15, 2011) ............................ 7

*In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117 (S.D.N.Y. 2002).................................... 6, 7

*In re Lehman Bros. Sec. & Erisa Litig.*, 800 F. Supp. 2d 477 (S.D.N.Y. 2011).............................. 5

*In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128 (S.D.N.Y. 2007) ............................................. 7

*In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112 (S.D.N.Y. 2009).......................................................... 7

*In re Tezos Securities Litigation*, 2019 WL 2183448 (N.D. Cal. 2019) ......................................... 7

*In the Matter of Poloniex, LLC, Respondent*, Securities Act Rel. No. 92607, 2021 WL 3501307 (SEC Aug. 9, 2021)........................................................................................................ 3

*Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112 (S.D.N.Y. 2010) .............................................. 11

*Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471 (S.D.N.Y. 2016) ............................... 10, 11

*Lundy v. Ideanomics, Inc.*, 2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020) .................................... 6

*P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92 (2d Cir. 2004)...................................................... 5

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) ......................................................................................................................................... 5, 6

*Rhode Island Laborers' Pension Fund v. FedEx Corp.*, 2019 WL 5287997 (S.D.N.Y. Oct. 18, 2019) ........................................................................................................................... 8, 9

*Salinger v. Sarepta Therapeutics, Inc.*, 2019 WL 6873807 (S.D.N.Y. Dec. 17, 2019)................ 10

**Statutes**

15 U.S.C. § 77m ............................................................................................................................. 4

15 U.S.C. § 77z-1 ........................................................................................................................... 8

15 U.S.C. § 78u-4 .......................................................................................................................... 8

Fed. R. Civ. P. 15 ........................................................................................................................... 4

Tex. Gov. Code § 4003.001 ........................................................................................................... 4

**PRELIMINARY STATEMENT**

On August 15, 2022, the Court denied a motion by Lead Plaintiff Crypto Assets Opportunity Fund LLC ("CAOF") for final approval of a proposed class action settlement. *See* ECF No. 146 (the "August 15 Order"). The Court found that CAOF cannot meet Federal Rule of Civil Procedure 23's adequacy requirement because of "a structural problem having roots in the unusual market that the case concerns." *Id.* at 25. In particular, CAOF's proportion of "purchases of EOS tokens which are domestic may be lower than those of many absent class members," thereby giving CAOF "an incentive to take a bigger 'haircut' on the aggregate settlement price than would have existed for class members who had higher proportions of domestic purchase." *Id.* at 19, 20.

The August 15 Order means that the proposed class currently has no adequate lead plaintiff. And, because the three-year repose period has lapsed for the Securities Act of 1933 ("Securities Act") claims at issue, *see* 15 U.S.C. § 77m, it is too late for an entirely new absent class member to come forward to seek appointment as lead plaintiff to pursue those claims. The absent class members are thus in danger of having no redress for their Securities Act claims against defendants.

Fortunately, there is one person still capable of serving as lead plaintiff and asserting Securities Act claims: Jeffrey Derrick Anderson. Unlike CAOF, Anderson is an adequate lead plaintiff because nearly all of his EOS purchases were domestic, rather than foreign. *See* Part I, *infra*. In addition, because Anderson timely moved for appointment as lead plaintiff at the outset of this litigation, *see* ECF No. 21, his Securities Act claims are not barred by the three-year statute of repose. *See* Part II, *infra*. Anderson therefore respectfully asks that the Court enter an order substituting him as Lead Plaintiff under the Private Securities Litigation Reform Act of 1995

1

("PSLRA") and approving his selection of Selendy Gay Elsberg PLLC ("SGE" or "Counsel") as Lead Counsel in this action.

## PROCEDURAL BACKGROUND

On April 3, 2020, Chase Williams and William Zhang, through Counsel[1], filed the Complaint (the "Williams Complaint") against Defendants, which was the first-filed complaint alleging the claims described therein. On April 8, 2020, Counsel published the requisite PSLRA notice through Business Wire. *See* September 2, 2022 Declaration of Jordan Goldstein ("Goldstein Declaration"), Exhibit A (PSLRA Notice).

On May 18, 2020, a second complaint—largely copied from and patterned off the Williams Complaint—was filed by Grant & Eisenhoffer P.A.; the Bluhm Legal Clinic of the Northwestern Pritzker School of Law, Complex Civil Litigation And Investor Protection Center; and Ievgeniia Vatrenko, Esq. on behalf of the putative class. *See Crypto Assets Opportunity Fund LLC, et al. v. Block.one, et. al.,* Case No. 1:20-cv-03829 (S.D.N.Y. May 18, 2020).

On June 8, 2020, two groups of plaintiffs timely sought appointment as Lead Plaintiffs: one consisting of Anderson, David Muhammad, Rajith Thiagarajan, Chase Williams, and Token Fund I LLC, ECF No. 20, and the other consisting of CAOF, ECF No. 22. On August 4, 2020, the Court appointed CAOF as the lead plaintiff. ECF No. 57.

In the August 15 Order, the Court denied CAOF's motion for final approval of a proposed class action settlement. *See* ECF No. 146. The Court held that, because the majority of CAOF's purchases of EOS were made in foreign transactions, CAOF was not an adequate class

---

[1] The law firm of Roche Freedman LLP ("Roche Freedman"), which previously represented Anderson along with SGE, has moved to withdraw as counsel in this action, ECF No. 154. If its motion is granted, Roche Freedman will have no role in this action going forward in any respect, except to the extent it may make a fee application to the Court at the conclusion of the case.

2

representative. *Id.* at 19–25. As a result of the foreign skew of CAOF's purchases, it had "an incentive to accept a lower settlement offer than would have been insisted upon by absent class members who purchased only or more predominantly in domestic transactions," rendering it conflicted and thus inadequate. *Id.* at 19.

## ARGUMENT

**I.     Anderson Satisfies Rule 23's Adequacy Requirement**

Unlike CAOF, nearly all of Anderson's losses from his purchases of EOS derive from domestic transactions. As reflected in his certification and the accompanying loss chart, Goldstein Declaration Exhibits B & C, Anderson suffered 85.5 percent of his losses on Kraken, a domestic exchange. As the Court has recognized, Kraken is a cryptocurrency exchange based in the United States. August 15 Order at 8. Kraken also meets all the factors that the SEC identified in finding Poloniex to be a domestic securities exchange. *See In the Matter of Poloniex, LLC, Respondent*, Securities Act Rel. No. 92607, 2021 WL 3501307, at *2 (SEC Aug. 9, 2021). Like Poloniex, Kraken:

- Provides a limit order book for bringing together orders of multiple buyers and sellers of EOS (Goldstein Decl. ¶ 8);

- Receives and stores orders from users of EOS on the Kraken order book and displays the top orders as bids and offers on the Kraken website (Goldstein Decl. ¶ 9);

- Provides the means for these orders to interact and execute (Goldstein Decl. ¶ 10); and

- Allows users to agree upon the terms of their trades in EOS on Kraken (Goldstein Decl. ¶ 10).

*Compare with Poloniex*, 2021 WL 3501307, at *6. Because nearly all of Anderson's losses were on Kraken, Anderson can "recover damages under the federal securities laws should the remainder of [his] requirements be met." August 15 Order at 14.

3

As an overwhelmingly domestic purchaser, Anderson does not have "an incentive to take a bigger 'haircut' on the aggregate settlement price than" other class members. *Id.* at 19. Instead, he is fully incentivized to pursue the best outcome for members of the class holding claims arising from purchases on domestic exchanges. Because the proportion of Anderson's "purchases of EOS tokens which are domestic" will not be "lower than those of many absent class members," he is not incentivized to "trade away" meritorious domestic claims to obtain a settlement for non-domestic purchases. The adequacy issues that prevented the Court from appointing CAOF as Lead Plaintiff thus do not apply to Anderson.

## II.     Anderson Is the Only Possible Adequate Lead Plaintiff Under the Securities Act

Anderson is the only class member that could replace CAOF as Lead Plaintiff to bring claims under the Securities Act because the claims of any other individual or entity would be barred by the three-year statute of repose governing the Section 12 claims in this action. This means that appointing Anderson as Lead Plaintiff is the only way to allow this action to proceed and for class members potentially to recover under the Securities Act.[2]

Claims under Section 12(a)(1) of the Securities Act are barred by a statute of repose if they are brought "more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m. As the Court has recognized, EOS was offered to the public "from June 26, 2017 to June 1,

---

[2] In addition to his claims under Section 12 of the Securities Act, Anderson can also timely assert claims under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934. Anderson also has timely Texas blue-sky claims, as they were asserted within three years of EOS being issued to the public. *See* ECF No. 39-1 ¶ 15, 689–707; *see also* Tex. Gov. Code § 4003.001(a) (formerly codified at Tex. Rev. Civ. Stat. art. 581-7(A)(1)) (prohibiting sale of unregistered securities). Anderson would file an amended complaint within 14 days of appointment to include these claims. *See* Fed. R. Civ. P. 15(a)(2) (courts "should freely give leave when justice so requires").

4

2018." August 15 Order at 6. The repose period thus closed on June 26, 2020.[3] *See P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 106 (2d Cir. 2004) (repose period begins at "the time when the stock is initially bona fide offered to the public").

The statute of repose was <u>not</u> tolled by the commencement of this class action. As the Second Circuit and this Court have held, "*American Pipe*'s tolling rule, whether grounded in equitable authority or on Rule 23, does not extend to the statute of repose in Section 13." *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 109 (2d Cir. 2013) (affirming *In re IndyMac Mortg.-Backed Sec. Litig.*, 793 F. Supp. 2d 637 (S.D.N.Y. 2011) (Kaplan, J.)); *see also Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2051 (2017) (holding that "statutes of repose are not subject to equitable tolling"). The fact that CAOF is not an adequate plaintiff does <u>not</u> permit the substitution of another lead plaintiff whose claims were not commenced within the statute of repose. *See In re Barclays Bank PLC Sec. Litig.*, 2015 U.S. Dist. LEXIS 156676, at *11 (S.D.N.Y. Nov. 19, 2015) (Goldstein Decl. Ex. D) (holding that, after death of class representative, *IndyMac* did not allow tolling or relation-back of repose period). Because the repose period has run, no new plaintiff can bring a claim. Accordingly, absent Anderson's appointment as lead plaintiff, not only would this class action be unable to proceed under the Securities Act, but none of the absent class members could bring a claim under that statute in an individual action.

Anderson, however, is unique in that the statute of repose does not prevent him from bringing claims under Section 12 on either an individual or representative basis. Anderson

---

[3] The same analysis applies to the Section 15 claims brought against Daniel Larimer and Brock Pierce, which are governed by the same three-year repose period. *See In re Lehman Bros. Sec. & Erisa Litig.*, 800 F. Supp. 2d 477, 483 (S.D.N.Y. 2011) (recognizing that pending action did not toll repose period for Section 15 claims against individual defendants).

preserved his claims because he timely moved for appointment as lead plaintiff on June 8, 2020. ECF No. 20; s*ee also Cal. Pub. Employees' Ret. Sys.*, 137 S. Ct. at 2054 (finding that a "simple motion to intervene or request to be included as a named plaintiff in the class-action complaint may well suffice" to ensure a plaintiff has preserved their claims from being barred by Section 13's repose); *IndyMac*, 721 F.3d at 112 (explaining that would-be plaintiffs' claims would have been timely if they had made "timely *motions*" to enter "the action as named plaintiffs" (emphasis added)).

Courts have recognized the importance of a potential class representative's unique ability to assert claims that would otherwise be barred by the statute of repose. *See, e.g.*, *In re Barclays Bank PLC Sec. Litig.*, 2016 WL 3235290, at *7 (S.D.N.Y. June 9, 2016) (certifying a class where "Defendants' proposed remedy—denying certification and depriving [the putative lead plaintiff] of the opportunity to pursue any claims on behalf of the class—would leave the proposed class far worse, given the bar on tolling the Securities Act's repose period after dismissal of a putative class action"); *Lundy v. Ideanomics, Inc.*, 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) (rejecting proposed lead plaintiff who was subject to a unique defense because "if Defendants are later successful in any opposition to class certification or [the proposed lead plaintiff] as the class representative as a result of [his] unique defense, class members may be subject to statute of repose concerns"). Anderson's unique ability to bring these claims thus makes him the only appropriate replacement lead plaintiff to bring claims under the Securities Act.

## III.     The Court Should Substitute Anderson As Lead Plaintiff

### A.     The Court Has Authority To Substitute A New Lead Plaintiff

"The PSLRA is entirely silent on the proper procedure for substituting a new lead plaintiff." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002) (analyzing new lead plaintiff process when the previously certified one withdraws). However, courts in this District

have found that "[i]t only stands to reason that the appropriate lead plaintiff would be the next 'most adequate' plaintiff in accordance with the above criteria." *Id.* Further, where "all putative class members were given notice of the opportunity to move for appointment as lead plaintiff by the original motion, there is no need for the Court to re-open the process by ordering a new notice and motion period." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 143 (S.D.N.Y. 2007) (granting motion to disqualify and remove lead plaintiff where previously appointed lead plaintiff was found to be inadequate); *see also In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116–18 (S.D.N.Y. 2009) (after determining that the originally appointed lead plaintiff lacked standing, court selected a new lead plaintiff from among applicants who moved for appointment during initial 60-day notice period); *In re Tezos Securities Litigation*, 2019 WL 2183448, *1–2 (N.D. Cal. 2019) (explaining that the PSLRA does not "require[] re-noticing this action for the selection of a new lead plaintiff" and granting motion to substitute lead plaintiff after the previously appointed lead plaintiff withdrew).

*In re Imax Securities Litigation*, 2011 WL 1487090 (S.D.N.Y. Apr. 15, 2011), is instructive. The court initially appointed a lead plaintiff, but later denied its motion for class certification. *Id.* at *1. The court then proceeded to assess competing applications for substitute lead plaintiffs by analyzing the same three factors courts use in assessing the most adequate plaintiff in the context of lead plaintiff motions made pursuant to the PSLRA. *Id.* at *2–7. Finally, in appointing a sole substitute lead plaintiff, the court rejected the argument by prior lead counsel that it needed to be appointed as class counsel or co-class counsel, finding that the substitute lead plaintiff's choice of lead counsel, who "ha[d] already had significant involvement with this case," would "best [represent] the interests of the class." *Id.* at *9.

7

B.     **Anderson Should Be Appointed Lead Plaintiff**

In addition to being the only class representative who can assert Section 12(a)(1) claims, Anderson also meets the other requirements for a lead plaintiff. The PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice …;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I); 78u-4(a)(3)(B)(iii)(I). Here, there are no other applicants, and no other applicant could assert the Section 12 claims on behalf of the class. But, even if there were other applicants, Anderson would satisfy the PSLRA factors.

1.     **Anderson Has The Largest Loss Of All Viable Lead Plaintiffs**

As the only adequate plaintiff with a timely claim under Section 12(a)(1), Anderson has suffered losses that make him, by definition, the only potential lead plaintiff with the largest financial interest in this matter. But, even if there were other applicants, Anderson has suffered significant losses in trading EOS. *See* Goldstein Decl. Ex. C (Loss Chart). The PSLRA does not specify a method for calculating who has the "largest financial interest," but courts in this District commonly look to four factors in making this determination: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) total net funds expended by the plaintiff during the class period; and (4) the approximate losses suffered by the plaintiff." *Rhode Island Laborers' Pension Fund v. FedEx Corp.*, 2019 WL 5287997, at *1 (S.D.N.Y. Oct. 18, 2019). "The fourth factor, the largest loss, is considered by most courts to be the critical ingredient in determining the

largest financial interest and outweighs net shares purchased and ne[t] expenditures." *Id.* (internal quotation marks omitted).

Each factor shows that Anderson has an extensive financial interest in this litigation. *First*, Anderson purchased 3,828.43 EOS tokens during the Class Period, of which 3,320.00 were purchased on a domestic exchange. Goldstein Decl. Ex. B (Anderson Certification). *Second*, Anderson sold 3,821.31 EOS tokens, of which 3,313.39 were sold on a domestic exchange. Anderson therefore had a net purchase of 7.12 EOS tokens overall and 6.61 EOS tokens domestically. *Id*. *Third*, Anderson expended $11,392.03 in net funds for his overall net purchase of 3,828.43 EOS tokens and $4,768.97 for his domestic net purchase of 3,320.00 EOS tokens. *Id*. *Finally*, Anderson suffered a total realized loss of approximately $3,608.66 of which $3,086.58 (*i.e.*, 85.5 percent) was suffered based upon purchases on the domestic exchange Kraken. *Id.*; *see also* Goldstein Decl. Ex. C.

Because Anderson has the largest financial interest and is the sole potential lead plaintiff who satisfies Rule 23's adequacy and typicality requirements, he should be appointed lead plaintiff. *See Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 361 (S.D.N.Y. 2019) (appointing lead plaintiff who "had incurred losses of approximately $1,422.99 in connection with his purchase of ATB Coins during the Class Period … has the largest financial interest of any class member seeking appointment as lead plaintiff, and … is aware of no other class member with a larger financial interest").

### 2.     Anderson Satisfies The Other Requirements Of Rule 23

"In making the determination of whether a movant otherwise satisfies the requirements of Rule 23, the movant must make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Salinger v. Sarepta Therapeutics, Inc.*, 2019 WL 6873807 at *3

(S.D.N.Y. Dec. 17, 2019) (internal quotation marks omitted). "This determination need not be as complete as would a similar determination for the purpose of class certification, and the movant is only required to make a prima facie showing that it meets the typicality and adequacy requirements." *Id.* (internal quotation marks and citations omitted). For the reasons stated in Part I, *supra*, Anderson is an adequate lead plaintiff. Moreover, his claims are typical of the class.

For the typicality analysis, "courts consider whether the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise." *Id.* A lead plaintiff's claims are typical where they "arise[] from the same course of events as those of other class members and [the lead plaintiff] will make[] similar legal arguments to prove the defendant[s'] liability." *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016) (internal quotation marks omitted). "While the claims need not be identical, the claims of the proposed lead plaintiff must be substantially similar to the other members' claims." *ATBCOIN*, 380 F. Supp. 3d at 362.

Anderson's claims are typical. Like every member of the class, Anderson purchased EOS tokens during the Class Period, and those EOS tokens were offered by Defendants without registering as required under federal and state securities laws. Because of that conduct, Anderson has the same right as every member of the class to recover consideration paid for EOS tokens or damages for EOS tokens previously sold. Thus, Anderson's claims are typical of those of the class.

### C. Selendy Gay Elsberg Should Be Approved As Lead Counsel

Anderson's choice of Selendy Gay Elsberg to represent him and the putative class should be approved. "The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court." *Batter v. Hecla Mining Co.*, 2020 WL 1444934, at *9 (S.D.N.Y. Mar. 25, 2020) (internal citation and quotations omitted). Courts approve the selection of counsel that are "qualified, experienced, and generally able to conduct the litigation." *VimpelCom,* 151 F. Supp.

10

3d at 479 (approving firm that "appears to be competent and experienced counsel, based on its past experience in securities fraud class actions").

SGE is qualified, experienced, and capable of effectively prosecuting this class action on behalf of Anderson and the class. SGE has unparalleled experience litigating matters relating to crypto-assets. Before filing this action, SGE "devoted substantial time and resources working . . . in identifying and investigating the claims set forth in the complaint." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 40 (S.D.N.Y. 2012) (recognizing import of counsel's pre-suit work in appointing lead counsel); *see also Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 121 (S.D.N.Y. 2010) (same). Counsel's extensive pre-suit investigation into the claims included speaking with dozens of cryptocurrency experts and industry insiders to understand the unique mechanics of the Defendants' unregistered offering and retaining experts to assist with data analysis. This six-month investigation culminated on April 3, 2020, when Counsel filed eleven class actions, including this case, which all asserted federal and state securities claims arising from the sale of unregistered crypto-securities. Notably, the claims filed by CAOF on May 18, 2020 largely copied and were patterned off the Williams Complaint filed by SGE in this action.

SGE is well-qualified to represent the interests of Anderson and the class.[4] SGE has substantial experience in cases involving crypto-assets, complex financial transactions, and class actions.

SGE's attorneys have litigated the entire spectrum of complex financial matters—from residential mortgage-backed securities to reinsurance contracts to credit default swaps—securing trial and appellate victories and numerous favorable settlements for their clients. For example,

---

[4] A description of SGE's qualifications is set forth at Exhibit E to the accompanying Declaration of Jordan A. Goldstein.

SGE's attorneys have served as class counsel in numerous high-profile actions, including representing a class of public servants in an action against loan servicer Navient, *Hyland v. Navient Corp.*, No. 1:18-cv-9031-DLC (S.D.N.Y.) (Cote, J.), and having represented the American Federation of Teachers and other investors in a class action against Goldman Sachs, Merrill Lynch, Barclays, Citigroup, and others alleging collusive violations of the Sherman Act arising out of the $13 trillion U.S. Treasuries market, *In re: Treasury Secs. Auction Antitrust Litig.*, No. 1:15-md-02673 (S.D.N.Y.). In the last decade, SGE lawyers recovered tens of billions of dollars for their clients.

SGE has also been appointed under the PSLRA as interim class co-counsel in multiple matters involving crypto-assets in this District. Those cases include *Underwood, et al. v. Coinbase Global, Inc., et al.*, No. 1:21-cv-08353-PAE (S.D.N.Y.) (Engelmayer, J.); *Anderson, et al. v. Binance, et al.,* No. 1:20-cv-02803-ALC, (S.D.N.Y) (Carter, J.); *Hardin, et al. v. Tron et al.,* No. 1:20-cv-02804-VSB (S.D.N.Y.) (Broderick, J.); and *Williams, et al. v. KuCoin et al.,* No. 1:20-cv-02806-GBD (S.D.N.Y.) (Daniels, J.)—all of which, like this action, allege violations of the securities laws based on the sale of unregistered crypto-securities. In appointing SGE as lead counsel, courts in this District have recognized SGE's "pertinent background and experience, including [its] experience litigating securities class actions." *Underwood*, Dkt. No. 21 at 10 (S.D.N.Y. Jan. 11, 2022).

SGE has similarly been appointed interim class co-counsel for purchasers asserting claims under the Commodity Exchange Act in an action filed in this District against the BitMEX crypto-asset exchange concerning the sale of futures contracts on digital assets. *See Messieh, et al. v. HDR Global Trading Limited, et al.*, No. 20-cv-3232-ALC (S.D.N.Y.) (Carter, J.). In addition, SGE has been appointed as interim class co-counsel in another large crypto-asset class action in this District.

*See In re Tether and Bitfinex Crypto Asset Litigation,* No. 1:19-cv-09236-KPF (S.D.N.Y.) (Failla, J.). In that litigation, SGE represents the plaintiffs in alleging that Bitfinex, a prominent crypto-exchange, and Tether, a prominent crypto-asset issuer, worked with major crypto-exchanges Bittrex and Poloniex to manipulate the market for crypto-assets in violation of various federal and state laws. On September 28, 2021, the *Tether* Court denied a motion to dismiss plaintiffs' claims alleging violations of the Sherman Antitrust Act, the Commodity Exchange Act, and common law fraud, and discovery is proceeding in that action.

In short, SGE is well qualified to represent the putative class in pursuing securities claims against Defendants arising from their issuance and sale of EOS.

## CONCLUSION

For the foregoing reasons, Anderson respectfully requests that the Court: (a) appoint Anderson as Lead Plaintiff; (b) approve Anderson's selection of SGE as Lead Counsel; (c) grant Anderson leave to file a Second Amended Complaint within 14 days of his appointment; and (d) issue any other relief that the Court deems just and proper.

Dated: September 2, 2022
New York, New York

Respectfully submitted,

*/s/ Jordan A. Goldstein*
Jordan A. Goldstein
Oscar Shine
SELENDY GAY ELSBERG PLLC
1290 Sixth Avenue, 17th Floor
New York, NY 10104
jgoldstein@selendygay.com
oshine@selendygay.com